BAKER BOTTS L.L.P.
Larry D. Carlson (admitted *pro hac vice*) (TX SBN 03814500)
Kurt M. Pankratz (admitted *pro hac vice*) (TX SBN 24013291)
Matthew D. Colagrosso (admitted *pro hac vice*) (TX SBN 24065060)
2001 Ross Avenue
Dallas, TX  75201
Phone: 214.953.6500
Fax: 214.953.6503
E-mail: larry.carlson@bakerbotts.com
E-mail: kurt.pankratz@bakerbotts.com
E-mail: matthew.colagrosso@bakerbotts.com

BAKER BOTTS L.L.P.
Christopher W. Kennerly (SBN 255932)
Kevin E. Cadwell (SBN 255794)
620 Hansen Way
Palo Alto, CA  94304
Phone: 650.739.7500
Fax: 650.739.7699
E-mail: chris.kennerly@bakerbotts.com
E-mail: kevin.cadwell@bakerbotts.com

Attorneys for Plaintiff and Counterdefendant
FUJITSU LIMITED

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FUJITSU LIMITED,<br><br>                              Plaintiff,<br><br>        v.<br><br>BELKIN INTERNATIONAL, INC.,<br>BELKIN, INC., D-LINK CORPORATION,<br>D-LINK SYSTEMS, INC., NETGEAR, INC.,<br>ZYXEL COMMUNICATIONS CORPORATION,<br>and ZYXEL COMMUNICATIONS, INC.,<br><br>                              Defendants. | CASE NO. 10-cv-03972-LHK (HLR)<br><br>**PLAINTIFF FUJITSU'S OPPOSITION TO DEFENDANT NETGEAR'S MOTION TO DISQUALIFY BAKER BOTTS AND FOR STAY PENDING RESOLUTION**<br><br>**Date:      December 16, 2010**<br>**Time:      1:30 p.m.**<br>**Place:     Courtroom 4, 5th Floor**<br>**Judge:     Hon. Lucy H. Koh**<br>**Trial Date:  None** |
| NETGEAR, INC.,<br><br>                              Counterplaintiff,<br><br>        v.<br><br>FUJITSU LIMITED,<br>                              Counterdefendant. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

I.   ISSUES TO BE DECIDED ............................................................................ 4

II.  STATEMENT OF FACTS ............................................................................. 4

   A.   The Relevant Matters ........................................................................ 4

      1.   This Action ............................................................................ 4

      2.   Reexamination of the Ruckus Patent ..................................... 5

      3.   NETGEAR Indemnity Matter ................................................ 6

   B.   Baker Botts Representation of Fujitsu ............................................. 6

      1.   2002 to 2005, Fujitsu and NETGEAR Communicate Twenty-Six Times Concerning the Ozawa Patent Infringement Claim ............................ 6

      2.   2005 to 2009, Reexamination of the Ozawa Patent ............... 7

      3.   February 1, 2010, Letter from Fujitsu to NETGEAR ........... 8

   C.   NETGEAR Baker Botts Relationship ............................................. 8

      1.   Indemnity Matter ................................................................... 8

      2.   Reexamination of the Ruckus Patent ..................................... 9

      3.   Fujitsu Adversity Requires Disengagement ......................... 11

      4.   Baker Botts Did Not Receive from NETGEAR Confidential Information Material to its Representation of Fujitsu in this Action ................... 11

III. ARGUMENT ................................................................................................ 13

   A.   Governing Law ................................................................................ 13

   B.   NETGEAR's Burden ....................................................................... 14

   C.   Baker Botts Is Not Disqualified on a Theory of Concurrent Representations ......... 14

   D.   Baker Botts Is Not Disqualified on a Theory That It Received Confidential Information Material to its Representation of Fujitsu .......................... 16

   E.   Baker Botts Is Not Disqualified on a Theory of Successive Representations ......... 18

   F.   The Court Should Not Stay this Action .......................................... 20

1

## **TABLE OF AUTHORITIES**

2

3

**Page(s)**

CASES

4

*All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*,
5
   No. C 07-1200, 2008 WL 5484552 (N.D. Cal. Dec. 18, 2008) ...............................14

6

*Concat LP v. Unilevel*,
   PLC, 350 F. Supp. 2d 796 (N.D. Cal. 2004)...........................................................14

7

*Department of Corporations v. Speedee Oil Change Sys., Inc.*,
8
   20 Cal. 4th 1135 (1999) ........................................................................................18

9

*Farris v. Firemans Fund Ins. Co.*,
10
   119 Cal. App. 4th 671 (2004) .........................................................................16, 19

11

*Flatt v. Superior Court*,
   9 Cal. 4th 275 (1994) ............................................................................14, 15, 18

12

*Forrest v. Baeza*,
13
   58 Cal. App. 4th 65 (1997) ...........................................................................15, 16

14

*Foster Poultry Farms v. ConAgra Foods Refrigerated Foods Co.*,
15
   No. F 04-5810 AWI LJO, 2005 WL 2319186 (E.D. Cal. Sept. 22, 2005) .............19

16

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
   143 Cal. App. 4th 50 (2006) .........................................................................16, 19

17

*Friskit, Inc. v. RealNetworks, Inc.*,
18
   No. C 03-05085 WWS, 2007 WL 1994204 (N.D. Cal. July 5, 2007)..................3, 15

19

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*,
20
   No. C 08-04909 SI, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) ...........13, 14, 16, 19

21

*In Re County of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ................................................................................13

22

*Openwave Sys., Inc. v. 724 Solutions (US) Inc.*,
23
   No. C 09-3511 RS, 2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) .........................19

24

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
   760 F.2d 1045 (9th Cir. 1985) ..............................................................................14

25

*Sabrix, Inc. v. Carolina Cas. Ins. Co.*,
26
   No. CV-02-1470-HU, 2003 WL 23538035 (D. Or. July 23, 2003)........................15

27

28

*San Francisco v. Cobra Solutions, Inc.*,
    38 Cal. 4th 839 (2006) ............................................................................18

*Santa Teresa Citizen Action Group v. San Jose*,
    114 Cal. App. 4th 689 (2004) ................................................................19

*Shurance v. Planning Control Int'l, Inc.*,
    839 F.2d 1347 (9th Cir. 1988) ...............................................................14

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
    6 Cal. App. 4th 1050 (1992) ..................................................................14

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009)..............................................................13

*UMG Recordings v. MySpace, Inc.*,
    526 F. Supp. 2d 1046 (C.D. Cal. 2007) .................................................19

*ViChip Corp. v. Lee*,
    No. C 04-2914 PJH, 2004 WL 2780170 (N.D. Cal. Dec. 3, 2004) .........14

STATUTES

28 U.S.C. § 1295(a)(1)...................................................................................13

35 U.S.C. §§ 301-02 .........................................................................................5

35 U.S.C. §§ 301-17 .........................................................................................5

OTHER AUTHORITIES

Civil Local Rule 7-4(a)(3) ................................................................................4

Civil Local Rule 7-4(a)(4) ................................................................................4

Civil Local Rule 11-4(a)(1) ............................................................................13

OPPOSITION TO MOTION TO DISQUALIFY                    CASE NO. 10-cv-03972-LHK (HLR)

1

**INTRODUCTION**

2      For eight years Baker Botts L.L.P. ("Baker Botts") has represented plaintiff Fujitsu

3  Limited ("Fujitsu") in the assertion of a claim against NETGEAR, Inc. ("NETGEAR") for

4  infringement of Fujitsu's United States Patent No. Re. 36,769 (the "Ozawa Patent").   This

5  adversity was not a secret to NETGEAR.   During the four year period from 2002 to 2005,

6  NETGEAR, through its counsel, Wilson Sonsini, and Fujitsu, through its counsel Baker Botts,

7  exchanged numerous letters arguing the merits of Fujitsu's claim for infringement of the Ozawa

8  Patent.   The parties met twice.   One of those meetings was attended by four Wilson Sonsini

9  lawyers representing NETGEAR and by NETGEAR's Vice President of Engineering.

10     In response to the claim of NETGEAR and others that the Ozawa patent was invalid in

11  light of certain prior art, in May 2005 Baker Botts initiated a reexamination proceeding to allow

12  the United States Patent and Trademark Office ("PTO") to assess the merit of the invalidity

13  claim.   The PTO determined that most of the original claims of the Ozawa Patent and forty-one

14  new claims were patentable over the prior art cited by NETGEAR and others.   On December 8,

15  2009, the PTO issued the Ozawa Patent reexamination certificate, at which point the patent was

16  ripe for continued assertion against NETGEAR.

17     The reexamination proceeding was not a secret to NETGEAR:  By letter dated September

18  30, 2005, Baker Botts, on behalf of Fujitsu, advised NETGEAR's outside counsel that it had

19  begun the reexamination proceeding.   The entire reexamination proceeding was open to public

20  inspection, posted on the PTO website, easily monitored by NETGEAR's outside counsel or by

21  the General Counsel that it hired in October 2004.

22     In late 2009, as the Ozawa Patent was emerging from reexamination, NETGEAR briefly

23  engaged Baker Botts on two matters.   One was a reexamination proceeding concerning a patent

24  asserted by Ruckus Wireless, Inc. ("Ruckus") against Rayspan Corporation ("Rayspan") and

25  NETGEAR.   The other involved indemnity obligations possibly owed NETGEAR by its

26  suppliers.  NETGEAR never engaged Baker Botts to defend the Ruckus lawsuit against Rayspan

27

28

1

1    and NETGEAR, nor did it ever engage Baker Botts to defend any of the claims or litigation

2    underlying the indemnity matter.

3           The Ruckus reexamination proceeding is not substantially related to this action.  The

4    Ozawa patent is directed at different technology than the Ruckus Patent.  This case will involve a

5    comparison between the claims of the Ozawa Patent and particular NETGEAR products.  The

6    Ruckus reexamination involves a comparison between the claims of the Ruckus Patent and

7    particular types of publicly available prior art, printed publications and patents.

8           The indemnity matter is also not substantially related to this action.  NETGEAR has not

9    filed a third party claim for indemnity.  Whether it is able to recoup any of the liability it owes

10   Fujitsu from a third party, such as an insurer or indemnitor, is irrelevant to the infringement,

11   validity, and damages issues in this case and is of no moment to Fujitsu.

12          NETGEAR argues that it provided Baker Botts with confidential information concerning

13   its WPN824 router that is material to this litigation.  Such information is likely not confidential:

14   NETGEAR itself has published on the Internet, for all the world to see, a 174 page manual full of

15   technical information about its WPN824 router.  Information about the internal structure of the

16   router, including its antenna array, is available from other sources on the Internet.

17          Even if it was confidential, any such information is not material to this action.  The

18   WPN824 router, one of seventy-two NETGEAR products potentially accused by Fujitsu, is

19   implicated by the few claims of the Ozawa Patent that describe a system that includes both the

20   card type input/output interface device to which the Ozawa Patent is directed and "an external

21   device providing a peripheral function for the electronic device."  *E.g*., Ozawa Patent, Doc. 36-3,

22   Ex. C, Claim 45.  With respect to these claims, the WPN824 router meets the "external device"

23   limitation.  Technical information about the router, however, is not material because these claims

24   do not require that the external device have any particular structure or functionality.  A router of

25   any structure or functionality would meet the "external device" limitation.

26          NETGEAR waived several conflicts in connection with the two Baker Botts

27   engagements, including any possible conflict arising from the fact that Baker Botts was actively

28

OPPOSITION TO MOTION TO DISQUALIFY                          CASE NO. 10-cv-03972-LHK (HLR)

1  asserting against NETGEAR an infringement claim on behalf of one of its other clients,

2  MOSAID Technologies, Inc. ("MOSAID").   When Baker Botts sought an express, written

3  waiver with respect to the Fujitsu claim for infringement of the Ozawa patent, which happened

4  before Baker Botts began significant substantive work on the reexamination, NETGEAR balked.

5  At that point, Baker Botts took the ethically correct step of disengaging from its brief

6  representation of NETGEAR in a manner that minimized any prejudice to NETGEAR.   Baker

7  Botts never charged NETGEAR a fee.

8        NETGEAR now argues that Baker Botts' brief representation of it requires that Baker

9  Botts be ousted from its eight year representation of Fujitsu in its assertion of the Ozawa Patent.

10  This Court should reject that argument.   In this district, motions to disqualify are "strongly

11  disfavored."  *See* section III.B. *infra*.  Judges in this district have often stated that disqualification

12  is a "drastic measure" that should be imposed only when "absolutely necessary." *Id.*

13        As stated above and explained more fully below, Baker Botts did not receive from

14  NETGEAR any confidential information material to this case.   The Ruckus reexamination and

15  NETGEAR indemnity matters are not substantially related to this case.  Even if the matters were

16  substantially related, California law is clear that the result would be Baker Botts' disqualification

17  from representing NETGEAR, the second client, not its disqualification from representing

18  Fujitsu, the first client.

19        California law is also clear that when a lawyer concurrently represents clients with

20  adverse interests, that conflict is properly resolved by the lawyer's disengaging from the

21  representation of the second client.   Continued representation of the first client is entirely

22  permissible.   As Northern District of California Judge William Schwarzer recently said in a

23  concurrent representation case involving very similar facts:   "It is thus clear that the duty of

24  loyalty runs to the first client and precludes disqualification at the instance of the later-acquired

25  client. . . .  To enforce that duty by disqualifying the attorney from representing his existing

26  client would turn the duty of loyalty on its head." *Friskit, Inc. v. RealNetworks, Inc.*, No. C 03-

27  05085 WWS, 2007 WL 1994204, at *1-2 (N.D. Cal. July 5, 2007).

28

OPPOSITION TO MOTION TO DISQUALIFY                                    CASE NO. 10-cv-03972-LHK (HLR)

## I.    ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), Fujitsu identifies the following issues to be decided:

1.    Is Baker Botts disqualified from its representation of Fujitsu in this action on a theory of concurrent representations?

2.    Is Baker Botts disqualified on a theory that it received from NETGEAR confidential information that is material to its representation of Fujitsu in this action?

3.    Is Baker Botts disqualified from representing Fujitsu in this action on a theory of successive representations?

## II.    STATEMENT OF FACTS

Pursuant to Civil Local Rule 7-4(a)(4), Fujitsu provides the following statement of relevant facts.

### A.    The Relevant Matters

#### 1.    This Action

In this action, Fujitsu claims that certain products of NETGEAR (and of three other defendants) infringe claims of Fujitsu's Ozawa Patent.  The Ozawa Patent is directed to card type input/output interface devices.  Showalter Decl. ¶ 19.  A card type input/output interface device facilitates communication between an electronic device (for example, a personal computer or a laptop) and an external device (for example, a printer or a router).  *Id.* ¶ 21.  A router is a device used to communicate packets of data between, for example, a computer and the Internet.  *Id.*

An external device such as a printer or a router by itself would not infringe any of the claims of the Ozawa Patent because such an external device is not a card type input/output interface device.  A few of the apparatus or system claims in the Ozawa Patent claim a card type input/output interface device in the context of a larger electronic system that includes "an external device providing a peripheral function for the electronic device."  *E.g.,* Ozawa Patent, Claim 45.  In the context of these few claims, a router would meet the "external device"

4

1   limitation. These claims of the Ozawa Patent do not require that the "external device" have any
2   particular structure or functionality. Instead, the claims require only "an external device
3   providing a peripheral function for the electronic device." *Id.*

4          The infringement issue in this case will entail a comparison between the asserted claims
5   of the Ozawa Patent and NETGEAR's card type interface units. Showalter Decl. ¶ 19. Fujitsu
6   will have the burden of proving that NETGEAR's card type interface units meet all of the
7   structural or functional limitations of at least one claim of the Ozawa Patent. If Fujitsu asserts
8   any of the few claims of the Ozawa Patent that claim a card type interface unit used with an
9   external device (such as a router), Fujitsu will have to show that NETGEAR sells both card type
10  interface units, meeting all of the required structural or functional limitations, and external
11  devices that can be used with such units. Again, the Ozawa Patent does not require that the
12  external device, such as a router, have any particular structure or functionality.

13         NETGEAR has not filed in this action a third party claim for indemnity against any of its
14  suppliers.

15                    **2.      Reexamination of the Ruckus Patent**

16         Reexamination is a procedure afforded by statute that allows a party to ask the PTO to
17  review a second time the validity of an issued patent in light of particular types of prior art. 35
18  U.S.C. §§ 301-17. By statute, in a reexamination the PTO considers only two types of prior art,
19  patents and printed publications, both of which are in the public domain. 35 U.S.C. §§ 301-02.

20         In late 2009 Rayspan and then NETGEAR approached Baker Botts about a
21  reexamination, already underway at the PTO, of the Ruckus Patent being asserted against them,
22  United States Patent No. 7,193,562. Showalter Decl. ¶ 8. The Ruckus Patent is directed to
23  circuit boards having a peripheral antenna apparatus with selectable antenna elements. *Id.* ¶ 19.
24  The Ruckus Patent does not claim card type input/output interface devices such as those claimed
25  by the Ozawa Patent.

26         The reexamination proceeding involving the Ruckus Patent will entail a comparison
27  between the claims of that patent and particular prior art patents and printed publications, which

28

                                                  5

are necessarily in the public domain.  Showalter Decl. ¶ 19.  Products of NETGEAR are irrelevant to the Ruckus Patent reexamination proceeding because they are not patents or printed publications.  *Id*.  The Ozawa Patent is not involved in the Ruckus Patent reexamination in any way. *Id*.

### 3.    NETGEAR Indemnity Matter

As described below, NETGEAR briefly engaged Baker Botts with respect to claims for indemnity that it might have against its suppliers.  NETGEAR did not, however, engage Baker Botts with respect to any of the underlying claims or lawsuits from which the indemnity claims arose.  Pankratz Decl. ¶ 9.  As also described below, at the request of Rayspan and NETGEAR, Baker Botts submitted a proposal for the defense of the lawsuits in which Ruckus was suing Rayspan and NETGEAR for infringement, but Rayspan and NETGEAR quickly advised Baker Botts that they had selected other counsel for that engagement.  Showalter Decl. ¶ 9.  Baker Botts never represented NETGEAR in any litigation.

### B.    Baker Botts Representation of Fujitsu

Baker Botts has represented Fujitsu in its assertion of the Ozawa Patent against NETGEAR (and the other defendants in this case) for eight years, from 2002 to the present.

### 1.    2002 to 2005, Fujitsu and NETGEAR Communicate Twenty-Six Times Concerning the Ozawa Patent Infringement Claim

Fujitsu first asserted its claim for infringement of the Ozawa Patent against NETGEAR by letter dated March 19, 2002.  *Id*. ¶ 3.  After NETGEAR responded through its outside counsel, Wilson Sonsini, Fujitsu had Baker Botts correspond on its behalf with Wilson Sonsini. *Id*.  During the period of 2002 through September of 2005, NETGEAR counsel Wilson Sonsini and Fujitsu counsel Baker Botts exchanged twenty-six letters and emails concerning Fujitsu's claim for infringement of the Ozawa Patent against NETGEAR.  *Id*.  During this time, NETGEAR outside counsel Wilson Sonsini attended two in-person meetings and one video conference meeting with Baker Botts to discuss the infringement claim.  *Id*.  At one of the two in-person meetings, NETGEAR's Vice President of Engineering, Chuck Olson, attended in addition to four Wilson Sonsini lawyers.  *Id*.

OPPOSITION TO MOTION TO DISQUALIFY                                    CASE NO. 10-cv-03972-LHK (HLR)

## 2.    2005 to 2009, Reexamination of the Ozawa Patent

In resisting Fujitsu's claim for infringement of the Ozawa Patent, NETGEAR counsel asserted, among other things, that the patent was invalid in light of certain prior art that was not before the examiner who allowed the Ozawa Patent to issue. *Id.* ¶ 4.  Other infringers that Fujitsu was pursuing also cited prior art against the Ozawa Patent.  *Id.*  Fujitsu decided to petition the PTO for reexamination of the Ozawa Patent to test these invalidity claims.  *Id.*  This was seven months after NETGEAR hired its General Counsel, Albert Liu.  Kim Decl., Doc. 35, ¶ 3.  Baker Botts filed the petition for reexamination on May 18, 2005.  Showalter Decl. ¶ 4.  On September 30, 2005, Baker Botts wrote NETGEAR counsel a letter saying:

> As I am sure you are now aware, Fujitsu has requested reexamination of the Ozawa Patent by the United States Patent and Trademark Office.  I am writing this letter to reiterate Fujitsu's continued concern that NETGEAR infringes several valid claims of the Ozawa Patent.

> If NETGEAR is interested in a license to the Ozawa Patent at a discounted rate, please contact me by November 1, 2005.  If you do not contact me by November 1, 2005, a discounted license will not be available thereafter.

*Id.* ¶ 6.  NETGEAR never responded to this letter.  *Id.*

Reexamination proceedings are posted on the PTO website.  *Id.* ¶ 7.  It would have been a simple matter for NETGEAR, either through its General Counsel, Albert Liu, or its outside counsel, Wilson Sonsini, to monitor the progress of the reexamination of the Ozawa Patent that Fujitsu had asserted against NETGEAR.  *Id.*

Although Baker Botts partner Bart Showalter signed the original request for reexamination of the Ozawa Patent, other Baker Botts lawyers performed the substantive work during the four-year reexamination.  *Id.* ¶ 5.

At the conclusion of the reexamination proceeding, the PTO confirmed the patentability of forty-five of the original Ozawa Patent claims and allowed an additional forty-one new claims.  *Id.* ¶ 4.  The reexamination certificate issued on December 8, 2009.  *Id.*  At that point, the reexamined Ozawa Patent was ripe for continued assertion against NETGEAR, the PTO having rejected NETGEAR's assertions of invalidity.  *Id.*

3.      **February 1, 2010, Letter from Fujitsu to NETGEAR**

On February 1, 2010, Fujitsu in-house counsel Michael Shpizner wrote NETGEAR concerning Fujitsu's claim for infringement of the Ozawa Patent.  Busse Decl., Doc. 38, ¶ 17, Ex. 1.  Mr. Shpizner asserted that fifteen of NETGEAR's card type interface units infringed the Ozawa Patent and that fifty-seven other products, including the WPN824 router, infringed the Ozawa Patent "when used, sold, or offered for sale in combination with one or more of the card models identified above."  *Id.*  These fifty-seven products would meet the Ozawa Patent claim limitation requiring "an external device providing a peripheral function for the electronic device" when coupled with a card type interface unit.

C.      **NETGEAR Baker Botts Relationship**

1.      **Indemnity Matter**

In approximately May 2009, NETGEAR General Counsel Andrew Kim contacted Baker Botts partner Kurt Pankratz and expressed a desire to engage Baker Botts with respect to NETGEAR's indemnity relationships with its suppliers.  Pankratz Decl. ¶ 3.  Mr. Pankratz was then representing another Baker Botts client, MOSAID, in asserting a portfolio of wireless technology patents against NETGEAR, and he so advised Mr. Kim.  *Id.*  Indeed, during this time, Mr. Pankratz, representing MOSAID, met with Mr. Kim in an effort to negotiate a license agreement with NETGEAR.  *Id.*  Despite this direct adversity, Mr. Kim said that NETGEAR was still interested in engaging Baker Botts.  *Id.*

NETGEAR, without Baker Botts involvement, reached an agreement with MOSAID pursuant to which MOSAID agreed that Baker Botts could represent NETGEAR.  *Id.* ¶ 4.  NETGEAR and Baker Botts signed the engagement letter for the indemnity matter on January 11, 2010.  *Id.* ¶ 9.  In addition to an express waiver for the MOSAID matter, NETGEAR agreed "that attorneys at the Firm may represent a party with interests directly adverse to yours, so long as that adverse representation is not substantially related to the matters we have been engaged to handle on your behalf, and so long as we believe that our responsibilities to you and the other client would not be adversely limited by the concurrent representations."  *Id.*

1    NETGEAR agreed to waive other conflicts.  For example, Baker Botts represented two of

2    NETGEAR's chip suppliers, Texas Instruments and Infineon, and NETGEAR agreed to carve

3    those suppliers out of Baker Botts' representation of it with respect to indemnity matters.  *Id.* ¶ 5.

4    Mr. Pankratz was not involved in the Baker Botts eight-year representation of Fujitsu in

5    its assertion of the Ozawa Patent against NETGEAR.  *Id.* ¶ 10.  Accordingly, when he agreed to

6    the NETGEAR engagement for the indemnity matter, he did not appreciate the adversity

7    between Fujitsu and NETGEAR.  *Id.*

8    Because of Mr. Pankratz's ongoing, direct adversity to NETGEAR, NETGEAR and Mr.

9    Pankratz agreed that Baker Botts would staff the NETGEAR indemnity matter with lawyers

10   other than Mr. Pankratz who were located at Baker Botts' Palo Alto office. *Id.* ¶ 6.  The Palo Alto

11   lawyers recorded a total of 14.2 hours of time for the indemnity matter between February 9 and

12   February 22, 2010.  *Id.* ¶ 14.  Baker Botts never sent NETGEAR a bill for the indemnity matter.

13   *Id.*

14            **2.        Reexamination of the Ruckus Patent**

15   In the Fall of 2009, Sandra Godsey, in-house counsel for Rayspan, contacted Baker Botts

16   partner Mr. Showalter about the possibility of Baker Botts representing Rayspan in connection

17   with an ongoing reexamination of the Ruckus Patent.  Showalter Decl. ¶ 8.  Later, Mr. Showalter

18   learned that NETGEAR had joined Rayspan in initiating this reexamination.  *Id.*  He submitted

19   to Rayspan and NETGEAR a proposal for this representation on November 25, 2009.  *Id.* ¶ 9.

20   Rayspan and NETGEAR also requested a proposal for the possible representation of them by

21   Baker Botts in the patent infringement lawsuits that Ruckus had filed against them.  *Id.*  In

22   response to that request, Mr. Showalter submitted a budget proposal on December 2, 2009, but

23   Rayspan and NETGEAR quickly advised him that they had decided to employ other counsel to

24   represent them in the Ruckus litigation.  *Id.*

25   Baker Botts and NETGEAR signed an engagement letter for the Ruckus Patent

26   reexamination on January 4, 2010.  *Id.* ¶ 10.  This engagement letter, like the January 11, 2010,

27   engagement letter for the indemnity matter, provided that NETGEAR "agree[d] that attorneys at

28

9

1  the firm may represent a party with interests directly adverse to yours, so long as that adverse
2  representation is not substantially related to the matters we have been engaged to handle on your
3  behalf, and so long as we believe that our responsibilities to you and the other client would not
4  be adversely limited by the concurrent representations." *Id.*

5          As Mr. Showalter explains in his Declaration:  "Because it had been a few years since
6  Fujitsu actively asserted its claim for infringement of the Ozawa Patent against NETGEAR,
7  because my involvement in the reexamination of the Ozawa Patent was limited, because
8  NETGEAR and other infringers were not involved in the reexamination of the Ozawa patent,
9  because of the broad waiver in the engagement letter, and because these matters did not seem to
10  be related, I simply overlooked the fact that adversity between Fujitsu and NETGEAR might be
11  an issue in connection with NETGEAR's engagement of Baker Botts on the reexamination
12  matter.  That oversight on my part was unintentional, not purposeful."  Showalter Decl. ¶ 11.

13          On February 1, 2010, Mr. Busse received a letter from Fujitsu in-house counsel Michael
14  Shpizner reasserting the claim for infringement of the Ozawa Patent, which had been emerged
15  from reexamination.  Busse Decl. ¶ 17.  Mr. Busse did not mention that letter to Mr. Showalter.
16  Showalter Decl. ¶ 15.  Instead, four days later Mr. Busse sent Mr. Showalter a PowerPoint
17  concerning the WPN824 router, the device accused of infringement in the Ruckus litigation.  *Id.*
18  ¶ 16.  Mr. Showalter thought that was odd.  *Id.*  He had never requested information about
19  products of Rayspan and NETGEAR since such products were irrelevant in the reexamination
20  proceeding.  *Id.*  Mr. Showalter never reviewed that PowerPoint.  *Id.*

21          Although Baker Botts opened a billing number for representation of NETGEAR in
22  connection with reexamination of the Ruckus Patent, because Mr. Showalter always regarded
23  Rayspan as the lead client on this engagement, no Baker Botts lawyer recorded any time to the
24  NETGEAR billing number.  *Id.* ¶ 17.  Instead, all time was recorded to a billing number for
25  Rayspan.  Baker Botts lawyers, including Mr. Showalter, recorded a total of sixteen hours of
26  time on that billing number, the last entry dated January 20, 2010.  *Id.* ¶ 18.  Baker Botts did not
27  send a bill to Rayspan or NETGEAR.  *Id.*

28

10

### 3.     Fujitsu Adversity Requires Disengagement

In early February 2010, Mr. Showalter and Mr. Pankratz recognized that because of adversity between the eight-year Baker Botts representation of Fujitsu on the Ozawa Patent and the very recent NETGEAR engagements, it would be prudent to obtain from NETGEAR an express waiver for Fujitsu similar to NETGEAR's express waiver for the ongoing, direct adversity with MOSAID.  Showalter Decl. ¶ 14; Pankratz Decl. ¶ 11.  During the week of February 8, 2010, Mr. Pankratz called NETGEAR in-house counsel Brian Busse to explain and discuss the Fujitsu situation.  Pankratz Decl. ¶ 11.  Mr. Busse's response was that a waiver for Fujitsu seemed reasonable, but that he would need to check with other people at NETGEAR.  *Id.*  Mr. Pankratz said that he would forward an express, written waiver with respect for Fujitsu similar to the express, written waiver for MOSAID.  Mr. Pankratz forwarded such a waiver letter to Mr. Busse on February 15, 2010.  *Id.*  Surprisingly, NETGEAR then advised that it was unwilling to waive any conflict concerning Fujitsu.  *Id.* ¶ 12  There were some additional discussions by email and telephone.  *Id.*  Baker Botts offered to erect an ethical wall.  *Id.*  NETGEAR refused to budge.  *Id.*  Baker Botts then determined that it was ethically required to disengage from the representation of NETGEAR and Rayspan and so advised both of them.  Showalter Decl. ¶ 14; Pankratz Decl. ¶ 13.

Baker Botts disengaged in a manner that was calculated to minimize any prejudice to NETGEAR.  Showalter Decl. ¶ 14; Pankratz Decl. ¶ 13.  For example, in late February 2010, despite lack of resolution of the Fujitsu issue, NETGEAR requested that Baker Botts send it a draft indemnification letter.  Baker Botts accommodated that request, and NETGEAR's Andrew Kim responded by e-mail on February 26, 2010:  "Thanks guys — we really appreciate it.  Best regards, Andrew."  Pankratz Decl. ¶ 13.

### 4.     Baker Botts Did Not Receive from NETGEAR Confidential Information Material to its Representation of Fujitsu in this Action

As Mr. Showalter and Mr. Pankratz explain in their Declarations, Baker Botts did not receive from NETGEAR any confidential information material to Baker Botts' representation of Fujitsu in connection with the Ozawa Patent infringement claim.

11

1    NETGEAR never provided Baker Botts with any information about its card type interface

2    units that are at issue in this action.  Showalter Decl. ¶ 20; Pankratz Decl. ¶ 16.

3    NETGEAR claims to have provided Baker Botts with information about its WPN824

4    router, the device accused of infringement in the Ruckus lawsuit, even though Baker Botts never

5    asked for such information, that product was irrelevant to the reexamination of the Ruckus

6    Patent, and Baker Botts was never engaged to defend the Ruckus lawsuit.  Technical information

7    about the WPN824 router is not material to this action.  Showalter Decl. ¶¶ 20-21.  That is

8    because the few claims of the Ozawa Patent that describe a system that includes an external

9    device, such as a router, coupled with a card type interface unit, do not require any specific

10   structure or functionality for the external device.  *Id*. ¶ 21.  Instead, these claims require only "an

11   external device providing a peripheral function for the electronic device."  *Id*.; *e.g.*, Ozawa

12   Patent, Claim 45.  Simply put, any old router will do.

13   Even if information about the structure or functionality of the WPN824 router was

14   material to this action (and it is not), NETGEAR is wrong in claiming that such information is

15   confidential.  In that connection, NETGEAR has published a 174-page reference manual for its

16   WPN824 router that is chock full of technical information about the structure and functionality

17   of the router.  That technical manual, which is attached to Mr. Showalter's Declaration ¶ 22, Ex.

18   A, is available on the World Wide Web for all the world to see at

19   http://kbserver.netgear.com/pdf/wpn824_ref_manual.pdf.  This technical manual describes the

20   "key features" of the WPN824 router, describes how to connect the router to the internet,

21   discusses wireless configuration, content filtering, maintenance, and troubleshooting for the

22   WPN824 router, addresses "advanced configuration of the router," has an Appendix A describing

23   "technical specifications" of the router, and has an Appendix B addressing "network, routing,

24   firewall, and basics" concerning the router.  *Id.*  Given this 174 page technical manual

25   concerning the WPN824 router that NETGEAR has placed in the public domain, its claim that

26   information about the router is confidential is simply not credible.

27

28

OPPOSITION TO MOTION TO DISQUALIFY                                    CASE NO. 10-cv-03972-LHK (HLR)

1    There is much additional information about the WPN824 router in the public domain.

2    For example, information about the "internal details" of the router and its antenna structure and

3    data concerning testing and performance can be found at http://www.tomsguide.com/us/review-

4    wpn824,review-428.html.  Showalter Decl. ¶ 22.  According to this source, the WPN824 router

5    uses "conventional construction."   http://www.tomsguide.com/us/review-wpn824,review-428-

6    3.html.  "[T]he RangeMax client doesn't use a fancy antenna array."  *Id.*

7    NETGEAR claims that it provided Baker Botts with information about its indemnity

8    relationship with its suppliers, but NETGEAR's indemnity relationship with its suppliers is not

9    material to this action.  NETGEAR has not asserted a third party claim in this action against any

10   supplier.  NETGEAR is solvent and will pay any final judgment.  Whether NETGEAR is able to

11   recoup some of its liability to Fujitsu from a third party is of no moment to Fujitsu.  Similarly, if

12   NETGEAR wants to settle this case, Fujitsu will expect it to pay fair value for the infringement

13   claim based upon the strength of evidence concerning infringement, validity, and damages.

14   Again, whether NETGEAR is able to recoup some portion of a settlement payment from a third

15   party does not matter to Fujitsu.  Pankratz Decl. ¶¶ 15-16.

16   **III.    ARGUMENT**

17      **A.    Governing Law**

18      Because this is a patent case, appellate review will be at the Court of Appeals for the

19   Federal Circuit.   28 U.S.C. § 1295(a)(1).   In reviewing a district court's decision regarding

20   attorney disqualification, the Court of Appeals for the Federal Circuit applies the law of the

21   regional circuit, in this case the Ninth Circuit.  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg.*

22   *Corp.*, 587 F.3d 1339, 1357 (Fed. Cir. 2009).  This District's Civil Local Rule 11-4(a)(1) requires

23   that all attorneys who practice before this Court must "comply with the standards of professional

24   conduct required of members of the State Bar of California."   Accordingly, this Court applies

25   California law in deciding motions to disqualify.  *In Re County of Los Angeles*, 223 F.3d 990,

26   995 (9th Cir. 2000); *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-04909 SI,

27   2010 WL 1136478, at *4 (N.D. Cal. Mar. 20, 2010).

28

OPPOSITION TO MOTION TO DISQUALIFY                              CASE NO. 10-cv-03972-LHK (HLR)

1

**B.      NETGEAR's Burden**

2

In this district, "[m]otions to disqualify counsel are strongly disfavored." *ViChip Corp. v.*

3

*Lee*, No. C 04-2914 PJH, 2004 WL 2780170, at *1 (N.D. Cal. Dec. 3, 2004).  The Ninth Circuit

4

has held that "disqualification motions should be subjected to 'particularly stringent judicial

5

scrutiny.'" *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988);

6

(quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

7

Judges in this district have frequently commented that disqualification is a "drastic measure" that

8

"should only be imposed when absolutely necessary." *Genentech*, 2010 WL 1136478, at *4; *All*

9

*Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, No. C 07-1200, 2008 WL 5484552, at *4

10

(N.D. Cal. Dec. 18, 2008); *Concat LP v. Unilevel*, PLC, 350 F. Supp. 2d 796, 814 (N.D. Cal.

11

2004).

12

**C.      Baker Botts Is Not Disqualified on a Theory of Concurrent Representations**

13

NETGEAR claims that, absent informed consent, a lawyer cannot represent a first client

14

and then undertake a matter for a second client that is adverse to the first client, even if the

15

matters are unrelated.  Motion at 10.  Fujitsu agrees.  Citing *Flatt v. Superior Court*, 9 Cal. 4th

16

275 (1994), and *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050 (1992), and

17

invoking the "hot potato" rule, NETGEAR then argues that when such a concurrent

18

representation situation occurs, it is impermissible for a lawyer to cure the conflict by

19

disengaging from representation of the second client and continuing to represent the first client.

20

Motion at 10-11.  That is wrong.

21

The "hot potato rule" prohibits a lawyer's "severing the relationship with the ***pre-existing***

22

client" to undertake or continue representation of a second client.  *Flatt*, 9 Cal. 4th at 288

23

(emphasis added).  The "hot potato rule" does not apply when a lawyer disengages from

24

representing the second client in favor of the first client.  As explained by one court:

25

> Notably, the Bullivant Firm has withdrawn from the representation
> of the "second" client, not the "first."  Thus, the rationale expressed

26

> by the courts following the "hot potato" rule, that allowing counsel
> to choose which client to drop creates an incentive for counsel to

27

> cease representing the first client in favor of a more lucrative
> second client, has no applicability here.

28

14

1  *Sabrix, Inc. v. Carolina Cas. Ins. Co.*, No. CV-02-1470-HU, 2003 WL 23538035, *4 (D. Or.

2  July 23, 2003).

3      In *Friskit, Inc. v. RealNetworks, Inc.*, No. C. 03-05085 WWS, 2007 WL 1994204 (N.D.

4  Cal. Jul. 5, 2007), Foley & Lardner filed an action on behalf of Friskit against RealNetworks.

5  Later, Rob Glaser, a 32% owner of RealNetworks, engaged Foley & Lardner on an unrelated

6  matter.  Glaser, therefore, was the second client.  Invoking the prohibition against concurrent

7  representation of adverse interests, Glaser sought to disqualify Foley & Lardner from

8  representing Friskit.  Senior Judge Schwarzer denied that motion.  "Glaser cites no authority for

9  the proposition that an attorney may be disqualified from representing his existing client on the

10  motion of a later-acquired client.  The cases do not support such a proposition."  *Id.* at *1.  Judge

11  Schwarzer noted that the *Flatt* court held that the duty of loyalty owed the first client negates any

12  duty on the part of the attorney to the second client.  *Id.*  ***"It is thus clear that the duty of loyalty***

13  ***runs to the first client and precludes disqualification at the instance of the later-acquired***

14  ***client."***  *Id.* (emphasis added).  Judge Schwarzer concluded:

15          It is implicit under the California cases, and the Rules of
16          Professional Conduct, that the duty of loyalty runs to the existing
            client, and is not subordinate to any duty owed a later-acquired
17          client.  That duty bars the attorney from taking on a representation
            that conflicts with that of the existing client.  ***To enforce that duty***
18          ***by disqualifying the attorney from representing his existing client***
            ***would turn the duty of loyalty on its head.***

19  *Id.*, at *2 (emphasis added).

20      Judge Schwarzer's analysis of California law is correct:  In the concurrent adverse

21  representation situation, the second client cannot disqualify the lawyer from representing the first

22  client.  *Forrest v. Baeza*, 58 Cal. App. 4th 65 (1997), is on point.  This was a shareholder

23  derivative action in which a law firm represented both the corporation and two of its

24  shareholders, who were accused of embezzlement.  The California Court of Appeals concluded

25  that such dual representation was impermissible given the rule against concurrent representation

26  of clients on adverse matters.  58 Cal. App. 4th at 74.  The court disqualified the lawyer from

27  representing the corporation.  *Id.* at 72.  The third shareholder argued that the law firm should

28

15

1   also be disqualified from representing the two shareholders.  The California Appellate Court

2   expressly rejected that argument.  According to the *Forrest* court, *Flatt and Truck Ins.*

> clearly stand for the proposition that dual representation of clients
> with adverse interests is impermissible (in the absence of informed
> consent) and requires automatic disqualification.  They hold that an
> attorney may not violate his or her duty of loyalty to an existing
> client by undertaking representation adverse to that client's
> interests; ***they do not, however, hold that the attorney is required
> to cease representation of either client.***

7   *Id.* at 80 (emphasis added).  In this regard, California law is consistent with federal authority in

8   shareholder derivative litigation, "which holds that while dual representation of a corporation and

9   its directors is impermissible (at least if the directors are charged with fraud), ***the attorney who***

10  ***formally represented both clients may continue to represent the individual ones***."   *Id.*

11  (emphasis added).

12      **D.    Baker Botts Is Not Disqualified on a Theory That It Received Confidential**
           **Information Material to its Representation of Fujitsu**
13

14      NETGEAR argues that Baker Botts obtained from it confidential information material to

15  the representation of Fujitsu in this action.  This claim is also wrong.

16      For information obtained in connection with one matter to be "material" to another

17  matter, the information "'must be found to be directly at issue in, or have some critical

18  importance to,'" the other matter.  *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C

19  08-04909 SI, 2010 WL 1136478, at *6 (N.D. Cal. Mar. 20, 2010) (quoting *Farris v. Firemans*

20  *Fund Ins. Co.*, 119 Cal. App. 4th 671, 679-80 (2004)); *accord, e.g., Fremont Indem. Co. v.*

21  *Fremont Gen. Corp.*, 143 Cal. App. 4th 50, 69 (2006).

22      NETGEAR's primary claim in this regard is that it provided Baker Botts with confidential

23  information about its WPN894 router, the accused product in the Ruckus litigation, which

24  NETGEAR contends is material to Fujitsu's claim of infringement of the Ozawa Patent.   Of

25  course, NETGEAR never engaged Baker Botts to represent it in the Ruckus litigation.  And the

26  WPN824 router is but one product among seventy-two that are potentially accused in this case.

27

28

16

1    Information about the WPN824 router is neither material nor confidential. Claims 4 to 8

2    of the Ozawa Patent require an antenna having particular structure and functionality. NETGEAR

3    asserts that these limitations concern the antenna on the external device, such as a router. Motion

4    at 17. That is wrong. The antenna referred to in claims 4 to 8 is the antenna on the card type

5    input/output interface device, not the antenna on the external device. Showalter Decl. ¶ 23.

6    Claims 4 to 8 depend on Claim 38, which describes a "card type input/output interface device

7    comprising," among other things, a second data interface unit. The second data interface unit, in

8    turn, transfers data to and from the external device. Claims 4 through 8 require that the second

9    data interface unit, which is part of the "card type input/output interface device," have an antenna

10   with certain structure and functionality. This antenna, therefore, is part of the card type

11   input/output interface device, not part of the external device such as a router. *Id.* Figure 4A of

12   the Ozawa Patent shows this antenna (12-1) to be a part of the card type input/output device. *Id.*;

13   Ozawa Patent, col. 4, ln. 58, to col. 5, ln. 5.

14   The only claims of the Ozawa Patent that implicate the WPN824 NETGEAR router are

15   claims that describe a system that includes both a card type interface unit and an external device,

16   such as Claim 45. With respect to these few claims, the WPN824 router meets the "external

17   device" limitation. These claims of the Ozawa Patent, however, do not require an external

18   device having any particular structure or functionality. Instead, they require only "an external

19   device providing a peripheral function for the electronic device." For that reason, information

20   about the structure and functionality of the WPN824 router is not material. Showalter Decl.

21   ¶ 21.

22   Information about the structure and functionality of the WPN824 router is also not

23   confidential. As described above, NETGEAR has published a 174-page technical manual,

24   available on the Internet for all the world to see, that describes the structure and functionality of

25   this product at length. *Id.* ¶ 22. Much additional information about the router and its antenna

26   array is available on the Internet.

27

28

17

1    NETGEAR claims that it provided Baker Botts with information about its indemnity

2    relationship with certain of its suppliers.  That information is not material to Fujitsu's claim for

3    infringement of the Ozawa Patent.  NETGEAR has not filed an indemnity claim in this action.

4    Whether NETGEAR may be able to recoup some of its obligation to Fujitsu from a third party is

5    irrelevant to any of the issues in this case — infringement, validity, and damages.  Pankratz Decl.

6    ¶ 15.

7    **E.    Baker Botts Is Not Disqualified on a Theory of Successive Representations**

8    NETGEAR's final argument is premised on the ethical rule that prohibits a lawyer from

9    accepting a representation that is adverse to a substantially related former representation.

10    NETGEAR claims that the Ruckus Patent reexamination and indemnity matters on which Baker

11    Botts briefly represented it are substantially related to this action.   If true, according to

12    NETGEAR, that means Baker Botts is disqualified from representing Fujitsu in this action.  This

13    argument is wrong for legal and factual reasons.

14    The legal premise of NETGEAR's argument is that in the case of substantially related,

15    successive representations, the client in the second representation has the power to disqualify the

16    lawyer from representing the first client.  That is not true.  Under California law, the first client

17    has the power to disqualify the second client.  The second client does not have the power to

18    disqualify the first.

19    The California Supreme Court has held: "Where an attorney successively represents

20    clients with adverse interests, and where the subjects of the two representations are substantially

21    related, the need to protect the first client's confidential information requires that the attorney be

22    disqualified *from the second representation*."  *Department of Corporations v. Speedee Oil*

23    *Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999) (emphasis added); *accord*, *e.g.*, *Flatt v.*

24    *Superior Court*, 9 Cal. 4th 275, 288 (1994) ("disqualification of the attorney's representation of

25    the *second* client is mandatory," emphasis added).   The power to disqualify rests with the

26    "former client."  *San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006) ("the

27    former client may disqualify").  "When a substantial relationship between the two representations

28

18

1    is established, the attorney is automatically disqualified from representing the **second** client."

2    *UMG Recordings v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1059 (C.D. Cal. 2007) (emphasis

3    added).

4            The NETGEAR Ruckus Patent reexamination and indemnity matters are not substantially

5    related to this action.  If they were, however, California law is clear that Baker Botts would be

6    disqualified from representing NETGEAR, the second client, not Fujitsu, its client on this matter

7    of eight years.

8            For the subject matter of two legal representations to be substantially related, it is not

9    enough that they concern "the same general technological field," *Openwave Sys., Inc. v. 724*

10   *Solutions (US) Inc.*, No. C 09-3511 RS, 2010 WL 1687825, at *3 (N.D. Cal. Apr. 22, 2010), that

11   they "share a common area of law," *Foster Poultry Farms v. ConAgra Foods Refrigerated Foods*

12   *Co.*, No. F 04-5810 AWI LJO, 2005 WL 2319186, at *7 (E.D. Cal. Sept. 22, 2005), or that they

13   involve "the same general subject," *Santa Teresa Citizen Action Group v. San Jose*, 114 Cal.

14   App. 4th 689, 711 (2004).  "'To create a conflict requiring disqualification, Jessen mandates that

15   the information acquired during the first representation be "material" to the second; that is, ***it***

16   ***must be found to be directly at issue in, or have some critical importance to, the second***

17   ***representation***.'" *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-04909 SI,

18   2010 WL 1136478, at *6 (N.D. Cal. Mar. 20, 2010) (emphasis added) (quoting *Farris v.*

19   *Firemans Fund Ins. Co.*, 119 Cal. App. 4th 671, 679-80 (2004); *accord, e.g.*, *Freemont Indem.*

20   *Co. v. Freemont Gen. Corp.*, 143 Cal. App. 4th 50, 69 (2006).

21           This action is not substantially related to the Ruckus reexamination proceeding.  The

22   Ozawa Patent is directed to card type input/output interface devices.  The Ruckus Patent is

23   directed to circuit boards with antennas.  This action will involve a comparison of particular

24   NETGEAR products to the claims of the Ozawa Patent.  The Ruckus reexamination proceeding

25   involves a comparison between the claims of the Ruckus Patent and publicly available prior art

26   patents and printed publications.  NETGEAR products are entirely irrelevant in the Ruckus

27   reexamination proceeding.

28

OPPOSITION TO MOTION TO DISQUALIFY                          CASE NO. 10-cv-03972-LHK (HLR)

1    Nor is the NETGEAR indemnity matter substantially related to this action.   The

2  NETGEAR indemnity matter involved whether certain NETGEAR suppliers owed NETGEAR

3  indemnity obligations with respect to underlying claims or litigation.  NETGEAR never engaged

4  Baker Botts with respect to any of the underlying claims or litigation.  NETGEAR has not filed a

5  third party indemnity claim in this action, and whether NETGEAR is able to pass off any of its

6  liability to any third parties, such as suppliers or insurers, is irrelevant.

7         **F.        The Court Should Not Stay this Action**

8    This Court should not stay this action because NETGEAR's Motion to Disqualify, upon

9  which its stay request is premised, has no merit.

10

11  Dated:  November 24, 2010                          Respectfully submitted,

12                                                            BAKER BOTTS L.L.P.

13

14                                                  _____*/s/ Larry D. Carlson*_____
                                                                 Larry D. Carlson
15                                                  Attorneys for Plaintiff-Counterdefendant
                                                                  FUJITSU LIMITED

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISQUALIFY                              CASE NO. 10-cv-03972-LHK (HLR)