UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FUJITSU LIMITED, | Case No.: 10-CV-03972-LHK |
| Plaintiff, | ORDER GRANTING NETGEAR, INC.'S MOTION TO DISQUALIFY BAKER BOTTS AND DENYING NETGEAR, INC.'S MOTION FOR STAY |
| v. | |
| BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; NETGEAR, INC.; ZYXEL COMMUNICATIONS CORPORATION; and ZYXEL COMMUNICATIONS, INC., | |
| Defendants. | |

Defendant Netgear, Inc. moves to disqualify the law firm of Baker Botts and for a stay pending resolution of this motion. Dkt. No. 34 ("Mot."); *see also* Dkt. No. 60 ("Reply Br."). Plaintiff Fujitsu Limited opposes the motion. Dkt. No. 55 ("Opp'n"). After considering the parties' submissions and oral arguments, the Court GRANTS Netgear's motion to disqualify Baker Botts and DENIES Netgear's motion for a stay as moot.

## I. BACKGROUND

Netgear and Fujitsu agree that three separate legal matters, all involving Baker Botts, pertain to Netgear's current motion. These matters include (1) Baker Botts' representation of Fujitsu in its current patent infringement action against Netgear and other defendants; (2) Baker

Botts' representation of Netgear and another client in a reexamination proceeding; and (3) Baker Botts' representation of Netgear concerning some of Netgear's indemnity issues with suppliers.

### A. Fujitsu's Patent Infringement Action against Netgear

Although Fujitsu only recently filed its complaint against Netgear and other defendants for infringement of Fujitsu's United States Patent No. Re. 36,769 (the "Ozawa Patent"), a Fujitsu executive first notified Netgear of its infringement claim in a letter dated March 19, 2002. Dkt. No. 38 ("Busse Decl."), at ¶ 19; Dkt. No. 56 ("Showalter Decl."), at ¶ 3. In this letter, Fujitsu offered Netgear a license to the Ozawa Patent. Busse Decl. ¶ 19. Netgear's outside counsel, Jamie DiBoise and other lawyers at Wilson, Sonsini, Goodrich & Rosati, responded and informed Fujitsu that a license was unnecessary given that the Ozawa Patent claims appeared invalid over the prior art. *Id.* After receiving this response, Fujitsu asked Barton Showalter of Baker Botts to communicate with Wilson Sonsini regarding Fujitsu's claims against Netgear. Showalter Decl. ¶ 3.

Besides exchanging many letters and e-mails, Showalter and representatives of Netgear also met twice in face to face meetings and once through a videoconference. *Id.* At the two face to face meetings, held on June 18, 2003 and July 26, 2004, the parties discussed Netgear's contention that certain prior art, which was not before the examiner who initially allowed the Ozawa Patent to issue, invalidated the patent. *See* Busse Decl. ¶ 20; Showalter Decl. ¶¶ 3-4; Dkt. No. 41 ("DiBoise Decl."), at ¶¶ 2-3. After discussions ended without resolving the matter, Fujitsu decided to petition the United States Patent & Trademark Office ("PTO") for a reexamination of the Ozawa Patent. *See* Busse Decl.¶ 20; Showalter Decl. ¶ 4.

Baker Botts began the reexamination proceeding on behalf of Fujitsu on May 18, 2005. Showalter Decl. ¶ 4. Showalter acted as one of the counsel of record for Fujitsu during the reexamination process. Busse Decl. ¶ 22. By letter dated September 30, 2005, Showalter informed Wilson Sonsini of the reexamination proceeding and again offered Netgear a license to the Ozawa Patent. Showalter Decl. ¶ 6. Netgear did not respond. *Id.* During 2007 and 2008, Baker Botts and Showalter continued to represent Fujitsu in the Ozawa Patent reexamination proceeding. *See* Busse Decl. ¶¶ 35-38. On December 8, 2009, the PTO issued the Ozawa Patent reexamination

certificate and allowed, over the prior art cited by Netgear and others, forty-five of the original Ozawa Patent claims and forty-one new claims.  Showalter Decl. ¶ 4.

Following the issuance of the Ozawa Patent reexamination certificate, on February 1, 2010, Fujitsu's in-house counsel wrote Netgear reasserting Fujitsu's patent infringement claim.  *Id.* ¶ 15.  Showalter was copied on the letter.  Busse Decl. ¶ 17.  On September 3, 2010, Fujitsu, still represented by Baker Botts, filed this lawsuit against Netgear and Rayspan for infringement of the Ozawa Patent.  *Id.* ¶ 29.  Fujitsu alleges that Netgear infringes the Ozawa Patent by selling wireless interface cards and routers.  *Id.*  One of the allegedly infringing products is the WPN824, a high-speed wireless router that employs multiple antenna configurations to enable faster and more stable connections.  *Id.* ¶¶ 7, 29.

**B.  Ruckus Reexamination Proceeding**

On May 5, 2008, Ruckus Wireless, Inc. filed a complaint for patent infringement against Netgear and Rayspan Corporation, one of Netgear's suppliers of antenna technology.  Dkt. No. 36 ("RJN"), Ex. A ("Ruckus Compl."), at 1.  Ruckus alleges that Netgear's WPN824 RangeMax Wireless Router infringes its U.S. Patent Nos. 7,358,912 and 7,139,562.  Busse Decl. 3.  Shortly after Ruckus filed its complaint, Netgear and Rayspan agreed to a formal common defense and joint defense arrangement.  *Id.* ¶ 4.  Under the arrangement, Netgear and Rayspan maintained joint representation by the same counsel and pursued a common strategy.  *Id.*  Brian Busse, Netgear's Director of Intellectual Property, Legal, and Sandra Godsey, Rayspans' Chief IP Counsel, freely shared information and ideas about the Ruckus case throughout the dispute.  *Id.*

In September 2008, Netgear and Rayspan hired counsel to represent them in defending the Ruckus lawsuit and in pursuing a reexamination of the Ruckus patents.  *Id.* ¶ 5.  The PTO ordered a reexamination of certain claims of the '562 and '912 patents on November 28, 2008 and December 2, 2008, respectively.  *Id.*  The court ordered a stay of the patent infringement suit while the reexaminations, which are still pending, proceeded in the PTO.  *Id.*  On November 4, 2009, Ruckus filed a second patent infringement lawsuit against Netgear and Rayspan.  *Id.* ¶ 6.  The court also ordered the stay of this second lawsuit pending the completion of the '562 patent's reexamination.  *Id.*

In 2009, Godsey and Busse began discussing replacing their current counsel in the Ruckus litigation and reexamination proceeding. In their search for new counsel, they participated in a conference call with Baker Botts on November 17, 2009. Dkt. No. 37 ("Godsey Decl."), at ¶¶ 3-4. Showalter participated in the call after signing a non-disclosure agreement. *Id.* ¶ 4. During the call, and afterwards, Godsey provided Baker Botts with information about the lawsuit, Netgear's history with Ruckus, the design of the WPN284, and general litigation and reexamination strategy. *Id.* ¶¶ 4-5. On November 25, 2009, Showalter submitted a proposal to Rayspan and Netgear for Baker Botts' representation of them in the reexamination proceeding. Showalter Decl. ¶ 9. In response to Rayspan and Netgear's request, Showalter also submitted a budget proposal for the Ruckus litigation on December 2, 2009. *Id.*

Netgear and Rayspan ultimately decided to retain other counsel, not Baker Botts, to defend them in the Ruckus litigation. They did, however, sign an engagement letter with Baker Botts for the '562 reexamination matter on January 4, 2010. Busse Decl. ¶ 6. For various reasons, Showalter overlooked the adversity between Fujitsu and Netgear at that time. Showalter Decl. ¶ 11. To help Showalter prepare for a meeting with Godsey and others at Rayspan's facility in San Diego, Busse, on February 5, 2010, sent Showalter confidential information related to the WPN824. Busse Decl. ¶ 18. Showalter never reviewed the information. Showalter Decl. ¶ 16.

**C. Netgear Indemnity Matter**

On January 11, 2010, Netgear signed an engagement agreement with Baker Botts to handle a representation related to Netgear's indemnification agreements with its chipset suppliers and international manufacturers. Busse Decl. ¶ 13. Netgear communicated with Kurt Pankratz, a partner in Baker Botts' Dallas office concerning the engagement. *Id.*; Showalter Decl. ¶ 13.

Before accepting representation of Netgear in the indemnity matters, Baker Botts informed Netgear that it represented another company, MOSAID, in asserting certain patents adverse to Netgear. Busse Decl. ¶ 15. After Busse discussed the conflict with Pankratz, Netgear agreed to waive the conflict. *Id.* Netgear also granted Baker Botts a limited advance waiver of certain future conflicts. *Id.* ¶ 16. This waiver allowed Baker Botts to "represent a party with interests directly

1   adverse to Netgear's, so long as the adverse representation is not substantially related to the
2   matters" that Baker Botts was handling for Netgear.  *Id.*
3        On February 8, 2010, Busse sent Pankratz his confidential analyses of indemnity claims and
4   historical indemnity settlements.  *Id.* ¶ 18.

### D. Baker Botts Seeks an Additional Conflict Waiver

     In early February, after already engaging Netgear in the Ruckus reexamination proceeding and certain indemnification matters, Showalter and Pankratz recognized the conflict between Netgear and Fujitsu.  Showalter Decl. ¶ 14.  On February 8, 2010, Pankratz informed Busse that Fujitsu may bring a patent infringement lawsuit against Netgear in the future and requested that Netgear agree to allow Baker Botts to represent Fujitsu in that lawsuit.  Busse Decl. ¶ 18.  In a phone message on February 22, 2010, Showalter informed Busse that he could not take on a representation of Netgear without a waiver.  *Id.*, Ex. 10.  After Busse discussed the matter with Netgear's general counsel, Andrew Kim, they decided not to agree to the waiver.  *Id.* ¶ 23.

     On February 28, 2010, Busse wrote a letter to Baker Botts detailing their concerns.  *Id.* ¶ 27.  Baker Botts did not immediately respond to the letter, but Showalter did withdraw as Netgear's reexamination counsel in March of 2010.  *Id.* ¶¶ 26-27.  On September 13, 2010, Baker Botts' Deputy General Counsel wrote to Busse and addressed Netgear's February 28, 2010 letter.  Busse Decl., Ex. 2.  In its letter, Baker Botts failed to acknowledge the signed engagement letters it had with Netgear and represented that the firm had "decline[d] both Netgear engagements."  *Id.*  Baker Botts attorneys recorded a total of sixteen hours to the Ruckus reexamination billing number but never billed Netgear for any of this time.  *Id.* ¶ 18.

### E. Netgear Moves to Disqualify Baker Botts

     Shortly after Fujitsu served Netgear with a formal complaint in this case, Netgear filed this motion to disqualify Baker Botts as counsel for Fujitsu.  Netgear also seeks an order (1) requiring Baker Botts to return all confidential information it obtained from Netgear and Rayspan, (2) requiring Baker Botts to destroy any related work product, and (3) precluding Baker Botts from providing Fujitsu's replacement counsel with any work product that Baker Botts developed about this lawsuit since November 2009.  Mot. 22.  In its motion, Netgear also moves this Court to stay

5

Case No.: 10-CV-03972-LHK
ORDER GRANTING NETGEAR, INC.'S MOTION TO DISQUALIFY BAKER BOTTS

*Left margin:* **United States District Court** / For the Northern District of California

this case pending resolution of its motion to disqualify Baker Botts, Mot. 21-22, and makes a request for judicial of three documents, Dkt. No. 36.

## II.  LEGAL STANDARD

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Under Civ. L.R. 11-4(a)(1), all attorneys who practice in this Court must comply with the standards of professional conduct required of members of the State Bar of California. This Court, therefore, applies state law in determining matters of disqualification. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). "Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145, 980 P.2d 371, 37, 86 Cal. Rptr. 2d 816, 823 (1999) (citations omitted).

"Motions to disqualify counsel are strongly disfavored." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003). For one, motions to disqualify involve "a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility." *Comden v. Superior Court*, 20 Cal. 3d 906, 915, 576 P.2d 971, 975, 145 Cal. Rptr. 9, 13 (1978). Moreover, courts recognize that the ethical rules can be used tactically. *See e.g.*, *Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). As a result, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Id.* (quotation and quotation marks omitted).

Nevertheless, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428, 86 Cal. Rptr. 2d 20 (1999). "Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process." *Id.*

///

### III. ANALYSIS

Netgear, in essence, argues that Baker Botts' breach of two separate duties should lead this Court to disqualify the firm from representing Fujitsu. The first is the lawyer's duty of loyalty. The second is the lawyer's duty of confidentiality. Because the Court finds that Baker Botts' breach of the first duty is dispositive, it will not consider the second.

The Court will also address Netgear's motion to stay and its request for judicial notice of several documents.

**A. Duty of Loyalty**

"Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." *SpeeDee Oil*, 20 Cal. 4th at 1146, 980 P.2d at 379, 86 Cal. Rptr. 2d at 824 (citations omitted). "The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel." *Id.* (citation omitted). "The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *Id.* at 1147 (citation omitted).

As a result of this duty, lawyers in California cannot simultaneously represent two clients that are adverse to each other, even where the adversity arises in two unrelated matters. *Flatt v. Superior Court*, 9 Cal. 4th 275, 284-86, 885 P.2d 950, 36 Cal. Rptr. 2d 537 (1994). Unless the lawyer fully discloses the conflict and obtains a waiver in writing, the lawyer is prohibited from simultaneous representations. *Id.* at 286 n.4. This rule is also articulated in the Rules of Professional Conduct of the State Bar of California. Rule 3-310(C)(3) states: "A member shall not, without the informed written consent of each client[, r]epresent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." As one court put it, "an attorney (and his or her firm) cannot simultaneously represent a client in one matter while representing another party suing that same client in another matter." *Certain Underwriters*, 264 F. Supp. 2d at 919.

"[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." *Flatt*, 9 Cal. 4th at 284; *see also SpeeDee Oil*, 20 Cal. 4th at

1147 ("[I]f . . . a law firm[ ]simultaneously represents clients who have conflicting interests, a [] stringent per se rule of disqualification applies. With few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other.") (citation omitted).

At the hearing, Baker Botts made several concessions. First, Baker Botts conceded that the bar against concurrent representation of adverse parties results in per se disqualification. Second, Baker Botts conceded that, at one point, it concurrently represented both Fujitsu and Netgear. Finally, Baker Botts also conceded that during that period of concurrent representation, Fujitsu and Netgear were adverse to each other.

What Baker Botts did not concede, however, is that Baker Botts is disqualified here. Fujitsu argues that Baker Botts properly cured the concurrent representation conflict by discontinuing its representation of Netgear.[1] Mot. 11-12. In response, Netgear claims that the law in California prohibits an attorney from curing a concurrent representation conflict by dropping the less favored client once a conflict arises. *Id.* at 11 (citing *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1057 (1992)). In *Truck*, the court held that "a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client." 6 Cal. App. 4th at 1057, 8 Cal. Rptr. 2d 228 (citations omitted). The clear language of the court's holding in *Truck* favors Netgear's position.

Nonetheless, Fujitsu attempts to distinguish the facts at issue in *Truck* from the facts of the case at hand. Opp'n 14-16. Fujitsu argues that *Truck* involved a law firm attempting to withdraw from representing a pre-existing client in order to represent a new, second client. *Id.* at 14. Fujitsu claims that, in contrast, Baker Botts is attempting to withdraw from representing a second client, Netgear, in favor of its first client, Fujitsu. According to Fujitsu, California, while prohibiting the former, allows the latter.

---

[1] Because Netgear's representatives did not sign the waiver knowing of Baker Botts' representation of Fujitsu in a matter adverse to Netgear and because Netgear refused to give its consent when it became aware of the conflict, the prospective waiver did not act as a waiver of the conflict between Fujitsu and Netgear.

8

Case No.: 10-CV-03972-LHK
ORDER GRANTING NETGEAR, INC.'S MOTION TO DISQUALIFY BAKER BOTTS

Even though Fujitsu's factual distinction may be accurate, Fujitsu's cited legal authority fails to persuade this Court that the distinction is significant. Fujitsu cites three cases in support of its position. The first, *Sabrix, Inc. v. Carolina Cas. Ins. Co.*, 2003 WL 23538035 (D. Or. July 23, 2003), is inapposite. The court in *Sabrix* did not announce the rule proposed by Fujitsu. Rather, *Sabrix* involved an exception to the general rule announced in *Truck*. That exception allows a lawyer to continue representing a pre-existing client when the conflict created by a second client occurs by "mere happenstance" through no fault of the lawyer. Because that exception does not apply here, this Court will not apply *Sabrix* to this case.

Fujitsu also cites a California Court of Appeal decision, *Forrest v. Baeza*, 58 Cal. App. 4th 65 (1997). The facts and context of that case also make it inapplicable here. In *Forrest*, the lawyer originally represented both the corporation and the corporation's directors in a derivative suit. Because the directors were accused of violating their duties to the corporation, the lawyer's representation of both created a conflict. Although the court disqualified the lawyer from continuing to represent the corporation, it allowed the lawyer to continue to represent the directors.

Fujitsu's attempt to glean a more general rule from the court's holding in *Forrest*, a rule that would extend beyond the derivative suit context, is unpersuasive. As the court in *Forrest* recognized, the corporation's lawyer "did not unilaterally (or otherwise) decide to drop one client in preference for a more favored one." *Id.* at 80. A derivative suit, through no fault of the lawyer, creates two clients with adverse interests where previously only one existed. Rather than force all parties to find new counsel, courts have decided, for various policy reasons, to allow the lawyer to continue to represent the directors. *See id.* at 80-82 (finding that federal authority and legal commentary both support resolving the problem of dual representation in the shareholder derivative suit context by requiring the corporation to find new counsel and allowing the individual defendants to retain the corporate attorney). This decision in the shareholder derivative suit context does not mandate a similar rule where a lawyer willingly takes on two adverse clients. Here, Baker Botts voluntarily agreed to represent both Fujitsu and Netgear. Because the unique circumstances at issue in a shareholder derivative lawsuit are not present, the court's holding in *Forrest* does not apply.

1    The final case that Fujitsu cites, *Friskit, Inc. v. RealNetworks, Inc.*, 2007 WL 1994204 (N.D. Cal. July 5, 2007), is the most on point. In *Friskit*, Foley & Lardner represented Friskit in a lawsuit against RealNetworks. During the course of that litigation, RealNetworks' CEO, Chairman of the Board, and owner of 32.4% of its common stock employed Foley to represent him in unrelated matters. Subsequently, the CEO moved to disqualify Foley from representing Friskit in its lawsuit against RealNetworks. The court denied his motion. In so holding, the court stated that "the duty of loyalty runs to the existing client, and is not subordinate to any duty owed a later-acquired client. . . . To enforce that duty by disqualifying the attorney from representing his existing client would turn the duty of loyalty on its head."

Although this case does support Fujitsu's proposed rule, it does not appear to represent the prevailing view in California courts. Not only did the court in *Truck* not make a distinction between pre-existing and later-acquired clients, but a more recent California Court of Appeal decision also failed to make such a distinction. According to that court, "a lawyer may not avoid the automatic disqualification rule applicable to concurrent representation of conflicting interests by unilaterally converting a present client into a former client." *Pour Le Bebe, Inc. v. Guess? Inc.*, 112 Cal. App. 4th 810, 822, 5 Cal. Rptr. 3d 442, 453 (2003) (quoting *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1037, 117 Cal. Rptr. 2d 685 (2002)) (quotation marks and alterations omitted).

Furthermore, in the case with facts most similar to the case at hand, the California Court of Appeal reversed the trial court and granted the defendant's motion to disqualify the law firm in Baker Botts' position. In *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1428, 86 Cal. Rptr. 2d 20 (1999), the law firm of McCormick, Barstow, Sheppard, Wayte & Carruth originally represented State Farm in an insurance dispute. That dispute potentially implicated Federal Insurance Company ("Federal") as an additional insurer with coverage obligations to State Farm's insured. Before State Farm brought any formal lawsuit against Federal, Federal engaged McCormick in a separate, unrelated matter. While that matter was ongoing, McCormick brought an action against Federal on behalf of State Farm. After Federal's matter involving McCormick settled, Federal moved to disqualify McCormick's representation of State

Farm. In granting the motion to disqualify, the court applied the per se rule of disqualification that applies to concurrent representation. It stated that "so inviolate is the duty of loyalty to an existing client that the attorney cannot evade it by withdrawing from the relationship." *Id.* at 1431 (citation omitted).

The factual similarities between the *State Farm* case and this case persuade the Court that the holding in *State Farm* should apply. Baker Botts represented Fujitsu in a dispute with Netgear. Like the dispute in *State Farm*, that dispute eventually ripened into a lawsuit. During the time that Baker Botts represented Fujitsu, it took on Netgear as a client. Just as the settlement in *State Farm* did not lead the court to abandon the per se disqualification rule, Baker Botts' withdrawal as counsel for Netgear did not cure its concurrent representation conflict. Therefore, the per se rule of disqualification still applies.

The Court, nevertheless, recognizes that "disqualification is a drastic measure," *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004) (citation omitted), that will impact both Baker Botts and Fujitsu. Baker Botts performed very little work for Netgear, and the firm did not charge Netgear for any legal services. Moreover, Netgear had agreed to waive a direct conflict with MOSAID when it engaged Baker Botts for its indemnity matters. Although Baker Botts made a mistake, it is understandable that Baker Botts would attempt to resolve the problem by withdrawing as Netgear's counsel. If the Court disqualifies Baker Botts, Fujitsu too will be hurt. Showalter has been representing Fujitsu in this matter for nearly a decade. To force Fujitsu to find new counsel would deny Fujitsu of their chosen counsel through no fault of their own and could significantly slow Fujitsu's efforts to litigate this case.

In spite of these concerns, the Court grants Netgear's motion. Baker Botts clearly accepted two clients whose interests were adverse to each other. This is especially inexcusable given that Showalter had been representing Fujitsu for nearly eight years when he agreed to represent Netgear. During that time he attended at least two face to face meetings with Netgear representatives where Fujitsu asserted its infringement claims against Netgear. Furthermore, Showalter was among the counsel of record in the Ozawa Patent reexamination proceeding. In that

1    proceeding, Baker Botts, on behalf of Fujitsu, sought a reexamination certificate validating the
2    Ozawa Patent over the prior art cited by, among others, Netgear.

3          Although this Court respects the decision of the district court in *Friskit*, it is an unpublished
4    decision, and California state law controls here.  Because the facts of *State Farm*, a California
5    Court of Appeal decision that the court in *Friskit* did not cite, bear the greatest resemblance to the
6    facts at hand, the court's holding in *State Farm* should apply.

7          The policy reasons supporting the per se disqualification rule also favor disqualification.
8    As the California Supreme Court has stated, "[a]ttorneys have a duty to maintain undivided loyalty
9    to their clients to avoid undermining public confidence in the legal profession and the judicial
10   process."  *SpeeDee Oil*, 20 Cal. 4th at 1146 (citations omitted).  Once Baker Botts accepted
11   Netgear as a client, the firm owed Netgear a duty of loyalty.  Baker Botts breached that duty, and
12   the Rules of Professional Responsibility of the State Bar of California, by assisting Fujitsu in
13   advancing patent infringement claims against Netgear.  Although the consequence of that breach—
14   per se disqualification—does negatively impact Baker Botts' first client Fujitsu, allowing Baker
15   Botts to avoid that consequence by simply withdrawing as counsel for Netgear, a secondly
16   acquired but nonetheless fully engaged client, is not the best way to restore confidence in the legal
17   profession.

18         Moreover, courts must protect a client's legitimate expectations of loyalty.  *See SpeeDee*
19   *Oil*, 20 Cal. 4th at 1147 (citation omitted).  Fujitsu's claim to Baker Botts' undivided loyalty
20   certainly lasted longer than Netgear's.  That, however, does not alter the fact that Netgear had the
21   same claim to undivided loyalty once Baker Botts accepted Netgear as a client.  Unfortunately for
22   Baker Botts, in California, the solution to a direct, concurrent conflict in client loyalties is per se
23   disqualification.  Once a client engages a lawyer, that client must be able to expect undivided
24   loyalty.  Even though disqualification is a harsh penalty, allowing a law firm to resolve voluntarily
25   created conflicting loyalties by simply dropping the less favored client undermines this
26   expectation.

27         Fujitsu's supplemental declaration in support of its opposition, filed after the hearing, does
28   not persuade the Court to change its decision.  Fujitsu's willingness to drop the WPN824 product
*United States District Court / For the Northern District of California* (left margin)

Case No.: 10-CV-03972-LHK
ORDER GRANTING NETGEAR, INC.'S MOTION TO DISQUALIFY BAKER BOTTS

from the case if Baker Botts can continue as its counsel, *see* Dkt. No. 63, does not change the fact that Baker Botts concurrently represented Fujitsu and Netgear.

### C. Motion to Stay

At the hearing, Netgear agreed that a prompt issuance of the Court's order obviated the need for a stay. The issuance of this order, therefore, renders the motion to stay moot.

### D. Request for Judicial Notice

Along with its motions, Netgear requests judicial notice pursuant to the Federal Rule of Evidence 201 of: (1) the complaint in the *Ruckus Wireless v. Netgear* litigation, (2) a copy of the '562 patent, (3) and a copy of the Ozawa Patent. This Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citation omitted). Netgear certified to the Court that the copies of the documents that they provided to the Court are true and accurate. Because the fact that these documents are what Netgear represents them to be is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the Court hereby grants Netgear's request.

## IV. CONCLUSION

For the foregoing reasons, Netgear's motion to disqualify is GRANTED. Baker Botts is disqualified from representing Fujitsu in this matter. Additionally, this Court ORDERS Baker Botts to return all confidential information it obtained from Netgear and Rayspan and to destroy any work product related to that confidential information. The Court, however, finds Netgear's request that Baker Botts be precluded from providing Fujitsu's replacement counsel with any work product that Baker Botts developed about this lawsuit since November 2009 overly broad. Netgear conceded this at the hearing. Netgear may file an amended, more narrowly tailored request if this order does not resolve Netgear's concerns.

///

///

///

///

As stated, Netgear's motion to stay is DENIED as moot, and Netgear's request for judicial notice is GRANTED.

**IT IS SO ORDERED.**

Dated: December 22, 2010

_____
LUCY H. KOH
United States District Judge