UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; NETGEAR, INC.; ZYXEL COMMUNICATIONS CORPORATION; and ZYXEL COMMUNICATIONS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 10-CV-03972-LHK<br><br>ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS |

This Order addresses four separate motions to dismiss, each filed by a different Defendant. D-Link Corporation ("D-Link Corp.") moves to dismiss Plaintiff Fujitsu Limited's claims against it pursuant to Federal Rules of Civil Procedure 12(b)(5) for insufficient service of process and 12(b)(2) for lack of personal jurisdiction. Dkt. No. 53 ("D-Link Corp. Mot."). ZyXEL Communications Corporation ("ZyXEL Corp.") moves to dismiss Fujitsu's claims against it pursuant to Rule 12(b)(5) for insufficient service of process. Dkt. No. 54 ("ZyXEL Corp. Mot."). D-Link Systems, Inc. ("D-Link Systems") and ZyXEL Communications, Inc. ("ZyXEL U.S.") move for dismissal pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. Nos. 46 ("D-Link Sys. Mot."), 48 ("ZyXEL U.S. Mot."). Fujitsu opposes all of the motions. Dkt. Nos. 87 ("Dismiss Opp'n"), 88 ("Process Opp'n"). After considering the parties' submissions and oral arguments, the

1

United States District Court
For the Northern District of California

1    Court hereby DENIES D-Link Corp. and ZyXEL Corp.'s motions to dismiss pursuant to Rule

2    12(b)(5) for insufficient service of process, but quashes Fujitsu's service of process; DENIES D-

3    Link Corp.'s motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction; and

4    GRANTS in part and DENIES in part D-Link Systems and ZyXEL U.S.'s motions to dismiss

5    pursuant to Rule 12(b)(6) for failure to state a claim.

6                                    **I.  BACKGROUND**

7              **A.  Fujitsu's Complaint**

8              In its complaint, Fujitsu asserts direct and indirect patent infringement claims against

9    Belkin International, Inc., Belkin, Inc., D-Link Corp., D-Link Systems, Netgear, Inc., ZyXEL

10   Corp., and ZyXEL U.S. (collectively "the Defendants").  Dkt. No. 1 ("Compl.").  Fujitsu claims

11   that the Defendants are infringing United States Patent No. Re. 36,769 (the "Ozawa Patent").

12   Compl., Ex. A.  According to Fujitsu's complaint, the Ozawa Patent, which issued on July 11,

13   2000, is a reissue of United States Patent No. 5,357,091, which issued on October 18, 1994.

14   Compl. ¶ 11.[1]  As described by Fujitsu in its complaint, the Ozawa Patent concerns card type

15   input/output interface devices.  *Id.*

16             Fujitsu alleges that it owns and has the right to enforce the Ozawa Patent.  *Id.* ¶ 12.  Fujitsu

17   claims that each of the Defendants make, use, offer to sell, sell, or import devices within the scope

18   of one or more of the claims of the Ozawa Patent.  *Id.* ¶ 13.  Furthermore, Fujitsu alleges that each

19   of the Defendants is actively inducing others to infringe the Ozawa Patent and is contributing to the

20   infringement of the Ozawa Patent.  *Id.* ¶ 14.  This allegedly infringing activity by each of the

21   Defendants involves the making, using, offering to sell, selling, or importing of wireless interface

22   cards, access points, and routers.  *Id.* ¶¶ 14-18.

23             **B.  Service of Process on D-Link Corp. and ZyXEL Corp.**

24             D-Link Corp. and ZyXEL Corp. are both corporations organized under the laws of Taiwan

25   with their principal place of business in Taiwan.  On October 15, 2010, Chi-yun Hsiao, an attorney

26   in Taiwan, executed service of process on both D-Link Corp. and ZyXEL Corp. by hand delivering

27   _____

28   [1] Fujitsu further alleges that the United States Patent and Trademark Office (the "PTO") issued a
     Reexamination Certificate for the Ozawa Patent on December 9, 2009.  *Id.*, Ex. B.

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

1   Fujitsu's complaint, summons, and other documents to D-Link Corp. and ZyXEL Corp.'s

2   respective headquarters.  Process Opp'n 5-6.  A D-Link Corp. employee signed a receipt dated

3   October 15, 2010 for D-Link Corp.  *Id.* at 6.  A ZyXEL Corp. mailroom stamp served as

4   acknowledgment of receipt for ZyXEL Corp.  *Id.*  There is no indication that the documents served

5   were translated into Chinese.

6      **C.  D-Link Corp.'s Connections to California**

7        In its complaint, Fujitsu alleges that all of the Defendants committed acts of patent

8   infringement within the State of California.  Compl. ¶ 7.  Fujitsu also alleges that Defendants

9   purposefully and voluntarily placed their infringing products into the stream of commerce with the

10  expectation that they would be purchased by consumers in the Northern District of California.  *Id.*

11       D-Link Corp. is a Taiwanese corporation and the parent corporation of D-Link Systems, a

12  California corporation.  D-Link Corp. Mot. 1.  According to D-Link Corp., D-Link Corp. has not

13  sold any products to D-Link Systems since May 2006.  *Id.* at 4.[2]  Furthermore, D-Link Corp.

14  claims that it does not do any business in California.  *Id.* at 4-5.

15       According to Fujitsu, D-Link Corp. markets itself as a global company with a regional

16  headquarters in Fountain Valley, California.  Process Opp'n 4.  Fujitsu also claims that D-Link

17  Corp. maintains a website from which California residents can purchase D-Link Corp.'s products.

18  *Id.*  According to D-Link Corp., D-Link Systems owns and operates the website where U.S.

19  customers can purchase products and D-Link Systems provides those goods purchased by U.S.

20  customers.  Dkt. No. 92 ("D-Link Corp. Reply"), at 5.  Furthermore, D-Link represents that D-Link

21  Systems conducts and manages its own corporate business with its own management and control

22  structure.  *Id.* at 2.

23     **D.  Procedural History**

24       Belkin International, Belkin, and Netgear have all answered Fujitsu's complaint.  Dkt. Nos.

25  21, 23.  On October 28, 2010, D-Link Systems and ZyXEL U.S., both California corporations,

26  moved pursuant to Rule 12(b)(6) to dismiss Fujitsu's claims against them for failure to state a

27  _____

28  [2] D-Link Corp. does admit that it shipped sixteen items to D-Link Systems from May 2006 to
August 2008 but represents that none of those were potentially infringing devices.  D-Link Corp.
Mot. 4.

1    claim.  On November 5, 2010, D-Link Corp., a Taiwanese corporation, moved pursuant to Rule

2    12(b)(5) and Rule 12(b)(2) to dismiss Fujitsu's claims against it for insufficient service of process

3    and for lack of personal jurisdiction.  Also on November 5, 2010, ZyXEL Corp., a Taiwanese

4    corporation, moved pursuant to Rule 12(b)(5) to dismiss Fujitsu's claims against it for insufficient

5    service of process.  The Court held a hearing on Defendants' motions on March 17, 2011.[3]

## II.  ANALYSIS

### A.  Motions to Dismiss for Insufficient Service of Process

D-Link Corp. and ZyXEL Corp. both argue that Fujitsu's complaint against them should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because Fujitsu's attempted service

on them did not comply with the laws of either Taiwan or the United States.  D-Link Corp. Mot. 1;

ZyXEL Corp. Mot. 1.[4]  Fujitsu argues that its service of D-Link Corp. and ZyXEL Corp. complied

with the Federal Rules of Civil Procedure and with the accepted practice under Taiwanese law.

Process Opp'n 16.

#### 1.  Legal Standard

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied."  *Omni Capital Int'l v. Rudolf Wolff & Co.*,

484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987); *see also Murphy Bros. v. Michetti Pipe*

*Stringing*, 526 U.S. 344, 350, 119 S. Ct. 1322; 143 L. Ed. 2d 448 (1999) ("In the absence of service

of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a

party the complaint names as defendant.").  "Once service is challenged, plaintiffs bear the burden

of establishing that service was valid under Rule 4."  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th

Cir. 2004) (citing 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure*

§ 1083 (3d ed. 2002 & Supp. 2003); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d

535, 538 (9th Cir. 1986)).  Rule 4(h)(2) governs service of process on a corporation "at a place not

---

[3] The Court originally set all four motions for hearing on February 10, 2011.  On December 22, 2010, however, the Court granted Netgear's motion to disqualify Fujitsu's counsel.  Dkt. No. 64. In order to allow Fujitsu time to find new counsel and respond to Defendants' motions, the Court continued the hearing to March 17, 2011.  Dkt. No. 66.
[4] The content of D-Link Corp.'s and ZyXEL Corp.'s motions to dismiss pursuant to Rule 12(b)(5) are nearly identical.  For simplicity, the Court will refer to only D-Link Corp.'s motion in this section.

4

1    within any judicial district of the United States" and allows for such process to be made "in any

2    manner prescribed by Rule 4(f) for serving an individual, except personal delivery under

3    (f)(2)(C)(i)."  FED. R. CIV. P. 4(h)(2).

### 2. Fujitsu's Method of Service

5    Here, Fujitsu seeks to rely on Rule 4(f)(2)(A).[5]  Process Opp'n 16.  Under Rule 4(f)(2)(A),

6    "if there is no internationally agreed means" of service, a corporation may be served at a place not

7    within any judicial district of the United States "by a method that is reasonably calculated to give

8    notice . . . as prescribed by the foreign country's law for service in that country in an action in its

9    courts of general jurisdiction."  FED. R. CIV. P. 4(f)(2)(A).

10    D-Link Corp. and ZyXEL Corp. claim that Taiwan's rules do not provide a procedure for a

11    private person to effect service of process on a corporation in Taiwan.  D-Link Corp. Mot. 6 (citing

12    Dkt. No. 53-2 ("Weng Decl.")).  According to Vanessa Weng, an attorney in Taiwan, Article 123

13    of the R.O.C. Code of Civil Procedures provides that service shall be effected motu proprio by the

14    Clerk of the Court, except as where it is otherwise provided.  Weng Decl. ¶ 4.  Article 5 of the

15    R.O.C. Law Governing Extension of Assistance to Foreign Courts allows foreign parties to request,

16    by letters rogatory, the assistance of the courts of Taiwan in serving civil litigation documents.  *Id.*

17    ¶ 3.  When foreign parties make such a request, they must provide Chinese translations and

18    verifications of the translations.  *Id.*, Ex. A, at 2.  The courts of Taiwan then execute service of

19    process in accordance with the R.O.C. Code of Civil Procedures.  *Id.*  Weng also claims that two

20    opinions rendered by the Supreme Court of Taiwan establish that a foreign judgment is not valid

21    unless the Taiwanese defendant is served with the judicial assistance of the R.O.C.  *Id.* ¶ 5.  Weng

22    concludes that according to the R.O.C. Code of Civil Procedures and the Supreme Court of

23    Taiwan, the service received by D-Link Corp. and ZyXEL Corp. is inadequate.  *Id.* ¶ 6.

---

[5] Because Taiwan is not a signatory to the Hague Convention, Rule 4(f)(1) does not apply here. *See Emine Tech. Co. v. Aten Int'l Co.*, No. C 08-3122 PJH, 2008 WL 5000526, *3 (N.D. Cal. Nov. 21, 2008) (citing *Cosmetech Int'l, LLC v. Der Kwei Enters.*, 943 F. Supp. 311, 316. (S.D.N.Y. 1996)).  Rule 4(f)(3) does not apply because the Court has not directed or ordered service in this case.  Rule 4(f)(2)(C)(ii) also does not apply because Fujitsu does not claim to have mailed its complaint to D-Link Corp. or ZyXEL Corp.

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    D-Link Corp. and ZyXEL Corp. also argue that Weng's conclusion regarding service of

2    process in Taiwan is consistent with the district court's holding in *Emine Tech. Co. v. Aten Int'l*

3    *Co.*, No. C 08-3122 PJH, 2008 WL 5000526 (N.D. Cal. Nov. 21, 2008).  In *Emine Technology*,

4    both the plaintiff and the defendant were Taiwanese corporations with their principal places of

5    business in Taiwan.  *Id.* at *1.  In an attempt to serve the defendant, a legal assistant to the

6    plaintiff's counsel went to the defendant's principal place of business and left the complaint with

7    the receptionist at the front desk.  *Id.*  The defendant moved to dismiss the complaint pursuant to

8    Rule 12(b)(5), arguing that the plaintiff's attempted service failed to comply with Rules 4(h)(2) and

9    4(f).  *Id.* at *2.  The court granted the defendant's motion.  As part of its reasoning, the court cited

10   two provisions of the R.O.C. Code of Civil Procedures[6] that it found, when read together,

11   established that the plaintiff's attempted service did not comply with Taiwanese law.  These

12   provisions were Article 123 of the R.O.C. Code of Civil Procedures, which states that "[e]xcept as

13   otherwise provided, service of process will be administered by the court clerk on his/her own

14   authority," *id.* at *3, and Article 131 of the R.O.C. Code of Civil Procedures, which provides that

15   "[i]n an action regarding a business, service may be effectuated upon the manager," *id.* at *5.  In

16   reading the two articles together, the court concluded that "Article 131 allows service upon the

17   manager of a business, but it does not permit an individual or entity other than the court clerk to

18   properly effectuate service."  *Id.* at *5.

19   Here, Fujitsu effected service on D-Link Corp. and ZyXEL Corp. by having a local

20   Taiwanese attorney hand-deliver the complaint, summons, and other required documents to the

21   headquarters of both D-Link Corp. and ZyXEL Corp.  Process Opp'n 16.  In serving D-Link Corp.,

22   Fujitsu obtained an employee receipt signature.  *Id.*  In serving ZyXEL Corp., Fujitsu obtained a

23   company stamp.  *Id.*  Based on Weng's declaration and the court's holding in *Emine Technology*,

24

25

26

27   _____

[6] The court in *Emine Technology* refers to the Taiwan Code of Civil Procedure as the set of rules
governing Taiwanese procedures for effecting service in Taiwan in actions in the Taiwanese courts.
Weng refers to the same rules as the R.O.C. Code of Civil Procedures.  This Court will refer to
28   these rules as the R.O.C. Code of Civil Procedures.

6

United States District Court
For the Northern District of California

1   Fujitsu's service does not comply with Taiwanese law because the court clerk of Taiwan did not

2   administer service of process.[7]

3        In opposition, Fujitsu argues that its method of service satisfies Rule 4(f)(2)(A) because

4   Fujitsu followed the procedures for effecting service on a Taiwanese corporation as set forth on the

5   U.S. State Department website and because D-Link Corp. and ZyXEL Corp. have received

6   adequate notice.  Process Opp'n 19.  The U.S. State Department's website specifies that service by

7   a local Taiwanese attorney is an acceptable form of service in Taiwan.  *Id.* at 16 (citing Dkt. No. 89

8   ("Zapf Decl."), Ex. 18).  Fujitsu argues that a decision in this district, *Power Integrations, Inc. v.*

9   *Sys. Gen. Corp.*, No. C 04-02581 JSW, 2004 WL 2806168 (N.D. Cal. Dec. 7, 2004), supports its

10  reliance on the State Department guidance and shows that a method of service other than service by

11  the clerk of the Taiwanese court is acceptable.  Process Opp'n 17.  In *Power Integrations*, the

12  plaintiff, a U.S. corporation, effected service on a defendant Taiwanese corporation by requesting

13  that the Clerk of the Court in the Northern District of California perfect service on the defendant

14  via Federal Express.  2004 WL 2806168, at *1.  The Clerk of the Court dispatched the package and

15  the defendant received and signed for it several days later.  *Id.*  The defendant moved to dismiss the

16  plaintiff's complaint pursuant to Rule 12(b)(5), arguing that the plaintiff's method of service was

17  not "prescribed" by Taiwanese law.  *Id.* at *2.  The court denied the defendant's motion and held

18  that the plaintiff's method of service was valid because it complied with Federal Rule of Civil

19  Procedure 4(f)(2)(C)(ii).  *Id.* at *3.  Rule 4(f)(2)(C)(ii) provides that "unless prohibited by the

20  foreign country's law," a corporation may be served at a place not within any judicial district of the

21  United States by "using any form of mail that the clerk addresses and sends to the [corporation]

22  and that requires a signed receipt."  FED. R. CIV. P. 4(f)(2)(C)(ii).  As support for the proposition

23  that Taiwanese law does not prohibit service by mail, the court considered information from the

24  U.S. State Department's website.  *Id.*

25        Although the *Power Integrations* decision did involve a defendant Taiwanese corporation,

26  the court's holding does not apply here.  As noted, the plaintiff in *Power Integrations* attempted

27
_____

28  [7] Under Weng's declaration, Fujitsu's service also fails because the documents were not translated
    into Chinese.

7

1  service in accordance with Rule 4(f)(2)(C)(ii), not Rule 4(f)(2)(A).  Unlike Rule 4(f)(2)(A), which

2  allows for service "prescribed" by Taiwanese law, Rule 4(f)(2)(C)(ii) allows for certain service by

3  mail unless such service is "prohibited" by Taiwanese law.  According to the court in *Power*

4  *Integrations*, this difference in wording is "not a distinction without a difference."  *Power*

5  *Integrations*, 2004 WL 2806168, at * 2.  The *Power Integrations* court's holding that Taiwanese

6  law does not prohibit service by postal channels does not support the proposition that personal

7  service on a corporation, or any means other than service by the clerk of the court of Taiwan, is

8  prescribed by Taiwanese law.

9       Fujitsu also argues that two district court decisions support its position that personal service

10  on a corporation is valid under Taiwanese law.  In *Cosmetech Int'l, LLC v. Der Kwei Enter. & Co.*,

11  943 F. Supp. 311 (S.D.N.Y. 1996), a plaintiff New York corporation attempted to serve a

12  defendant Taiwanese corporation by personally delivering the summons and complaint to the

13  defendant corporation's general manager and sales vice president at the defendant corporation's

14  office in Taiwan.  *Id.* at 316.  Despite the defendant's claim that it had not been properly served,

15  the court held that "Taiwan law expressly permits service upon a corporation by delivery to 'the

16  manager concerned'" and upheld the service as proper.  *Id.* (citing R.O.C. Code of Civil Procedures

17  Article 131).[8]

18       Fujitsu's reliance on *Cosmetech* has persuasive weight.  The holding is on point and directly

19  supports Fujitsu's position.  Nevertheless, the Court is hesitant to rely on a nearly fifteen year old

20  interpretation of Taiwanese law for two reasons.  First, although an unpublished decision, the

21  court's holding in *Emine Technology* is also on point and was rendered less than three years ago.

22  Second, in her declaration, Weng cites and interprets the current version of the R.O.C. Code of

23  Civil Procedures.  According to Exhibit B of the Weng Declaration, the R.O.C. Code of Civil

24  Procedures was amended as recently as July 8, 2009.  Thus, it is possible, though not explicitly

25  argued by either of the parties, that the court in *Cosmetech* interpreted a now outdated version of

26  the R.O.C. Code of Civil Procedures.  Even though Weng did not provide the Court with a full

27

28  [8] The other case cited by Fujitsu, *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658 (S.D. Cal. 1997), simply cites *Cosmetech* for the holding stated.

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

1    copy of the R.O.C. Code of Civil Procedures, a benefit the court in *Emine Technology* had, Fujitsu

2    did not provide any opposing declaration showing that Weng's interpretation of the current R.O.C.

3    Code of Civil Procedures was incorrect.

4            Fujitsu attempts to overcome these arguments by citing a recent Federal Circuit decision,

5    *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010).  That case

6    involved service of process effected on a Russian corporation in Moscow by personal delivery.  *Id.*

7    at 1238.  The district court dismissed the plaintiff's complaint for failure to serve the defendant

8    Russian corporation in accordance with the Hague Convention.  *Id.* at 1237.  The Federal Circuit,

9    however, found that the Russian Federation had suspended judicial cooperation with the United

10   States and that service in accordance with the Hague Convention was not possible.  The Russian

11   corporation, nevertheless, challenged the plaintiff's method of service on the grounds that Rule 4

12   prohibits personal service on foreign corporations outside the United States.  *Id.*  The Federal

13   Circuit rejected this argument and held that "a corporation can be served by personal delivery

14   under Rules 4(h)(2) and 4(f)(2)(A), provided that personal delivery is prescribed by the foreign

15   country's laws for service in that country in an action in its courts of general jurisdiction."  *Id.*  As

16   support for its reasoning, the court cited the *Cosmetech* decision.  *Id.*

17           The Federal Circuit in *Nuance* did dispel any possibility that Rule 4 uniformly prohibits

18   personal delivery on foreign corporations.  In addition, the Federal Circuit cited *Cosmetech* in

19   support of the proposition that courts have upheld personal service on corporations under Rule

20   4(f)(2)(A) when that service is prescribed by the foreign country's laws for service in that country

21   in an action in its courts of general jurisdiction.  However, the Federal Circuit in *Nuance* did not

22   suggest that personal service is currently prescribed by the laws of Taiwan.  Therefore, the *Nuance*

23   decision does not persuade this Court to adopt the *Cosmetech* court's holding when more recent

24   law suggests that a different holding is proper.

25           Fujitsu also argues that the Court should not rely on *Emine Technology* because the court in

26   that case did not consider the U.S. State Department's guidance or the district court's holding in

27   *Cosmetech*.  Process Opp'n 18.  Fujitsu is correct that the court in *Emine Technology* stated that the

28   plaintiff had "not provided the court with authority establishing that anyone *other than the court*

United States District Court
For the Northern District of California

9

*clerk* is permitted to carry out service in Taiwanese courts governed by Taiwanese law." 2008 WL 5000526, at *5. Thus, Fujitsu's argument that this Court should not follow *Emine Technology* can succeed only if the U.S. State Department's guidance and the *Cosmetech* holding are authority that personal service is currently available under Taiwanese law.

Fujitsu's argument fails, however, because neither the U.S. State Department's guidance nor the court's holding in *Cosmetech* establishes that personal service on corporations is allowed under Taiwanese law. First, the webpage containing the U.S. State Department's guidance on service of process in Taiwan has a clear disclaimer at the top of the page: "DISCLAIMER: THE INFORMATION IN THIS CIRCULAR IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A PARTICULAR CASE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO FOREIGN COUNSEL." *See* Zapf Decl., Ex. 18; Dkt. No. 90 ("Process Reply"), at 2. Moreover, the paragraph containing the guidance on which Fujitsu seeks to rely explicitly states that "[i]f enforcement of a judgment is anticipated, . . . Taiwan may not consider service by registered mail or by agent acceptable and may require that service be effected pursuant to a letter rogatory." *Id.* These are clear textual indications that the U.S. State Department's guidance does not constitute authority establishing that anyone other than the court clerk is permitted to carry out service in Taiwanese courts governed by Taiwanese law.

Secondly, the Court is not persuaded that an almost fifteen year old U.S. district court decision interpreting Taiwanese law is sufficient authority to outweigh both Weng's opinion that Taiwanese law does not allow for personal service on corporations and the *Emine Technology* court's finding of the same. Even though it is possible that both Weng and the court in *Emine Technology* have incorrectly interpreted Taiwanese law, Fujitsu has the burden to show that the service of process effected on D-Link Corp. and ZyXEL Corp. complied with Rule 4. Fujitsu had the opportunity to submit evidence rebutting Weng's declaration and supporting the U.S. State

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Department's guidance, but failed to do so.  Therefore, the Court holds that Fujitsu's attempted

2    service of D-Link Corp. and ZyXEL Corp. did not comply with Rule 4.[9]

3                    **3.  Fujitsu's Request for Court Ordered Service**

4             Fujitsu claims that even if the Court determines that Fujitsu's service was defective,

5    Defendants' request for dismissal is inappropriate because Fujitsu can still effect service.  Process

6    Opp'n 19.  Fujitsu requests that the Court order service on Defendants' U.S. counsel pursuant to

7    Federal Rule of Civil Procedure 4(f)(3).  *Id.*  Both D-Link Corp. and ZyXEL Corp. oppose this

8    request.  Process Reply 6-7.

9             "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'

10   It is merely one means among several which enables service of process on an international

11   defendant."  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)

12   (internal citation omitted).  "Under Rule 4(f)(3), federal courts have discretionary authority to

13   direct service 'by other means not prohibited by international agreements.'"  *Nuance Commc'ns*,

14   626 F.3d at 1239 (quoting FED. R. CIV. P. 4(f)(3)); *see also Rio Properties*, 284 F.3d at 1016

15   (holding "the task of determining when the particularities and necessities of a given case require

16   alternate service of process under Rule 4(f)(3)" is "commit[ed] to the sound discretion of the

17   district court").  Furthermore, "The choice between dismissal and quashing service of process is in

18   the district court's discretion."  *Stevens v. Sec. Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)

19   (citation omitted).  "Dismissal is not appropriate when there is a reasonable prospect that service

20   may yet be obtained."  *Nuance Commc'ns*, 626 F.3d at 1240 (quoting *Chapman v. Teamsters Local*

21   *853*, No. 07-1527, 2007 WL 3231736, at *3 (N.D. Cal. Oct. 30, 2007)) (quotation marks omitted).

22            If a court orders service, "[t]he court-ordered method of service must still be reasonable

23   and comport with constitutional notions of due process."  *Id.*  "To meet this requirement, the

24   method of service crafted by the court must be 'reasonably calculated, under all the circumstances,

25   to apprise interested parties of the pendency of the action and afford them an opportunity to present

26   their objections.'"  *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70

27   ─────────────────
     [9] Even if the Court were to find that personal service is available, it does not appear that Fujitsu's
28   service complied with the *Cosmetech* court's holding because Fujitsu did not serve the "manager
     concerned."  943 F. Supp. at 316.

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

S. Ct. 652, 94 L. Ed. 865 (1950)).  "Courts have authorized a wide variety of alternative methods of service under Rule 4(f)(3)."  *Id.* at 1239 (citing *Rio Properties*, 284 F.3d at 1016-19).  In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 537-38 (N.D. Cal. 2010), the district court approved service of process on a defendant Taiwanese corporation through its U.S. counsel.

Fujitsu points out that D-Link Corp. has previously been served pursuant to Rule 4(f)(3) through its U.S. counsel.  Process Opp'n 20 (citing *Network-1 Sec. Solutions, Inc. v. D-Link Corp. et al.*, No. 6:05-CV-291-LED, Dkt. No. 55 (E.D. Tex. Feb. 8, 2006)).[10]  It appears the same may be true for ZyXEL Corp.  *See id.* at 20-21.  Fujitsu also claims that D-Link Corp. and ZyXEL Corp. are represented by the same counsel in this case that represented D-Link Corp. in *Network-1*.  *Id.* at 21 n.7.  Furthermore, Fujitsu represents that this same counsel has appeared on behalf of D-Link Corp. in at least two patent cases in California and on behalf of D-Link Systems and ZyXEL U.S. in other patent litigations.  *Id.*

In their consolidated reply brief, D-Link Corp. and ZyXEL Corp. do not appear to contest Fujitsu's assertions about their counsel or argue that service on them through their counsel would cause them any prejudice.[11]  Instead, D-Link Corp. and ZyXEL Corp. argue that Fujitsu's request should be denied because Fujitsu has not cited a California decision that rejects personal delivery on a foreign corporation but then orders service on a defendant's U.S. counsel.  Process Reply 6. D-Link Corp. and ZyXEL Corp. also argue that Fujitsu had six months from filing its complaint to execute the letters rogatory process and properly serve them.  *Id.*  Finally, D-Link Corp. and ZyXEL Corp. argue that "the Court should not indulge Fujitsu's whim in vacillating between effective formal service and the informal service" that D-Link Corp. and ZyXEL Corp. claim Fujitsu knew to be ineffective.  *Id.* at 7.

The Court certainly appreciates Fujitsu's legitimate reasons for asking this Court to order service on D-Link Corp. and ZyXEL Corp. through their U.S. counsel.  According to the court in

---

[10] Fujitsu provided the Court a copy of this decision.  *See* Zapf Decl., Ex. 19.

[11] It does not appear that D-Link Corp. or ZyXEL Corp. would be prejudiced by service through its U.S. counsel.  Both D-Link Corp., ZyXEL Corp., and their U.S. counsel are fully aware of this litigation.  The same counsel that represented D-Link Corp., and accepted service on D-Link Corp.'s behalf in the *Network-1* case, also represents D-Link Corp. here.  Moreover, this same counsel has already filed motions to dismiss on behalf of D-Link Corp., D-Link Systems, ZyXEL Corp., and ZyXEL U.S.

12

United States District Court
For the Northern District of California

1    *In re TFT-LCD*, effecting service of process through the letters rogatory process is expensive and

2    time consuming.  270 F.R.D. at 537.  Thus, if Fujitsu is required to serve D-Link Corp. and ZyXEL

3    Corp. through the letters rogatory process, Fujitsu's case against D-Link Corp. and ZyXEL Corp.

4    will be significantly delayed.  Such a delay will prohibit Fujitsu from coordinating discovery

5    activities with all of the Defendants.  Moreover, Fujitsu's position that service on D-Link Corp. and

6    ZyXEL Corp. through their counsel would put them on notice of Fujitsu's claims against them is

7    reasonable given that both D-Link Corp. and ZyXEL Corp. appear to have previously accepted

8    service through their attorneys.

9         Despite these concerns, the Court finds that the circumstances at issue here do not justify

10   ordering service on D-Link Corp. and ZyXEL Corp. in a manner that is not prescribed by their

11   country's laws.  The facts at issue here distinguish this case from the cases cited by Fujitsu.  First,

12   in *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002), the Ninth Circuit

13   affirmed the district court's decision to order service on a foreign business through its attorney,

14   U.S. affiliated courier, and e-mail address because that foreign business had shown itself to be "an

15   elusive international defendant, striving to evade service of process."  Fujitsu has not presented any

16   facts to suggest that D-Link Corp. and ZyXEL Corp. are evading service.  Although D-Link Corp.

17   and ZyXEL Corp. disagree with Fujitsu's method of service, they have not shown any

18   unwillingness to accept service in conformity with Taiwanese law.  Thus, the facts at issue in *Rio*

19   *Properties* do not support Fujitsu's request for court ordered service here.

20        Second, in *Network-1 Sec. Solutions, Inc. v. D-Link Corp. et al.*, No. 6:05-CV-291-LED,

21   Dkt. No. 55 (E.D. Tex. Feb. 8, 2006), the court ordered service on D-Link Corp.'s counsel pursuant

22   to Rule 4(f)(3) after D-Link Corp.'s counsel represented at oral argument that he would waive

23   service under Rule 4(d).  Zapf. Decl., Ex. 19 at 3.  At the hearing on D-Link Corp.'s motion in the

24   instant case, D-Link Corp.'s counsel explicitly stated that he did not have authority from D-Link

25   Corp. to waive service.  Furthermore, in the *Network-1* case, D-Link Corp. filed a motion to

26   consolidate before the Judicial Panel on Multidistrict Litigation.  *Id.* at 1.  Accordingly, the facts in

27   *Network-1* are distinguishable from those at issue here.

28

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1    Third, in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 537-38 (N.D. Cal.

2    2010), the court ordered service on a defendant Taiwanese corporation's counsel pursuant to Rule

3    4(f)(3).  Unlike here, the plaintiff's case in *In re TFT-LCD* was consolidated with a Multidistrict

4    Litigation ("MDL").  The actions in the MDL were consolidated for pretrial proceedings, and the

5    plaintiff's case in *In re TFT-LCD* was, as a result of consolidation, part of a coordinated discovery

6    schedule.  The court in *In re TFT-LCD* noted that significant discovery had already taken place in

7    the MDL and that any delay in serving the defendant Taiwanese corporation would keep the

8    plaintiff from coordinating his discovery with the other MDL plaintiffs.  This was significant

9    because the defendant Taiwanese corporation in *In re TFT-LCD* appeared to have already been a

10   defendant in the related MDL for several years.  Also significant to the court's decision was the

11   fact that the defendant Taiwanese corporation's U.S. counsel had been representing it for several

12   years in the MDL lawsuits.  *Id.* at 538.  These facts are distinguishable from those of the instant

13   case.

14          At the hearing, Fujitsu argued that if the Court does not order service on D-Link Corp. and

15   ZyXEL Corp., it will be unable to coordinate its discovery with all the Defendants in this case in

16   the same way that the plaintiff in *In re TFT-LCD* would have been unable to coordinate discovery

17   with the MDL plaintiffs.  In *In re TFT-LCD*, however, significant discovery in the related MDL

18   lawsuits had already occurred by the time the plaintiff filed its complaint against the defendant

19   Taiwanese corporation.  Here, discovery is just commencing.[12]

20          Thus, because the circumstances of *Rio Properties*, *In re TFT-LCD*, and *Network-1* are not

21   present here, the Court finds it inappropriate to order service on D-Link Corp. and ZyXEL Corp.

22   through their U.S. counsel, a manner that is not prescribed by Taiwanese law.[13]  Moreover, Fujitsu

23   _____

24   [12] Furthermore, any inability to coordinate discovery in this case is a result of Fujitsu's own
     defective service.  Fujitsu claims that it effected personal service on both D-Link Corp. and ZyXEL

25   Corp. because of the guidance it found on the U.S. State Department's website.  That website,
     however, not only disclaimed the absolute accuracy of its information but also suggested that

26   readers should address questions about foreign law to foreign counsel.  *See* Zapf Decl., Ex. 18.
     Fujitsu has not provided the Court with any evidence that it consulted foreign counsel before

27   serving D-Link Corp. and ZyXEL Corp.
     [13] D-Link Corp. and ZyXEL Corp. also point out that in both *Fujitsu Ltd. v. Nanya Tech. Corp.*,

28   2007 WL 484789, at *5 (N.D. Cal. Feb. 9, 2007), and *Moletech Global Hong Kong Ltd. v. Pojery*

14

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

1  itself concedes that it likely must serve D-Link Corp. and ZyXEL Corp. through the letters

2  rogatory process in order to ensure that the Taiwanese courts will assist with the enforcement of

3  any judgment obtained in this case.  Process Opp'n 21 n. 8.  During the hearing, counsel for D-

4  Link Corp. confirmed that even if the initial service of process was insufficient, Fujitsu could cure

5  the insufficiency through the letters rogatory process during the litigation and thus ensure that the

6  Taiwanese courts will assist with enforcement of any judgment obtained in this case.  Because

7  there is a reasonable prospect that service may yet be obtained, dismissal is not appropriate.

8  *Nuance Commc'ns*, 626 F.3d at 1240.  Moreover, D-Link Corp. and ZyXEL Corp. are fully aware

9  of this lawsuit and have already had an opportunity to present their objections by filing motions to

10  dismiss.  Accordingly, the Court denies D-Link Corp.'s and ZyXEL Corp.'s motions to dismiss for

11  insufficient service of process, but quashes Fujitsu's insufficient service to allow Fujitsu an

12  opportunity to serve D-Link Corp. and ZyXEL Corp. in a manner that is prescribed by Taiwanese

13  law.

14      **B.  Motion to Dismiss for Lack of Personal Jurisdiction**

15      D-Link Corp. moves to dismiss Fujitsu's complaint pursuant to Federal Rule of Civil

16  Procedure 12(b)(2).  D-Link Corp. alleges that because D-Link Corp. lacks both general contacts

17  with this forum and specific contacts related to Fujitsu's claims, Fujitsu's claims against it must be

18  dismissed for lack of personal jurisdiction.  D-Link Corp. Mot. 1.  Fujitsu argues that this Court

19  can properly exercise personal jurisdiction over D-Link Corp. because D-Link Corp. sold

20  infringing products in California during the term of the Ozawa Patent.  Process Opp'n 2.

21  Moreover, Fujitsu claims that personal jurisdiction exists as to D-Link Corp. because D-Link Corp.

22  continues to this day to offer for sale at least one infringing product to consumers in the United

23  States and California via D-Link Corp.'s website.  *Id.*

24      **1.  Legal Standard**

25      "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's

26  long-arm statute permits the assertion of jurisdiction without violating federal due process."

27

28  *Trading Co.*, 2009 WL 506873, at *3 (N.D. Cal. Feb. 27, 2009), the district court quashed the
attempted service without ordering service on the defendant's counsel.

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (quoting

2   *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998)) (quotation marks

3   omitted).[14]   "Because California's long-arm statute is co-extensive with federal due process

4   requirements, the jurisdictional analyses under California law and federal law are the same."   *Id.* at

5   1230-31 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)).

6   "The 'constitutional touchstone' of the due process inquiry 'remains whether the defendant

7   purposefully established "minimum contacts" in the forum State.'"   *Patent Rights Prot. Group,*

8   *LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Burger King*

9   *Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).   "The

10  requirement for purposeful minimum contacts helps ensure that non-residents have fair warning

11  that a particular activity may subject them to litigation within the forum."   *Beverly Hills Fan Co. v.*

12  *Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (citations omitted).

13       This "minimum contacts" requirement can be satisfied in two ways.   First, the court may

14  exercise general jurisdiction "where the defendant has continuous and systematic contacts with the

15  forum state, even if those contacts are not related to the cause of action."   *Elecs. for Imaging, Inc.*

16  *v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A.*

17  *v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).   Second, the court may

18  exercise specific jurisdiction where "the defendant 'has purposefully directed his activities at

19  residents of the forum and the litigation results from alleged injuries that arise out of or relate to

20  those activities.'"   *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d

21  1343, 1350-51 (Fed. Cir. 2002) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360, 58

22  U.S.P.Q.2D (BNA) 1774, 1776 (Fed. Cir. 2001)).

23       "Once it has been decided that a defendant purposefully established minimum contacts

24  within the forum State, these contacts may be considered in light of other factors to determine

25  whether the assertion of personal jurisdiction would comport with 'fair play and substantial

26

27    ——————————————
[14] The law of the Federal Circuit applies in determining whether the court should exercise personal jurisdiction over an out-of-state accused infringer.   *See Nuance Commc'ns, Inc. v. Abbyy Software*

28  *House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)).

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   justice.'" *Burger King*, 471 U.S. at 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (quoting *International*

2   *Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  "The unique

3   burdens placed upon one who must defend oneself in a foreign legal system should have significant

4   weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over

5   national borders." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417 (Fed. Cir. 2009)

6   (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114, 107 S. Ct. 1026, 94 L. Ed.

7   2d 92 (1987)) (quotation marks omitted).  Nevertheless, the Federal Circuit has recognized that

8   "progress in communications and transportation has made the defense of a lawsuit in a foreign

9   tribunal less burdensome." *Id.* (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 294,

10  100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)) (quotation marks omitted).

11          When no jurisdictional discovery has occurred, a plaintiff "is required 'only to make a

12  prima facie showing' of jurisdiction to defeat the motion to dismiss." *Trintec Indus. v. Pedre*

13  *Promotional Prods.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (quotation omitted).  "[A] district court

14  must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any

15  factual conflicts in the affidavits in the plaintiff's favor." *Electronics for Imaging*, 340 F.3d at 1349

16  (citations omitted).  "If the district court concludes that the existing record is insufficient to support

17  personal jurisdiction, . . . [jurisdictional] discovery is appropriate where the existing record is

18  'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its

19  jurisdictional allegations through discovery.'" *Trintec*, 395 F.3d at 1283 (quotation and citation

20  omitted).

21              2**. Specific Jurisdiction**

22          D-Link Corp. argues that specific jurisdiction is improper because it has no contacts with

23  California that are specific to this case.  D-Link Corp. Mot 13.  Fujitsu argues that D-Link Corp. is

24  subject to specific personal jurisdiction because D-Link Corp. does not dispute that it sold or

25  shipped accused products to California prior to May 2006.  Process Opp'n 10-11.

26          The Federal Circuit has "outlined a three-factor test for specific jurisdiction, which

27  considers whether (1) the defendant purposefully directed its activities at residents of the forum, (2)

28  the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of

17

1    personal jurisdiction is reasonable and fair." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De*

2    *Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (citations omitted).  "Under this test, a court

3    may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as

4    the cause of action arises out of or relates to those contacts." *Id.* (citing *Silent Drive, Inc. v. Strong*

5    *Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)).  "Indeed, a 'substantial connection' with a

6    forum arising out of a 'single act can support jurisdiction.'" *Id.* (quoting *Burger King*, 471 U.S. at

7    475 n.18).

8           Fujitsu argues that its allegations that D-Link Corp. sold accused products into the forum

9    prior to May 2006 constitutes a prima facie showing that the Court has specific personal

10   jurisdiction over D-Link Corp.  Process Opp'n 11.[15]  D-Link Corp. does not disclaim that it sold

11   products into the U.S. prior to May 2006 but argues that the six year time limitation on

12   infringement damages weighs against subjecting it to specific personal jurisdiction for sales

13   occurring nearly five years ago.  D-Link Corp. Reply 9 (citing 35 U.S.C. § 286).  The Court finds

14   this argument unpersuasive.  As D-Link Corp. concedes in its brief, the Federal Circuit has looked

15   at facts five years prior to the time of filing in considering whether to exercise personal jurisdiction

16   over a defendant.  *Id.* (citing *Synthes*, 563 F.3d at 1299; *Autogenomics, Inc. v. Oxford Gene Tech.*

17   *Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009)).

18          Thus, the question becomes whether Fujitsu's uncontroverted allegations that D-Link Corp.

19   sold goods into the forum prior to May 2006 is a prima facie showing that personal jurisdiction

20   exists.  As support for its position, Fujitsu relies on *Telemac Corp. v. Phonetec LP*, No. C 04-1486,

21   2005 WL 701605 (N.D. Cal. Mar. 25, 2005) and *Beverly Hills Fan Co. v. Royal Sovereign Corp.*,

22   21 F.3d 1558 (Fed. Cir. 1994).  In *Telemac*, the court held that the defendants were subject to

23   specific personal jurisdiction in a patent infringement suit because defendants sold allegedly

24   infringing phones to California customers through a California distributor.   2005 WL 701605, at

25   *5.  According to the court, this "gave them fair warning that their activities might subject them to

26

27   [15] Fujitsu also alleges that D-Link Corp. continues to market and sell infringing products to
     California customers through its website.  Process Opp'n 11-12.  D-Link Corp. maintains that D-
28   Link Systems, Inc. and not D-Link Corp. manages and hosts the websites which sell products to
     U.S. consumers.

                                                   18

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    litigation within the forum." *Id.*  In *Beverly Hills*, the Federal Circuit held that personal jurisdiction

2    existed where the defendants purposefully shipped the allegedly infringing product into the forum

3    state through an established distribution channel.  21 F.3d at 1565.

4          Here, Fujitsu's allegations go beyond those in *Telemac* and *Beverly Hills*.  Fujitsu alleges,

5    unlike the defendants in *Telemac* and *Beverly Hills*, that D-Link Corp. sold allegedly infringing

6    products directly into the forum without using a distributor.  It is clear that D-Link Corp. does not

7    dispute that it sold goods into the U.S. prior to May 2006.  It is not clear, however, whether D-Link

8    Corp. is admitting that it sold these goods directly to U.S. customers or only sold them to D-Link

9    Systems, Inc.  In any case, accepting Fujitsu's uncontroverted allegations as true, Fujitsu has made

10   a prima facie case of personal jurisdiction.  D-Link Corp. purposefully directed its activities at

11   residents of the forum by selling allegedly infringing goods into California, either through D-Link

12   Systems, Inc. or directly to California customers, and Fujitsu's claim arises out of or relates to

13   those sales.  Furthermore, D-Link Corp.'s sale of goods into California gave them fair warning that

14   they may be subject to litigation here.

### 3.  Reasonable and Fair

16         The third prong of the test for specific jurisdiction requires that the assertion of personal

17   jurisdiction is reasonable and fair.  *Synthes*, 563 F.3d at 1297.  "With respect to the [this] prong, the

18   burden of proof is on the defendant, which must 'present a compelling case that the presence of

19   some other considerations would render jurisdiction unreasonable' under the five-factor test

20   articulated by the Supreme Court in *Burger King*."  *Breckenridge Pharm., Inc. v. Metabolite Labs.,*

21   *Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (quoting *Burger King*, 471 U.S. at 476-77).  These

22   factors are: "[1] the burden on the defendant, [2] the forum State's interest in adjudicating the

23   dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate

24   judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the

25   shared interest of the several States in furthering fundamental substantive social policies."  *Avocent*

26   *Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008) (quoting *Burger King*, 471

27   U.S. at 476) (quotation marks omitted).  In general, the presence of minimum contacts is enough.

28   Cases where the exercise of personal jurisdiction is unreasonable are "limited to the rare situation

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1  in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are

2  so attenuated that they are clearly outweighed by the burden of subjecting the defendant to

3  litigation within the forum." *Beverly Hills*, 21 F.3d at 1568.

4        D-Link Corp. argues that exercising jurisdiction over it would offend traditional notions of

5  fair play and substantial justice because it has no contacts or relationship with California.  D-Link

6  Corp. Mot. 17.  D-Link Corp. asserts that it did not manufacture the products accused of infringing

7  Fujitsu's patent.  *Id.*  D-Link Corp also represents that it has not sold the allegedly infringing

8  products to D-Link Systems since May 2006.  *Id.*  Furthermore, D-Link Corp. argues that

9  California has little interest in hearing a patent dispute between two foreign parties.

10        Even though the Court understands that D-Link Corp. will be burdened by litigating this

11  case in California, this burden does not outweigh the other four factors outlined in *Burger King*.

12  D-Link Corp. has conceded that it sold allegedly infringing products into California prior to May

13  2006.  California has an interest in discouraging patent infringement injuries that occur within its

14  state.  *See Beverly Hills*, 21 F.3d at 1568.  Even though D-Link Corp. is located in Taiwan, "it is

15  recognized that progress in communications and transportation has made the defense of a lawsuit in

16  a foreign tribunal less burdensome."  *Id.* at 1569 (quoting *World-Wide Volkswagen*, 444 U.S. at

17  294, 100 S. Ct. 559, 62 L. Ed. 2d 490) (quotation marks omitted).  Moreover, D-Link Corp.'s

18  assertions in its marketing materials that it has a worldwide presence undercut its claim that

19  litigation in the United States will be unduly burdensome.  *See* Zapf Decl., Exs. 5, 9.

20        Because Fujitsu has established a prima facie case that D-Link Corp. has minimum contacts

21  with California that are related to Fujitsu's claims against D-Link and because the exercise of

22  personal jurisdiction would not be unreasonable or unfair, the Court denies D-Link Corp.'s motion

23  to dismiss for lack of personal jurisdiction.[16]

24  ///

25  ///

26  ///

27  _____

[16] Because the Court finds that Fujitsu has established a prima facie case for specific personal
jurisdiction as to D-Link Corp., the Court need not address the parties' arguments regarding
28  general personal jurisdiction or jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

### C. Motions to Dismiss for Failure to State a Claim

D-Link Systems and ZyXEL U.S. move to dismiss Fujitsu's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D-Link Sys. Mot. 1.[17]  D-Link Systems and ZyXEL U.S. make two arguments in favor of dismissal.  First, D-Link Systems and ZyXEL U.S. argue that Fujitsu's claims against them are premised on an indirect infringement theory and must be dismissed because Fujitsu's complaint does not contain factual allegations of knowledge, use, and lack of substantial non-infringing uses.  *Id.*  Second, D-Link Systems and ZyXEL U.S. argue that all of the Ozawa Patent's claims call for at least three separate devices and that Fujitsu's complaint must be dismissed because it does not allege that D-Link Systems and ZyXEL U.S. directly infringe any of the Ozawa Patent's claims.  Fujitsu contends that dismissal is improper because its complaint properly alleges facts to support claims against D-Link Systems and ZyXEL U.S. for direct and indirect infringement.  Dismiss Opp'n 1.  After outlining the legal standard applicable to a Rule 12(b)(6) motion to dismiss, the Court will address D-Link Systems and ZyXEL U.S.'s arguments in reverse order.

### 1. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

---

[17] D-Link Systems and ZyXEL U.S.'s motions to dismiss are nearly identical.  In fact, Fujitsu filed a consolidated opposition to D-Link Systems and ZyXEL U.S.'s motions.  For simplicity, the Court will refer to only D-Link Systems' motion unless there is a significant difference.

1   formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555,

2   127 S. Ct. 1955, 167 L. Ed. 2d 929 (citations, quotations, and alterations omitted).

3       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.

5   Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, 167

6   L. Ed. 2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that

7   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

8   alleged." *Id.*, 173 L. Ed. 2d 868 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d

9   929). In determining whether a claim has facial plausibility, the court need not accept as true a

10   plaintiff's legal conclusions. *See id.*, 173 L. Ed. 2d 868 ("[T]he tenet that a court must accept as

11   true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

12   Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

13   statements, do not suffice." *Id.*, 173 L. Ed. 2d 868 (citation omitted). "Determining whether a

14   complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing

15   court to draw on its judicial experience and common sense." *Id.* at 1950, 173 L. Ed. 2d 868

16   (citation omitted).

17       "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

18   than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949, 173 L. Ed. 2d 868

19   (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "Where a complaint pleads

20   facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

21   possibility and plausibility of 'entitlement to relief.'" *Id.*, 173 L. Ed. 2d 868 (citing *Twombly*, 550

22   U.S. at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "Factual allegations must be enough to raise a

23   right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed.

24   2d 929 (citations omitted).

25       "[A] district court should grant leave to amend . . . unless it determines that the pleading

26   could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

27   (9th Cir. 2000) (citation and quotation marks omitted).

28   ///

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

*United States District Court*
For the Northern District of California

### 2.  Fujitsu's Claim for Direct Patent Infringement

D-Link Systems and ZyXEL U.S. argue that all of the Ozawa Patent's claims are "divided infringement" claims.  D-Link Sys. Mot. 8.  According to D-Link Systems and ZyXEL U.S., this means that in order to infringe the Ozawa Patent's claims, they must operate three separate and distinct devices together.  *Id.*  D-Link Systems and ZyXEL U.S. claim that Fujitsu's complaint fails to state a claim against them because the complaint does not allege that they make, use, or sell all the devices required by the Ozawa Patent's claims.  *Id.* at 10.

Fujitsu, in opposition, argues that D-Link Systems and ZyXEL U.S.'s argument rests on an erroneous construction of the Ozawa Patent's claims.  Dismiss Opp'n 8.  According to Fujitsu, it is possible to infringe some of the Ozawa Patent's claims with only a single device.  *See id.* at 3.  Besides arguing that it is not relying on a divided infringement theory, Fujitsu argues that it is not required to plead divided infringement and that arguments regarding divided infringement are premature.  *Id.* at 10-12.

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  "Infringement requires, as it always has, a showing that a defendant has practiced each and every element[18] of the claimed invention."  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) (citation omitted); *see also General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997) ("Literal infringement requires that every limitation of the patent claim be found in the accused infringing device." (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821, 23 U.S.P.Q.2D (BNA) 1426, 1432 (Fed. Cir. 1992))).[19]  "Thus, liability for infringement requires a party to make, use, sell, or offer to

---

[18] Courts use the terms "element" and "limitation" inconsistently.  At least one panel of the Federal Circuit expressed a preference "to use the term 'limitation' when referring to claim language and the term 'element' when referring to the accused device."  *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1315 (Fed. Cir. 2003).  The Court will follow this practice here.  *See also Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 n.9 (Fed. Cir. 1987) (discussing the various meanings of the word "elements").

[19] "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent."  *See AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997)).  "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial."  *Id.*  "The analysis

23

United States District Court
For the Northern District of California

1   sell the patented invention, meaning the entire patented invention."  *Id.*; *see also General Foods*

2   *Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992) ("[E]ach claim is an

3   entity which must be considered as a whole.").  "It is a bedrock principle of patent law that the

4   claims of a patent define the invention to which the patentee is entitled the right to exclude."  *NTP,*

5   *Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (quoting *Phillips v. AWH*

6   *Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)) (quotation marks omitted).

7        As stated, *Iqbal* asks this Court to determine whether "the plaintiff pleads factual content

8   that allows the court to draw the reasonable inference that the defendant is liable for the

9   misconduct alleged."  129 S. Ct. at 1949, 173 L. Ed. 2d 868 (citation omitted).  Here, Fujitsu

10   claims, in part, that D-Link Systems and ZyXEL U.S. directly infringed the Ozawa Patent.  Thus,

11   under *Iqbal*,[20] Fujitsu's complaint must allege facts that allow the Court to draw the reasonable

12   inference that D-Link Systems and ZyXEL U.S. have practiced each and every limitation of an

13   invention claimed in the Ozawa Patent.

14        Fujitsu claims that the following allegations make it reasonable for the Court to infer that

15   D-Link Systems and ZyXEL U.S. infringe its patent: (1) Fujitsu owns the Ozawa Patent and has

16   the right to enforce it, Compl. ¶ 12; (2) D-Link Systems has made, used, offered to sell, sold or

17   imported devices within the scope of one or more of the claims of the Ozawa Patent, including but

18   not limited to "the D-Link Xtreme and RangeBooster series of wireless interface cards, access

19   points, and routers, including the DWA-652 Xtreme N Notebook Adapter," *id.* ¶ 16; (3) ZyXEL

20   focuses on whether the element in the accused device 'performs substantially the same function in
21   substantially the same way to obtain the same result' as the claim limitation."  *Id.* (quotation
    omitted).

22   [20] Although some district courts have not applied *Iqbal* to direct infringement claims, *see e.g.*,
    *Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 352 (D. Del. 2010) (quoting
    *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)); *Vellata, LLC v. Best Buy*
23   *Co., Inc.*, 2011 WL 61620, *4 (C.D. Cal. Jan. 7, 2011) (citing *Phonometrics, Inc. v. Hospitality*
    *Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)), none of the parties here argue that *Iqbal*
24   does not apply.  Those courts not applying *Iqbal* only require a plaintiff to plead: "(1) an allegation
    of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has
25   been infringing the patent by making, selling, and using the device embodying the patent; (4) a
    statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for
26   an injunction and damages."  *Xpoint Technologies*, 730 F. Supp. 2d at 352 (quoting *McZeal,* 501
    F.3d at 1357) (quotation marks and alterations omitted); *see also Vellata, LLC*, 2011 WL 61620, at
27   *4 ("A claim for direct infringement must state only: (1) ownership of the allegedly infringed
    patent; (2) the infringer's name; (3) a citation to the patent; (4) the infringing activity; and (5)
28   citations to the applicable federal patent law.") (citing *Phonometrics*, 203 F.3d at 794).

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1   U.S. has made, used, offered to sell, sold or imported devices within the scope of one or more of

2   the claims of the Ozawa Patent, including but not limited to "the ZyXEL ZyAIR series of wireless

3   interface cards, access points, and routers, including the G-162 Wireless CardBus Card," *id.* ¶ 18;

4   (4) Fujitsu has suffered damage as a result of infringement, *id.* ¶ 19.  Dismiss Opp'n 7.  In its

5   complaint, Fujitsu claims that its Ozawa Patent concerns card type input/output interface devices.

6   *Id.* ¶ 11.

7           From Fujitsu's description of the Ozawa Patent and the facts alleged in the complaint, the

8   Court can draw a reasonable inference that D-Link Systems and ZyXEL U.S. have infringed

9   Fujitsu's patent.  Fujitsu alleges that the Ozawa Patent covers card type interface devices.  Fujitsu

10  also alleges that D-Link Systems and ZyXEL U.S. made, used, offered to sell, or sold a specific

11  line of products that appear, from their names, to be card type interface devices.  These devices, as

12  alleged in Fujitsu's complaint, are the D-Link Xtreme and RangeBooster series of wireless

13  interface cards and the ZyXEL ZyAIR series of wireless interface cards.  Fujitsu has thus done

14  more than provide a threadbare recital of the elements of a patent infringement cause of action.  By

15  alleging what it believes the Ozawa Patent covers and naming specific lines and types of products

16  that allegedly infringe the Ozawa Patent, Fujitsu has put D-Link Systems and ZyXEL U.S. on

17  notice of its claims against them.

18          D-Link Systems and ZyXEL U.S., nonetheless, argue that Fujitsu's claims against them fail

19  because Fujitsu's complaint does not identify any of their products that infringes every limitation

20  of an invention claimed in the Ozawa Patent.  According to D-Link Systems and ZyXEL U.S.,

21  every independent claim outlined in the Ozawa Patent requires at least three separate devices.

22  These three devices are: (1) a "card"; (2) an "electronic device"; and (3) an "external device."  D-

23  Link Sys. Mot. 8.  In addition, D-Link Systems and ZyXEL U.S. argue that to infringe the Ozawa

24  Patent's claims, the electronic device must have a slot, and the card must be inserted into the slot.

25  *Id.*  D-Link Systems and ZyXEL U.S. argue that because Fujitsu's complaint does not allege that

26  they have made, used, or sold an electronic device having a slot into which a card may be inserted,

27  it must be dismissed.  *Id.* at 10.

28

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

1    In opposition, Fujitsu argues that D-Link Systems and ZyXEL U.S. have erroneously

2    interpreted the Ozawa Patent's claims.  According to Fujitsu, the Ozawa Patent includes three

3    categories of claims: (1) claims that are directed to a "card type input/output interface device"; (2)

4    claims directed to a "system" that includes a card interface plus an "external device"; and (3)

5    claims directed to a "system" that includes a card interface plus an "external device" and an

6    "electronic device."  Dismiss Opp'n 3.  Thus, on Fujitsu's reading of the Ozawa Patent's claims,

7    D-Link Systems and ZyXEL U.S. made, used, or sold products that infringe claims in both the first

8    and second categories.  *Id.* at 9-10.  Moreover, Fujitsu argues that D-Link Systems and ZyXEL

9    U.S.'s arguments regarding the proper scope of the Ozawa Patent's claims are premature.  *Id.* at

10   10-11.  According to Fujitsu, the Court should first determine the scope of the Ozawa Patent's

11   claims in accordance with the claim construction schedule set out in the Patent Local Rules.  *Id.*

12   In response, D-Link Systems and ZyXEL U.S. maintain that their interpretation of Fujitsu's

13   claims is correct and continue to request that Fujitsu's complaint be dismissed.  Dkt. No. 91, at 2-9.

14   In addition, D-Link Systems and ZyXEL U.S. argue that the Court need not delay resolution of this

15   issue until claim construction and can resolve the issue at the motion to dismiss stage.  *Id.* at 10.

16   Despite D-Link Systems and ZyXEL U.S.'s arguments to the contrary, the Court finds that

17   this issue turns on claim construction.  D-Link Systems and ZyXEL U.S. spend much of their reply

18   brief making arguments about what the Ozawa Patent's claims cover.  This is exactly what claim

19   construction is meant to answer.  According to the Federal Circuit, "[t]he purpose of claim

20   construction is to 'determine the meaning and scope of the patent claims asserted to be infringed.'"

21   *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting

22   *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517

23   U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)) (alterations omitted).  The court in *O2 Micro*

24   went on to expound on this purpose, explaining that "'claim construction is a matter of resolution

25   of disputed meanings and technical scope, to clarify and when necessary to explain what the

26   patentee covered by the claims, for use in the determination of infringement.'"  *Id.* at 1362 (quoting

27

28

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)) (alterations

2   omitted). [21]

3        If the Court were to construe the Ozawa Patent's claims at the motion to dismiss stage, it

4   would be starting the process of evaluating the merits of Fujitsu's case. "Determination of a claim

5   of infringement involves a two step inquiry." *Advanced Cardiovascular Sys. v. Scimed Life Sys.*,

6   261 F.3d 1329, 1336 (Fed. Cir. 2001). "First, the claims are construed, a question of law in which

7   the scope of the asserted claims is defined." *Id.* (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d

8   1448, 1454-56, 46 U.S.P.Q.2D (BNA) 1169, 1172-74 (Fed. Cir. 1998) (en banc)). "Second, the

9   claims, as construed, are compared to the accused device." *Id.* (citing *Cybor Corp.*, 138 F.3d at

10   1454-56). "This is a question of fact." *Id.* (citing *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d

11   1339, 1346, 51 U.S.P.Q.2D (BNA) 1385, 1389 (Fed. Cir. 1999)). "To prevail, the plaintiff must

12   establish by a preponderance of the evidence that the accused device infringes one or more claims

13   of the patent either literally or under the doctrine of equivalents." *Id.* (citing *WMS Gaming*, 184

14   F.3d at 1346). To accept D-Link Systems and ZyXEL U.S.'s arguments, the Court would not only

15   be required to construe the Ozawa Patent's claims, but it would need to compare those claims to

16   the accused device. Claim construction and infringement analysis should not be resolved on a

17   motion to dismiss.

18        A motion to dismiss is not the proper time to initiate claim construction for at least two

19   additional reasons. First, this District's Patent Local Rules establish the proper procedure for claim

20   construction proceedings. *See* PATENT L.R. 4. Under Patent Local Rule 4, claim construction

21   proceeds in an orderly fashion after the parties disclose their asserted claims, infringement

22   contentions, and invalidity contentions. Other district courts have denied motions to dismiss

23   counterclaims in patent cases because doing so would undermine local patent rules. *See e.g.*, *Pfizer*

24   *Inc. v. Apotex Inc.*, 726 F. Supp. 2d 921, 938 (N.D. Ill. 2010) (denying dismissal of the defendant's

25   counterclaims for failure to satisfy Rule 8(a) because doing so would undermine the court's local

26   ───────────────
   [21] The purposes of claim construction differ from the purposes of motions to dismiss for failure to

27   state a claim. "[D]ismissal for failure to state a claim is 'proper only where there is no cognizable
   legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'"

28   *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v.
   Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1  patent rules, which require more detailed disclosures at a later stage).  Second, claim construction

2  often requires the consideration of extrinsic evidence not generally considered on a motion to

3  dismiss.[22]

4       Because a motion to dismiss is not the proper time to raise claim construction arguments,

5  the Court will not consider D-Link Systems and ZyXEL U.S.'s arguments regarding the proper

6  scope of the Ozawa Patent's claims.  Accordingly, the Court finds that Fujitsu has stated a claim

7  for direct patent infringement against both D-Link Systems and ZyXEL U.S. and thus denies these

8  Defendants' motion to dismiss Fujitsu's direct infringement claim.

9            **3. Fujitsu's Claim for Indirect Infringement**

10      Fujitsu's complaint presents two theories of indirect infringement: (1) induced infringement

11  under 35 U.S.C. § 271(b), and (2) contributory infringement under 35 U.S.C. § 271(c).

12      Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be

13  liable as an infringer."  35 U.S.C. § 271(b).  "To prevail on inducement, 'the patentee must show,

14  first that there has been direct infringement, and second that the alleged infringer knowingly

15  induced infringement and possessed specific intent to encourage another's infringement.'"

16  *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) (quoting *Minn. Mining &*

17  *Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)).  "[T]he specific intent

18  necessary to induce infringement 'requires more than just intent to cause the acts that produce

19  direct infringement.  Beyond that threshold knowledge, the inducer must have an affirmative intent

20  to cause direct infringement.'"  *Id.* at 1354 (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293,

21  1306 (Fed. Cir. 2006) (en banc review of intent requirement)).

---

22  [22] "The words of a claim are generally given their ordinary and customary meaning as understood
by a person of ordinary skill in the art in question at the time of the invention."  *Kara Tech. Inc. v.*
23  *Stamps.com Inc.*, 582 F.3d 1341, 1345 (Fed. Cir. 2009) (citation omitted).  "[T]he person of
ordinary skill in the art is deemed to read the claim term not only in the context of the particular
24  claim in which the disputed term appears, but in the context of the entire patent, including the
specification."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  "Because the
25  meaning of a claim term as understood by persons of skill in the art is often not immediately
apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those
26  sources available to the public that show what a person of skill in the art would have understood
disputed claim language to mean.'"  *Id.* at 1314 (quotation omitted).  "Those sources include 'the
27  words of the claims themselves, the remainder of the specification, the prosecution history, and
extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the
28  state of the art.'"  *Id.* (quotation and citations omitted).

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    Under 35 U.S.C. § 271(c), "[w]hoever offers to sell or sells within the United States . . . a

2    component of a patented machine . . . for use in practicing a patented process" is liable for

3    contributory infringement if: (1) the component constitutes "a material part of the invention"; (2)

4    the alleged infringer knows that the component is "especially made or especially adapted for use in

5    an infringement of [the] patent"; and (3) the component is "not a staple article or commodity of

6    commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *see also i4i Ltd. P'ship*

7    *v. Microsoft Corp.*, 598 F.3d 831, 850-851 (Fed. Cir. 2010) (discussing the legal elements of a

8    contributory infringement claim). As with induced infringement, a plaintiff must also show direct

9    infringement by a third party in order to succeed on a claim of contributory infringement. *See*

10   *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1349 (Fed. Cir. 2003) (holding that the plaintiff

11   must prove that the end users directly infringed its patent in order to succeed on its claim of

12   contributory infringement) (citation omitted).

13   D-Link Systems and ZyXEL U.S. argue that Fujitsu's complaint relies on conclusory

14   allegations and thus does not properly state a claim against them for either induced infringement or

15   contributory infringement. D-Link Sys. Mot. 5-8. In support of their argument, D-Link Systems

16   and ZyXEL U.S. analogize Fujitsu's complaint to the complaint at issue in *Halton, Co. v. Streivor,*

17   *Inc.*, No. C. 10-00655, 2010 WL 2077203 (N.D. Cal. May 21, 2010). In *Halton*, a defendant

18   corporation accused of patent infringement moved to dismiss the plaintiff's claims for indirect

19   infringement. 2010 WL 2077203, at *1. In its complaint, the plaintiff claimed that: (1) the

20   defendant "has infringed and continues to infringe; has contributorily infringed and continues to

21   contributorily infringe; and/or has induced and continues to induce others to infringe one or more"

22   of the plaintiff's patent's claims; (2) the defendant made, used, or sold infringing products; (3) the

23   plaintiff had sent the defendant written notice of its patent and demanded that the defendant cease

24   infringing the patent; and (4) the defendant "has intentionally and willfully infringed" the

25   plaintiff's patent "and continues to intentionally and willfully infringe" the plaintiff's patent. *Id.*

26   The court found these allegations insufficient to state a claim for either induced or contributory

27   infringement. *Id.* at *2. According to D-Link Systems and ZyXEL U.S., Fujitsu's pleading is

28   similarly deficient.

29

In defending its induced and contributory infringement claims, Fujitsu points to two paragraphs from its complaint.  These paragraphs allege as follows:

> 14.  On information and belief, defendants have been and still are infringing one or more of the claims of the Ozawa Patent by actively inducing others to infringe and contributing to the infringement by others of the Ozawa Patent.  Defendants induce and contribute to the infringement by their end-users, as well as their resellers, partners and distributors who, on information and belief, make, use, offer to sell, sell, or import devices that infringe one or more of the claims of the Ozawa Patent, including but not limited to wireless interface cards, access points, and routers and combinations of wireless interface cards, access points, and routers.
>
> . . . .
>
> 20.  To the extent that defendants have continued or do continue their infringing activities after receiving notice of the Ozawa Patent, such infringement is willful, entitling Fujitsu to the recovery of increased damages under 35 U.S.C. § 284.

Compl. ¶¶ 14, 20.

Fujitsu's complaint does allege at least one fact not pled in the complaint at issue in *Halton*; Fujitsu's complaint specifically identifies alleged third-party direct infringers: "end-users."  D-Link Systems and ZyXEL U.S. argue that these end-users do not qualify as direct infringers for at least two reasons.  First, D-Link Systems and ZyXEL U.S. argue that these end-users do not qualify as direct infringers because D-Link Systems and ZyXEL U.S. do not control their infringement activity.  D-Link Sys. Mot. 11-12.  Even if this is factually correct, it has no legal significance.  D-Link Systems and ZyXEL U.S. have not cited any authority that a defendant must "control" a third-party direct infringer to be liable for induced infringement.  The case cited by D-Link Systems and ZyXEL U.S. in support of their argument is inapposite.  In *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011), the Federal Circuit held that in order for an end-user to directly infringe a system through "use," the end-user must use "each and every element of a claimed system." (alterations and quotation marks omitted).  The court held, nevertheless, that the user need not have physical control over every element of the system.  *Id.* Rather, the end user uses "every element of the system by putting every element collectively into service."  *Id.*  Here, Fujitsu's complaint alleges that these end-users used infringing devices and combinations of infringing devices.  This is sufficient to plead direct infringement by end-users.

30

United States District Court
For the Northern District of California

1   Second, D-Link Systems and ZyXEL U.S. argue that these "end-users" are not direct infringers

2   because Fujitsu's complaint does not allege that the "end-users" insert the card interfaces into an

3   electronic device with a slot.  D-Link Sys. Mot. 12.  As the Court noted above, this is a claim

4   construction argument and is not properly raised on a motion to dismiss.

5           D-Link Systems and ZyXEL U.S. also argue that Fujitsu's complaint fails to properly allege

6   specific intent.  As support that it has pled specific intent, Fujitsu relies on *Kilopass Tech. Inc. v.*

7   *Sidense Corp.*, No. C 10-02066, 2010 WL 5141843, at *4 (N.D. Cal. Dec. 13, 2010).  In that case,

8   however, the plaintiff's complaint alleged that the defendant had been aware of the patents at issue

9   at a specific time, which was years before the plaintiff filed the lawsuit.  *Id.*  Here, Fujitsu has only

10  alleged in conclusory terms that the defendants have received notice of the patents.  Thus, the

11  allegations in Fujitsu's complaint do not rise to the level of specificity of those pled in the

12  complaint at issue in *Kilopass*.  At the hearing, Fujitsu's counsel suggested that it was aware of an

13  approximate time when D-Link Systems and ZyXEL U.S. became aware of the Ozawa Patent.

14  Without including such allegations in its complaint, Fujitsu did not put D-Link Systems and

15  ZyXEL U.S. on notice of the basis for its induced infringement claims against them.  Accordingly,

16  Fujitsu's claims for induced infringement against D-Link Systems and ZyXEL U.S. are dismissed

17  with leave to amend.

18          Fujitsu concedes that it has not pled facts supporting each element of contributory

19  infringement.  Dismiss Opp'n 14-15.  Accordingly, Fujitsu's claims for contributory infringement

20  against D-Link Systems and ZyXEL U.S. are dismissed with leave to amend.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS

*United States District Court*
*For the Northern District of California*

### III.  CONCLUSION

For the foregoing reasons, the Court holds as follows:

(1)  D-Link Corp. and ZyXEL Corp.'s motions to dismiss pursuant to Rule 12(b)(5) are DENIED.  However, the Court hereby QUASHES Fujitsu's service on Defendants D-Link Corp. and ZyXEL Corp.  Fujitsu's request that the Court order service pursuant to Rule 4(f)(3) is DENIED.

(2)  Defendant D-Link Corp.'s motion to dismiss pursuant to Rule 12(b)(2) is DENIED.

(3)  Defendants D-Link Systems and ZyXEL U.S.'s motions to dismiss pursuant to Rule 12(b)(6) are GRANTED in part and DENIED in part.  D-Link Systems and ZyXEL U.S.'s motions to dismiss Fujitsu's claims for direct infringement are DENIED.  D-Link Systems and ZyXEL U.S.'s motions to dismiss Fujitsu's claims for induced and contributory infringement are GRANTED with leave to amend.

Plaintiff shall file an amended complaint, if any, within twenty-one (21) days of the date of this Order to cure the deficiencies discussed herein.  Plaintiff may not add new causes of action or parties without leave of Court or by stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 29, 2011

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 10-CV-03972-LHK
ORDER RE: D-LINK CORPORATION, D-LINK SYSTEMS, INC., ZYXEL COMMUNICATIONS
CORPORATION, AND ZYXEL COMMUNICATIONS, INC.'S MOTIONS TO DISMISS