UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| FUJITSU LIMITED, | ) | Case No.: 10-CV-03972-LHK |
|---|---|---|
| Plaintiff, | ) | |
| | ) | TENTATIVE RULINGS ON MOTIONS |
| v. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; NETGEAR, INC.; ZYXEL COMMUNICATIONS CORPORATION; and ZYXEL COMMUNICATIONS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

The parties shall address the issues raised in bold below at the hearing and will be given an additional ten minutes to address any of the Court's other tentative rulings.

| Issue | Dispute | Tentative Ruling |
|---|---|---|
| **Defendants' MSJ of Invalidity** | | |
| *Claim Construction* | | |
| Claim construction of "card" | Fujitsu argues that "card" should be construed as "IC-type card," but admits that a PHOSITA in 1991 would also understand a printed circuit board (PCB) to be a "card" as that term is ordinarily understood. Fujitsu did not act as its own lexicographer, and made no clear disavowal of non-IC type cards in either the specification or prosecution history. Thus, there is no basis for importing this "IC-type" limitation from the specification and limiting the plain and ordinary meaning of "card" as used in the claims. | Plain meaning (no change) |

1

Case No.: 10-CV-03972-LHK
TENTATIVE RULINGS ON MOTIONS FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | **The parties should address the relationship between a "card" and a "cartridge," as understood by a POSITA in April 1991, and relatedly, the significance of Fujitsu's reexamination statement distinguishing the Mizutani reference because it disclosed a "cartridge," not a "card."** | |
| Claim construction of "slot" | The parties appear to agree that "an opening" is a slot, but Fujitsu resurrects its previously abandoned argument that "slot" should have a locational limitation and be construed as "an opening in the exterior of the electronic device." Again, Fujitsu seeks to import limitations from the specification in the absence of a clear disavowal. Fujitsu argues that it disavowed internal slots, such as those that accept internal PCI, during reexamination proceedings, but this does not rise to the level of a clear disavowal, as an equally reasonable interpretation is that Fujitsu was disclaiming "installation onto a motherboard" by insertion into a connector, and not mere "insertion" into all internal openings. Thus, there is no basis for importing the locational limitation from the specification and limiting the plain and ordinary meaning of "slot" as used in the claims.<br><br>**The parties should address the relationship between a "slot," an "expansion slot," and a "connector," as understood by a POSITA in April 1991, and relatedly, the significance of Fujitsu's reexamination statement distinguishing the Arlan reference for failure to disclose a card "to be inserted into a slot."** | "an opening" |
| Claim construction of data transfer circuit . . . "in response to" | Fujitsu argues that the claims require a data transfer circuit that transfers data to the first data interface unit "in response to," i.e., automatically upon, receipt of input information by the second data interface unit, and without further intervention. Defendants argue that this is an improper limitation without support in the claim language, specification, or prosecution history. However, the Federal Circuit recently affirmed a construction of "in response to" as used in an analogously worded claim, holding that "'[i]n response to' connotes that the second event occur in reaction to the first event," and without further intervening conduct on the user's part. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1339-40 (Fed. Cir. 2011). Thus, the plain meaning of "in response to" requires a cause-and-effect relationship, and the limitation is not satisfied where the effect occurs only in the face of intervening user actions.<br><br>**Fujitsu shall address Defendants' argument regarding the "start-stop synchronization control unit" disclosed in Figure 5 of the '769 Patent.** | Having a cause-and-effect relationship |

| | | | |
|---|---|---|---|
| | *Anticipation* | | |
| | ARLAN 450 anticipates claims 41, 47, and 48 | There is a factual dispute at least as to whether ARLAN discloses a "slot" and whether ARLAN discloses a card "to be inserted into a slot." | DENY |
| | Mizutani anticipates claims 2, 4, 8, 20, 41, 47, and 48 | There is a factual dispute at least as to whether Mizutani discloses a "card." | DENY |
| | Murakami anticipates claims 2, 4, 8, 20, 41, 47, and 48 | There is a factual dispute as to whether Murakami discloses a data transfer circuit that meets the "in response to" limitation. | DENY |
| | HP82950A anticipates claims 9, 14, and 27 | There is a factual dispute at least as to whether the HP82950A Modem discloses a "card." | DENY |
| | *Obviousness* | | |
| | Claims 41, 47, and 48 are obvious in light of ARLAN 450 and Murakami | There are factual disputes regarding motivation to combine, field of endeavor, and problems to be solved. | DENY |
| | Claims 2, 4, 8, 20, 41, 47, and 48 are obvious in light of Mizutani and Murakami | There are factual disputes regarding motivation to combine, field of endeavor, and problems to be solved. | DENY |
| | Claims 2, 4, 8, 20, 41, 47, and 48 are obvious in light of Murakami and other prior art | There are factual disputes regarding motivation to combine, field of endeavor, and problems to be solved. | DENY |
| | Claims 9, 14, and 27 are obvious in light of HP82950A and Murakami | There are factual disputes regarding motivation to combine, field of endeavor, and problems to be solved. | DENY |
| | **Fujitsu's MSJ of Infringement** | | |
| | *Third-party cards* | | |
| | Claims 2, 4, 9, 14, and 41 – meet all limitations | Under the Patent Local Rules of this District, a patentee's Infringement Contentions must identify the alleged third-party direct infringers in order to allege indirect infringement. *See* Patent L.R. 3-1(d). "Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described." Patent L.R. 3-1(d). Fujitsu failed to timely disclose these 19 third-party cards in its infringement contentions. | DENY MSJ and GRANT Defs.' motion to strike for untimely disclosure |
| | Claims 20, 27, 47, | See immediately above. | DENY |

| | | |
|---|---|---|
| and 48 – satisfy all card-related limitations | | MSJ and GRANT Defs.' motion to strike for untimely disclosure |
| *Claim Construction* | | |
| Claim construction of "data interface unit" | This term appears in asserted claims 2, 4, 9, 14, 20, and 27. The Court previously construed this term, pursuant to the parties' stipulation, to mean "a unit for buffering or receiving/transmitting data." Defendants appear to be arguing that the "or" in the construction is an "exclusive or" (i.e., one or the other, but not both), rather than a "logical or" (i.e., either or both). There is no basis for this construction, and Defendants offer none. | "A unit for buffering or receiving/transmitting data" (No change) |
| Claim construction of "provided on one end of the card" and "opposing end" | These terms appear in asserted claims 2, 4, 9, 14, 20, and 27. Defendants argue that the first data interface unit must be entirely and exclusively on one half of the card, and the second data interface unit must be entirely and exclusively on the other half of the card. Fujitsu argues that there is no size limitation in the claims.<br><br>**The Court is inclined to agree with Fujitsu that, based on plain meaning, a data interface unit can be "provided on one end" of the card even if it extends past the "50-yard line" of the card, but would like to hear from both sides on this issue, as neither offers much by way of intrinsic or extrinsic evidence in support of its respective construction.** | TBD |
| Claim construction of projection "in which said second data interface unit is provided" | This term appears in asserted claims 9, 14, and 27 only. Defendants argue that the second data interface unit must be entirely and exclusively contained within the projection, while Fujitsu argues that the limitation is met even if some parts of the circuitry comprising the second DIU extends beyond the projection.<br><br>**The Court is inclined to agree with Defendants based on plain meaning, but would like to hear from both parties on this issue. In particular, the Court would like Fujitsu to identify where in the specification it specifically states that the buffering circuitry in the disclosed embodiments is located outside of the connector-shaped projections.** | TBD |
| *Defendants' card interface devices* | | |
| Claim 41 – direct infringement | No dispute. | GRANT |
| Claim 47 – satisfy card-related limitations | No dispute. | GRANT |

4

Case No.: 10-CV-03972-LHK
TENTATIVE RULINGS ON MOTIONS FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| Claim 48 – satisfy card-related limitations | No dispute. | GRANT |
| Claim 2 – direct infringement | Fujitsu is entitled to summary adjudication that the accused cards satisfy the "radio transmitter/receiver means" limitation, and has shown that at least some "representative" cards satisfy the following limitations: (1) "first data interface unit, provided on one end of the card;" and (2) "second data interface unit, provided on an opposing end of the card." Defendants offer no actual non-infringement evidence in rebuttal to Dr. Williams' report. Rather, Defendants simply attack the sufficiency of Dr. Williams' analysis based on his alleged failure to perform a limitation-by-limitation analysis as to each individual accused product.<br><br>**Do Defendants agree that summary judgment can be granted with respect to the specific "representative" cards for which Dr. Williams did provide individualized analysis?**<br><br>**Do the parties disagree as to what components comprise the "first data interface unit" and the "second data interface unit" on each of the accused cards for purposes of determining whether the data interface unit extends past the "50-yard line"?** | Possibly GRANT IN PART and DENY IN PART |
| Claim 4 – direct infringement | Same as for claim 2. | Possibly GRANT IN PART and DENY IN PART |
| Claim 20 – satisfy card-related limitations | Same as for claim 2. | Possibly GRANT IN PART and DENY IN PART |
| Claim 9 – direct infringement | Fujitsu has proffered insufficient limitation-by-limitation analysis as to each accused card to win on SJ. There is insufficient evidence as to whether all cards satisfy the following limitations: (1) "first data interface unit, provided on one end of the card;" (2) "second data interface unit, provided on an opposing end of the card;" and (3) "projection in which said second data interface unit is provided." | Possibly GRANT IN PART and DENY IN PART |
| Claim 14 – direct infringement | Same as for claim 9. | Possibly GRANT IN PART and DENY IN PART |
| Claim 27 – satisfy | Same as for claim 9. | Possibly |

5

Case No.: 10-CV-03972-LHK
TENTATIVE RULINGS ON MOTIONS FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| card-related limitations | | GRANT IN PART and DENY IN PART |
| *Defendants' Wireless Access Points and Routers ("External Devices")* | | |
| Claim 20 – use of external devices w/cards constitutes direct infringement | See Claim 20 re: cards above.  No new arguments raised. | Possibly GRANT IN PART and DENY IN PART |
| Claim 27 – same | See Claim 27 re: cards above.  No new arguments raised. | Possibly GRANT IN PART and DENY IN PART |
| Claim 47 – same | See Claim 47 re: cards above.  No new arguments raised. | GRANT |
| Claim 48 – same | See Claim 48 re: cards above.  No new arguments raised. | GRANT |
| *Defendants' Network Kits* | | |
| Claim 47 – direct infringement | See Claim 47 re: cards above.  No new arguments raised. | GRANT |
| Claim 48 – direct infringement | See Claim 48 re: cards above.  No new arguments raised. | GRANT |
| **Defendants' MSJ of No Willfulness and No Inducement** | | |
| No Willfulness | There is undisputed evidence that Defendants relied on opinions of counsel that the '769 Patent is invalid, and that the PTO granted 3 reexamination requests and ultimately cancelled several claims, including independent claims 38 and 39, which were previously asserted against Defendants in this case (although the 10 remaining asserted claims have now survived 3 reexams).  Defendants have consistently asserted invalidity defenses that are not clearly frivolous.  In the face of this evidence, it does not seem that Fujitsu can meet its burden of proving objective recklessness by "clear and convincing" evidence.  At the same time, however, because Defendants' anticipation and obviousness defenses all turn on jury findings of fact, the Court can defer on deciding the objective *Seagate* prong until after the jury makes the underlying factual determination.  *See Bard Peripheral*, 682 F.3d at 1006 ("In considering the objective prong of *Seagate*, the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness.").<br><br>**The parties should address whether, under *Bard Peripheral*, the Court should defer ruling on the objective prong of willfulness until after the record on anticipation and obviousness has been fully developed and the Court** | TBD |

| | | | |
|---|---|---|---|
| | **has the benefit of the jury's factual findings.**<br><br>**The parties should also address whether the reasonableness of Defendants' reliance on opinions of counsel is a question for the jury or for the Court.** See *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007). | | |
| No Inducement | Fujitsu has proven direct infringement of at least a few claims and has raised a genuine issue of material fact as to specific intent to induce that should go to a jury, in light of evidence that: (1) Fujitsu notified Defendants of their alleged infringement; (2) Defendants affirmatively instruct users to combine the accused wireless access points and routers with infringing cards in a manner that infringes Fujitsu's system claims; and (3) Defendants made pre-suit licensing offers, suggesting they did not think their defenses were strong. | | DENY |

**IT IS SO ORDERED.**

Dated: September 20, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge