UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FUJITSU LIMITED,<br><br>        Plaintiff,<br><br>    v.<br><br>BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; NETGEAR, INC.; ZYXEL COMMUNICATIONS CORPORATION; and ZYXEL COMMUNICATIONS, INC.,<br><br>        Defendants. | Case No.: 10-CV-03972-LHK<br><br>ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTIONS TO EXCLUDE EXPERT TESTIMONY |

Defendants Belkin International, Inc. ("Belkin"); D-Link Corporation and D-Link Systems, Inc. ("D-Link"); and Netgear, Inc. ("Netgear") (collectively, "Defendants") move to exclude the testimony of Paul K. Meyer. Specifically, Defendants seek an order precluding Mr. Meyer from offering testimony that Plaintiff Fujitsu Limited ("Fujitsu") is entitled to damages arising from Defendants' sales of external devices, or that Fujitsu's royalty rate on card products should be influenced by Defendants' sale of external devices. *See* ECF No. 318, at 1. Fujitsu, in turn, moves to exclude the testimony of Dr. Gregory Leonard (Belkin's and Netgear's damages expert) and Dr. Russell Mangum (D-Link's damages expert) on a variety of grounds. *See* ECF No. 317, at 12.[1]

---

[1]    In Fujitsu's Consolidated Motions *In Limine* and Motions to Exclude Testimony of Defendants' Experts, Fujitsu also sought to bar Defendants' non-infringement expert, Dr. Arthur Brody, from opining that Defendants lacked specific intent to induce infringement. *See* ECF No. 317, at 11. On November 8, 2012, the Court issued an Order adopting the parties' stipulation

1

Case No.: 10-CV-03972-LHK
ORDER RE: MOTIONS TO EXCLUDE

At a pretrial conference held on November 1, 2012, the Court heard oral argument on these motions to exclude expert testimony pursuant to Rules 401, 402, 403, and 702 of the Federal Rules of Evidence ("FRE"), as well as *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In light of the parties' need to prepare for trial, the Court will keep its analysis brief. At the hearing, the parties agreed that extensive analysis was not necessary.

Having considered the submissions of the parties and the relevant law, the Court GRANTS-IN-PART and DENIES-IN-PART Fujitsu's motion to exclude, and GRANTS-IN-PART and DENIES-IN-PART Defendants' motion to exclude.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert*, 509 U.S. at 589. A district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003). When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589–90. An expert witness may provide opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *see Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

The inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing

---

regarding this motion. ECF No. 357. Therefore, the Court does not address the expert testimony of Dr. Brody in this Order.

*Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

## II.  ANALYSIS

Section 284 of the Patent Statute provides for damages "adequate to compensate" for acts of infringement, "but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Here, the parties' damages experts agree that the economically appropriate methodology for calculating the damages to Fujitsu is a reasonable royalty based on a hypothetical license negotiation. However, the parties' experts disagree about how the royalty base should be defined and what constitutes an economically appropriate royalty rate.

### A.  FUJITSU'S MOTION TO EXCLUDE

Fujitsu contends that the Court should exclude numerous opinions of Dr. Leonard (Belkin's and Netgear's damages expert) and Dr. Mangum (D-Link's damages expert) because they do not meet the standards for admissibility under FRE 401, 402, 403, 702, or *Daubert*.

#### 1. Calculations of Effective Royalty Rates Based on Lump Sum Agreements

Fujitsu moves to exclude Dr. Leonard's and Dr. Mangum's calculations of effective royalty rates based on lump sum agreements. In particular, Fujitsu contends that Dr. Leonard and Dr. Mangum contort three lump sum agreements—the Linex License, the Acticon License, and the Commonwealth Scientific and Industrial Research Organization ("CSIRO") Licenses—into running royalty rates based on "little more than sheer speculation." *Id.* Consequently, Fujitsu argues that these calculations are "unsupportable" and "highly misleading." ECF No. 317, at 12.

Because lump-sum agreements and reasonable royalty rates differ in significant respects, the Federal Circuit has held that, "[f]or a jury to use a running-royalty agreement as a basis to award lump sum damages . . . *some basis for comparison must exist in the evidence presented to the jury*." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009)

(emphasis added). In *Lucent*, the running royalties did not constitute substantial evidence in support of the verdict because "the jury had almost no testimony with which to recalculate in a meaningful way the value of any of the running royalty agreements to arrive at the lump-sum damages award." *Id.* Similarly, as the Federal Circuit noted recently in *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012), "[t]he converse of that rule [also] applies . . . because lump sum payments . . . should not support running royalty rates without testimony explaining how they apply to the facts of the case." *Id.* at 30. Consequently, in *Whitserve, LLC*, the Federal Circuit found that the expert's citation to two lump sum payments as evidence to support an increased royalty rate under *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), did not constitute substantial evidence because the expert "did not offer any testimony to explain how those payments could be converted to a royalty rate." *Id.*

Fujitsu's criticisms of Dr. Leonard and Dr. Mangum's analyses regarding lump sum agreements go largely to weight, not admissibility. The CSIRO, Linex, and Acticon licenses are relevant as they all involve agreements with Defendants Belkin, D-Link, and Netgear to pay lump sums in order to license patents related to wireless networking technology. Moreover, the accused products at issue in this case are largely covered by these licenses. Furthermore, Dr. Mangum and Dr. Leonard have explained their calculations and why they believe that the lump-sum agreements apply to the facts of this case. Therefore, the Court concludes that Defendants' experts' opinions meet the minimum standards of relevance and reliability pursuant to FRE 702 and *Daubert*. *See i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 856 (Fed. Cir. 2010). Accordingly, the Court DENIES Fujitsu's motion to exclude Defendants' experts' calculations of effective royalty rates based on these lump sum agreements.

### 2. Dr. Mangum's Analysis of the Agere License

Fujitsu moves to exclude Dr. Mangum's opinions regarding the Agere-Fujitsu license on the basis that his opinions are misleading and unreliable. Fujitsu argues that, given that this agreement does not involve the asserted patent and none of the Defendants in this case took a license from Agere, the royalty rate is not probative under *Georgia-Pacific* factor 1 or 2. *See Georgia-Pacific Corp.*, 318 F. Supp. at 1119–1120; *see generally Laser Dynamics, Inc. v. Quanta*

4

*Computer, Inc.*, No. 06-348, 2011 WL 7563818, at *3 (E.D. Tex. Jan. 7, 2011) ("The Philips/ACI agreement did not involve either Plaintiff or Defendants, and licensed an unspecified number of patents for optical disk technology. This agreement is not probative under *Georgia–Pacific* factors 1 or 2 because it involves neither party.").

The Court finds that Dr. Mangum's analysis of the Agere license is neither misleading nor unreliable. Mr. Mangum's opinion on this license is relevant under FRE 401 as the agreement involves one of the parties in this case, Fujitsu, and covers Wireless LAN cards. Moreover, Dr. Mangum's analysis of the Agere license is a response to Mr. Meyer's discussion of this license, which Mr. Meyer claims to be "instructive." Consequently, Dr. Mangum's opinion will be helpful to the jury under FRE 402, and is more probative than prejudicial under FRE 403. Further, Dr. Mangum explains clearly the methodology he uses to calculate a reasonable royalty rate, which the Court finds admissible under FRE 702 and *Daubert*. Accordingly, Fujitsu's request to strike this portion of Dr. Mangum's expert report is DENIED.

### 3. Dr. Mangum's Reliance on the Via Licensing Patent Pool Agreement

Fujitsu moves to exclude Dr. Mangum's opinions regarding a reasonable royalty based on the Via Licensing Patent Pool Agreement that covers patents purportedly essential to the IEEE 802.11 standard. The Court finds Dr. Mangum's reliance on the Via Licensing Patent Pool Agreement to be relevant to a determination of a reasonable royalty because the Via Licensing Agreement involved patents related to wireless and wired networking, and Fujitsu has been a Via Licensing Patent Pool member and contributed a patent to the patent pool. The Via Licensing Agreement also sheds light on industry practices, which may help inform what the parties would have agreed upon in a hypothetical negotiation. Therefore, Dr. Mangum's assessment of this market evidence will be helpful to the jury under FRE 402, and is unlikely to be misleading under FRE 403. Further, the Court finds that Dr. Mangum's methodology for determining a royalty rate based on this agreement is sufficiently reliable under FRE 702 and *Daubert*. Therefore, the Court DENIES Fujitsu's request to strike the portion of Dr. Mangum's expert report involving his reliance on the Via Licensing Patent Pool Agreement.

#### 4. Royalty Base Calculations

Fujitsu argues that Dr. Leonard and Dr. Mangum should be precluded from offering opinions that damages for the accused external devices should not be included in the royalty base. Fujitsu takes particular issue with Dr. Leonard's analysis, noting that Dr. Leonard assumed erroneously that external devices are not part of the alleged invention of the '769 patent, and then compounded this error by concluding that the Entire Market Value "EMV" Rule applies in this case. The Court finds that the EMV Rule does not apply to this case. *See infra* Part II.B.1. Therefore, the Court GRANTS Fujitsu's motion to strike Dr. Leonard's opinion regarding the EMV Rule.

However, Dr. Mangum's opinion that damages for the accused external devices should not be included in the royalty base was based on a slightly different rational. Instead, Dr. Mangum concluded that Defendants in a hypothetical negotiation would not have agreed to include external devices in the royalty base. Because Dr. Mangum's opinion regarding the royalty base is predicated on what the parties to a hypothetical negotiation would have agreed to, and hypothetical negotiations "necessarily involve[] an element of approximation and uncertainty," *Lucent*, 580 F.3d at 1324–25, the Court DENIES Fujitsu's motion to exclude Dr. Mangum's opinion and testimony on this basis.

#### 5. Dr. Leonard's Failure to Produce Supporting Calculations and Comply with a Subpoena

Fujitsu moves to exclude Dr. Leonard's opinions regarding the "wireless penetration rate" and non-defendant market shares because Dr. Leonard withheld from production the documents supporting his opinions. Fujitsu argues that Dr. Leonard's misconduct made it impossible for Fujitsu to understand the bases for his opinions, let alone cross-examine him on them at his deposition, and the same will be true at trial. Defendants contend that Dr. Leonard's failure to produce the necessary documents was merely, "an oversight in responding to a subpoena, not a failure of methodology justifying exclusion under *Daubert*." ECF No. 332, at 22.

The Court finds Dr. Leonard's opinion regarding corrections to Mr. Meyer's royalty base apportionment highly relevant pursuant to FRE 401 and 402, and more probative than prejudicial

under FRE 403.  Further, as Dr. Leonard's deposition testimony explains the methodology behind his calculations, the Court finds his testimony reliable under FRE 702 and *Daubert*.

Nevertheless, Dr. Leonard should have provided these documents to Fujitsu pursuant to Rule 26(a)(2)(b) of the Federal Rules of Civil Procedure and the subpoena.  Accordingly, the Court orders Defendants to disclose to Fujitsu all of the documents on which Dr. Leonard relied in forming his alternate calculation by November 16, 2012, at 12:00 p.m., if Defendants have not done so already.  If Defendants fail to provide these documents, Fujitsu's motion to exclude Dr. Leonard's opinions regarding the "wireless penetration rate" and non-defendant market shares with be GRANTED.  *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) (holding that a district court has broad discretion to "exclude or admit expert testimony, and to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing party.") (internal quotation marks and citation omitted).

### 6. Georgia-Pacific Analysis for External Devices

Fujitsu also moves to exclude Dr. Leonard's opinions regarding a royalty rate for external devices because he failed to conduct a *Georgia-Pacific* analysis.  The Federal Circuit has held that it does "not require that witnesses use any or all of the *Georgia–Pacific* factors when testifying about damages in patent cases . . . Expert witnesses should concentrate on *fully* analyzing the *applicable* factors, not cursorily reciting all fifteen.  And, while mathematical precision is not required, some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed." *Whitserve, LLC*, 694 F.3d at 31 (emphasis in the original); *see also Lucent,* 580 F.3d at 1329 (explaining that a "damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers" and jurors cannot rely on "superficial testimony" with "no analysis").

Dr. Leonard's report includes a thorough *Georgia-Pacific* analysis based on cards in direct response to Mr. Meyer's report.  While Dr. Leonard did not conduct the most thorough analysis with respect to a royalty rate for external devices, he did provide "some explanation of . . . why and generally to what extent the [external device] impacts the royalty calculation." *Whitsesrve, LLC*,

694 F.3d at 31.  This summary is not so deficient as to warrant exclusion pursuant to FRE 702 and *Daubert*.  Therefore, the Court DENIES Fujitsu's motion to exclude these opinions.

### 7. Dr. Leonard's Opinions on Technical Issues

Fujitsu seeks to preclude Dr. Leonard from testifying about any technical issues, including technical issues relating to the comparability of license agreements produced by the parties in this case, such as the CSIRO license, since he is not a technical expert and did not talk with either of Defendants' technical experts.  Defendants contend that Dr. Leonard's understanding of the scope of the CSIRO license, based on his prior work on the CSIRO litigation, is not a "technical opinion" and should not therefore be excluded.  Rather, Dr. Leonard simply reviewed the license, applied his knowledge of the scope of the license based on his prior work on the CSIRO litigation, and offered his opinion.

The Court finds that Dr. Leonard's testimony about the CSIRO license is relevant under FRE 401 and based on valid methodology under FRE 702 and *Daubert*.  As Dr. Leonard was familiar with the CSIRO license based on his work in the prior litigation, he was not obligated to re-confirm his prior knowledge on this subject.  Indeed, Fujitsu fails to cite to any case law that would support the exclusion of Dr. Leonard's knowledge on this basis.  Thus, the Court finds that Dr. Leonard's understanding of the scope of the CSIRO license is not a "technical opinion," and DENIES Fujitsu's motion to exclude on this basis.

### 8. Dr. Leonard and Dr. Mangum's Reliance on Rule 408 Settlement Communications

Fujitsu seeks to exclude both experts' opinions based on pre-suit negotiations.  Defendants argue that the experts do not rely on the prior license offers for ultimate issues in this case, but rather to rebut Mr. Meyer's opinion by noting that Fujitsu has offered to license the '769 patents to Defendants at a much lower rate than Mr. Meyer's proffered 5 percent, and at the exclusion of stand-alone external devices.

Rule 408 bars admission of communications during a compromise negotiation to prove validity or invalidity of a claim or its amount.  Fed. R. Civ. P. 408; *see also Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 63 (1st Cir. 2011) (precluding admission of a settlement agreement

1  for the purpose of arguing a reduction in a damages award). Permitting Defendants to admit
2  Fujitsu's licensing offers in an attempt to reduce its damages would be contrary to the purpose and
3  spirit of Rule 408, and would penalize Fujitsu for attempting to resolve its dispute out of court. *See*
4  *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985). Additionally, evidence of Fujitsu's
5  licensing offers during initial attempts to resolve the dispute is "of questionable relevance on the
6  issue of . . . the value of a claim, since settlement may well reflect a desire for peaceful dispute
7  resolution, rather than the litigants' perceptions of the strength or weakness of their relative
8  positions." *Id.* Accordingly, the Court GRANTS Fujitsu's motion to exclude Dr. Mangum and Dr.
9  Leonard's opinions based on pre-suit negotiations, but also finds that Plaintiff's damages expert,
10 Mr. Meyer, cannot rely on pre-suit negotiations either. Neither Plaintiff nor Defendants will be
11 permitted to rely on settlement discussions to support their damages theories.

### 9. Dr. Leonard and Dr. Mangum's Opinions on FRAND Issues

Fujitsu seeks to exclude Dr. Leonard and Dr. Mangum's opinions on FRAND issues. Fujitsu claims that "no expert in this case has offered the opinion that Fujitsu has FRAND obligations with respect to the Defendants, nor have they argued that the opinion of Fujitsu's damages expert fails to comply with FRAND." ECF No. 317, at 23. Defendants argue that Fujitsu misstates Drs. Leonard and Mangum's opinions on the FRAND issue. According to Defendants, the experts did not conclude that a FRAND obligation exists, and they did not conclude that the royalty rate in this case should be zero. Rather, Defendants contend that their experts simply opine that, *assuming* a FRAND obligation exists in this case, Fujitsu's implicit grant of a royalty-free license to a large number of other companies means that the FRAND rate (i.e., a non-discriminatory license) would be zero, or that Fujitsu has not licensed on FRAND terms.

Since neither party appears to be contending that a FRAND obligation exists in this case, it is unclear how these opinions are relevant, and may therefore confuse the jury and waste time. Thus, pursuant to FRE 402 and 403, the Court GRANTS Fujitsu's motion to exclude these portions of Dr. Leonard and Dr. Mangum's opinions.

### 10. Dr. Leonard and Dr. Mangum's Intervening Rights Opinions

Finally, Fujitsu contends that Dr. Mangum and Dr. Leonard's opinions regarding D-Link and Netgear's intervening rights should be excluded because their opinions suffer from numerous significant defects that render them unreliable.

When an intervening rights claim is raised, "the court must consider whether to use its broad equity powers to fashion an appropriate remedy." *Visto Corp. v. Sproqit Technologies, Inc.*, 413 F. Supp. 2d 1073, 1090 (N.D. Cal. 2006) (citing *Seattle Box Co. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 830 (Fed.Cir.1984)); *see* 35 U.S.C. § 252. In weighing the equities, "the Court *may* consider various factors: (1) whether 'substantial preparation' was made by the infringer before the reissue; (2) whether the infringer continued manufacturing before reissue on advice of its patent counsel; (3) whether there were existing orders or contracts; (4) whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion; (5) whether there is a long period of sales and operations before the patent reissued from which no damages can be assessed; and (6) whether the infringer has made profits sufficient to recoup its investment." *Visto Corp.*, 413 F. Supp. 2d at 1090.

In this case, it appears that both experts have provided some evidence to support finding that a portion of Defendants' investments went into the accused products before July 2000. Therefore, their testimony is relevant pursuant to FRE 401 and more probative than prejudicial pursuant to FRE 403. Furthermore, the Court finds that the experts' methodology is sufficient under FRE 702 and *Daubert*. None of Fujitsu's arguments warrant exclusion these opinions. Accordingly, the Court DENIES Fujitsu's motion to exclude the experts' opinions on intervening rights.

### B. DEFENDANTS' MOTION TO EXCLUDE

Defendants move to exclude the testimony of Fujitsu's damages expert, Mr. Meyer, on the grounds that his methodology is flawed and his conclusions are unsubstantiated. ECF No. 318, at 15. Specifically, Defendants allege that Mr. Meyer's expert testimony is unreliable and unsound because: (1) Mr. Meyer does not mention or satisfy the Entire Market Value ("EMV") rule when including sales of "external devices" (such as routers) in the royalty base; (2) Mr. Meyer's report is based on the possibility of use of Defendants' external devices with *all* card interface devices

manufactured by any supplier in the industry, despite the fact that use of Defendants' external devices with third party cards does not constitute direct or indirect infringement; and (3) Mr. Meyer provides no analysis or evidence in support of his opinion that a higher royalty rate for the accused products should apply if external devices are excluded from the royalty base.

### 1. Application of the Entire Market Value Rule

First, Defendants move to exclude Mr. Meyer's testimony regarding external devices because Mr. Meyer failed to apply and satisfy the EMV Rule before including external device components in his royalty base. According to Defendants, "the sale of the external device by itself is the sale, at best, of a non-infringing component of the patented system." ECF No. 318, at 6. Therefore, according to Defendants, "Fujitsu must show that the alleged invention of the card device created the basis for customer demand for the external devices, or substantially created the value of the external devices." *Id*. at 6–7. Because Mr. Meyer failed to apply the correct methodology in calculating the royalty base, Defendants allege that his opinion in regard to external devices should be excluded. Consequently, the royalty base should be limited to the sales of the accused PC cards plus the sales of accused kits.

The Court finds that Mr. Meyer was not required to apply the EMV Rule to external devices. Fujitsu's '769 patent system claims (asserted claims 20, 47, and 48) each include an "external device" as a claim element. Since the external devices are patented products within the asserted claims, the sale of which results in indirect infringement, Mr. Meyer did not err in including these devices in the royalty base on an apportioned basis. *See University of Pittsburgh of Com. System of Higher Educ. v. Varian Medical Systems, Inc.*, No. 08-1307, 2012 WL 442993, at *8 (W.D. Pa. Feb. 10, 2012). Accordingly, Defendants' motion to exclude Mr. Meyer's testimony as to the inclusion of external devices in the royalty base is DENIED.

### 2. Meyer's Apportionment Methodology

Second, Defendants move to exclude Mr. Meyer's testimony regarding external devices because Mr. Meyer assumes liability for all of Defendants' external devices that are capable of use with any PCMCIA card, including third-party, non-infringing cards which the Court has excluded from this case. *See* ECF No. 307, at 14. Fujitsu argues that Mr. Meyer's approach—of including

1    in the royalty base only a small fraction of the entire value of the accused external devices to

2    account for value attributable to non-infringing uses—was based on an attempt to properly reflect

3    the approach that the parties to the hypothetical negotiation would have used.  Fujitsu argues that

4    the parties to a hypothetical negotiation would have been aware that it would be impractical and

5    burdensome to track actual infringing usage.  Therefore, they would have developed an approach

6    for estimating such usage over the life of the license.

7    The Court DENIES Defendant's motion to exclude Mr. Meyer's testimony regarding

8    external devices based on his apportionment methodology.  Since a hypothetical negotiation

9    "necessarily involves an element of approximation and uncertainty," *Lucent*, 580 F.3d at 1324–25,

10   Mr. Meyer's approach based on usage over life is not so methodologically unsound as to warrant

11   exclusion pursuant to FRE 702 and *Daubert*.  *See*, *e.g.*, *Whitserve, LLC*, 694 F.3d at 29 (noting

12   that, "[a]lthough it would have been preferable to have broken the data down by specific

13   transaction type [and therefore exclude non-infringing transactions from the revenue base], we do

14   not find that [the expert's] reasoning on this point was impermissible speculation.  Instead,

15   'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

16   burden of proof are the traditional and appropriate means of attacking shaky but admissible

17   evidence.'") (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d at 856)).

18   However, the Court concludes that the parties to the hypothetical negotiation would have

19   tried to account for non-infringing external devices sold by non-defendants by looking at third

20   party market research reports.  Therefore, the Court orders Mr. Meyer to supplement his report by

21   excluding damages based on Defendants' sales of their external devices used with third party cards.

22   Fujitsu shall prepare this supplemental report by Monday, November 19, 2012, at 10:00 a.m.

23   Should Defendants seeks to respond, they must do so by Wednesday, November 21, 2012.

### 3.  Mr. Meyer's Testimony Regarding Royalty Rate

25   Finally, Defendants move to exclude Mr. Meyer's opinion regarding an "alternate" royalty

26   for cards in the event that external devices are excluded from the royalty base.  Defendants allege

27   that Mr. Meyer's opinion should be stricken pursuant to *Daubert* and FRE 702 as Mr. Meyer's

28

opinion that the royalty rate for cards would be "at least 7%" if external devices were excluded from the royalty base is unreliable and unsupported. The Court agrees.

Mr. Meyer does not provide any factual justification for increasing the royalty rate from 5% to 7%. Therefore his calculation is not supported by substantial evidence. *See Whitserve, LLC*, 694 F.3d at 30 (finding that substantial evidence did not support expert's reasonable royalty calculation where he "state[d] that [certain factors] support[ed] a 'higher' [reasonably royalty] rate, but he offered no explanation of how much the rate should have been increased.); *see generally Gen. Elec. Co.*, 522 U.S. at 146 (holding that a court may properly exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered."). Therefore, Mr. Meyer's opinion regarding an "alternate" royalty for cards is unreliable under FRE 702 and *Daubert*, and unduly prejudicial under FRE 403.

The Court orders Mr. Meyer to supplement his report to explain why the royalty rate should be increased by 2% by Monday, November 19, 2012, at 10:00 a.m. Defendants' experts shall supplement their reports with a response on Wednesday, November 21, 2012. If Mr. Meyer fails to do supplement his report, Defendants' motion to exclude Mr. Meyer's opinion and testimony as to any adjustment to the royalty rate will be GRANTED.

### III. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Fujitsu's motion to exclude Dr. Leonard and Dr. Mangum's calculations of effective royalty rates based on lump sum agreements is DENIED.

2. Fujitsu's motion to exclude Dr. Mangum's analysis of the Agere License is DENIED.

3. Fujitsu's motion to exclude Dr. Mangum's reliance on the Via Licensing Patent Pool Agreement is DENIED.

4. Fujitsu's motion to exclude Dr. Leonard and Dr. Mangum's opinions regarding exclusion of external devices from the royalty base is GRANTED-IN-PART and DENIED-IN-PART.

5. Fujitsu's motion to exclude Dr. Leonard's opinions regarding the "wireless penetration rate" and non-defendant market shares will be GRANTED unless Defendants to disclose to Fujitsu all of the documents on which Dr. Leonard relied in forming his alternate calculation by November 16, 2012, at 12:00 p.m., if Defendants have not done so already.

6. Fujitsu's motion to exclude Dr. Leonard's opinions regarding the "wireless penetration rate" and non-defendant market shares based on withholding documents is DENIED. However, the Court orders Defendants to disclose to Fujitsu all of the documents on which Dr. Leonard relied in forming his alternate calculation by November 16, 2012, if Defendants have not done so already.

7. Fujitsu's motion to exclude Dr. Leonard's opinions regarding a royalty rate for external devices based on a failure to conduct a *Georgia-Pacific* analysis is DENIED.

8. Fujitsu's motion to exclude Dr. Leonard's testimony regarding the CSIRO license is DENIED.

9. Fujitsu's motion to exclude Dr. Leonard and Dr. Mangum's reliance on pre-suit negotiations is GRANTED, but also finds that Plaintiff's damages expert, Mr. Meyer, cannot rely on pre-suit negotiations either.

10. Fujitsu's motion to exclude Dr. Leonard and Dr. Mangum's opinions on FRAND issues is GRANTED.

11. Fujitsu's motion to exclude Dr. Leonard and Dr. Mangum's opinions on intervening rights is DENIED.

12. Defendants' motion to exclude Mr. Meyer's testimony regarding external devices based on the EMV Rule is DENIED.

13. Defendants' motion to exclude Mr. Meyer's testimony regarding external devices based on his apportionment methodology is DENIED.  However, the Court orders Mr. Meyer to supplement his report by excluding damages based on Defendants' sales of their external devices used with third party cards.  Fujitsu shall prepare this supplemental report by Monday, November 19, 2012, at 10:00 a.m.  Should Defendants seek to respond, they must do so by Wednesday, November 21, 2012.

14. Defendants' motion to exclude Mr. Meyer's opinion regarding an "alternate" royalty for cards is GRANTED unless Mr. Meyer supplements his report to explain why the royalty rate should be increased by 2% by Monday, November 19, 2012, at 10:00 a.m.  Should Defendants seek to respond, they must do so by Wednesday, November 21, 2012.

**IT IS SO ORDERED.**

Dated: November 15, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge