COVINGTON & BURLING LLP
Robert D. Fram (rfram@cov.com) (CA Bar No. 126750)
Thomas E. Garten (tgarten@cov.com) (CA Bar No. 247122)
Jeffrey T. Pearlman (jpearlman@cov.com) (CA Bar No. 254759)
One Front Street
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

COVINGTON & BURLING LLP
Philip A. Irwin (pirwin@cov.com) (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

COVINGTON & BURLING LLP
Gary M. Rubman (grubman@cov.com) (admitted *pro hac vice*)
R. Jason Fowler (jfowler@cov.com) (admitted *pro hac vice*)
Brianne Bharkhda (bbharkhda@cov.com (admitted *pro hac vice*)
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Attorneys for Plaintiff and Counterclaim-Defendant Fujitsu Limited

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| FUJITSU LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>BELKIN INTERNATIONAL, INC., BELKIN, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ZYXEL COMMUNICATIONS CORPORATION, and ZYXEL COMMUNICATIONS, INC.,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 10-cv-03972-LHK (PSG)<br><br>**FUJITSU LIMITED'S RESPONSES TO DEFENDANTS' OBJECTIONS TO FUJITSU'S OPENING SLIDES, DEMONSTRATIVES, AND EXHIBITS AND FUJITSU'S OBJECTIONS TO DEFENDANTS' OPENING SLIDES AND CROSS EXAMINATION EXHIBITS** |

1    Plaintiff Fujitsu Limited ("Fujitsu") hereby submits its responses to Defendants'
2 objections to Fujitsu's opening slides, demonstratives, and exhibits and objections to
3 Defendants' opening slides and cross examination exhibits.  Pursuant to the Court's
4 instructions, the parties met and conferred regarding these disputes, but could not reach
5 agreement.  For the Court's convenience, Fujitsu has attached both parties' opening
6 statement slides.  Fujitsu's slides are attached as Exhibit 1 and Defendants' slides are
7 attached as Exhibit 2.

**I.     Fujitsu's Responses to Defendants' Objections to Fujitsu's Opening Slides**

**A.     Slide 6**

Defendants object to Fujitsu's opening slide 6 based on FRE 401 and 403.  The slide illustrates the project that Mr. Ozawa was working on, which led to the invention.  It is an illustration of what the evidence will show through the testimony of Mr. Ozawa.  In the meet-and-confer with Defendants, they stated that they believe the demonstrative is inconsistent with Mr. Ozawa's deposition testimony and does not accurately portray the work he was doing.  This kind of factual dispute, however, is not a basis for objecting to an opening demonstrative.  Fujitsu is entitled to say what it believes the evidence will show, and Mr. Ozawa's testimony will support the accuracy of the demonstrative.

**B.     Slide 22**

Defendants object to Slide 22 of Fujitsu's opening statement based on Federal Rule of Evidence 403.  Slide 22 identifies revenues that Defendants earned from sales of accused products from July 2000 (the date of the hypothetical negotiation) through expiration of the patent in April 2012.  These revenues (the accuracy of which Defendants have not disputed) are highly relevant to several issues at trial, including the following:

- *Georgia-Pacific* Factor #8 (profitability and commercial success of products that practice the invention);

- *Georgia-Pacific* Factor #10 (benefits received by those who have used the invention);

- *Georgia-Pacific* Factor #11 (the extent to which the infringer has used the invention);

- Understanding Defendants' motivations for infringing the patent, which is probative of both Defendants' specific intent to induce infringement and of willfulness. As the Court is aware, Defendants seek to introduce a wide variety evidence in an effort to argue that they lacked specific intent and did not willfully infringe. The jury cannot properly consider these issues without understanding Defendants' full motivations for their infringing acts, including the fact that they generated significant revenues through infringing activities. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2009) (must consider totality of the circumstances when evaluating specific intent to induce).

- Invalidity issues, including secondary considerations of non-obviousness. In response to Defendants' efforts to invalidate the Ozawa patent, Fujitsu is entitled to introduce evidence of commercial success of products that practice the invention.

Defendants have not objected to Slide 22 on the basis that it is irrelevant or inaccurate. Rather, they object on Rule 403 grounds because the data includes sales of accused products that are accused but not selected for this trial. The fact that an accused product has not been selected for this trial, however, does not render information about the sales of that product any less relevant to a proper *Georgia-Pacific* analysis, to secondary considerations of non-obviousness or to understanding Defendants' motivations for infringing the Ozawa patent. Indeed, the fact that the accused products have generated substantial revenues—and that Defendants expected them to do so at the time they began infringing the patent—is information that is highly relevant to the jury's consideration of this case. To be clear, Fujitsu will not be including in the royalty base in this case any revenues from products that have not been selected for this trial. Rather, the information about these revenues is being used solely for the limited purposes set forth above.

In addition to being contrary to law, Defendants' argument also is inconsistent with the opinions offered by Defendants' own damages experts, both of whom rely on revenues from all accused products (rather than only the specific products selected for trial) to support their opinions regarding intervening rights and their efforts to calculate effective royalty rates from lump sum agreements.

1     To the extent Defendants object to the slide because it includes revenues from the time period between the hypothetical negotiation (in July 2000) and the beginning of the damages period (in September 2004), this argument also should be rejected.  The six-year period set forth in 35 U.S.C. § 286 merely limits the period during which a patent holder can recover damages; it does not dictate the timing of the hypothetical negotiation or otherwise impact the proper analysis of the *Georgia-Pacific* factors or secondary considerations of non-obviousness.  *See LaserDynamics, Inc. v. Quanta Computer Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) ("the six-year limitation on recovery of past damages under 35 U.S.C. § 286 does not preclude the hypothetical negotiation date from taking place on the date infringement began, even if damages cannot be collected until sometime later").  Indeed, arguing that Fujitsu should not be allowed to inform the jury about revenues and profits that Defendants earned (and/or expected to earn) during the period between July 2000 and September 2004 is tantamount to pretending that the hypothetical negotiation did not take place until September 2004.  All three damages experts, however, agree that the hypothetical negotiation would have taken place in 2000.  Accordingly, Fujitsu should be allowed to inform the jury about sales of infringing products during that time period.

**C.     Slides 21, 23-28, 46, and 47  -  Defendants  "Incompleteness" objection**

**Slide 21.**  Defendants object to Slide 21, which shows a chart from a D-Link presentation showing trends in the wireless market.  The parties have stipulated to admitting the underlying document, PTX-126, into evidence "without restriction."  The document will therefore come in to evidence for all purposes.  Accordingly, Defendants objections under FRE 802, 403, and 901 are misplaced.  FRE 106 does not apply to opening statements, which are not evidence. The parties are permitted to tell their own stories about what the evidence will show.   If Defendants believe that the portion shown in the slide is incomplete, defendants may seek to use other portions of the exhibit during trial.[1]

1 **Slide 23.** Defendants object under FRE 106 and 403 to Slide 23, which shows a question and answer from the 30(b)(6) deposition of NETGEAR's Director of Intellectual Property. Defendants claim that the excerpt is misleading because it omits other questions and answers. But FRE 106 does not apply to opening statements, as explained above. Further, the deposition excerpt in this slide consists of a full question and answer, and is neither incomplete nor misleading. By contrast, in Defendants' Opening Slide 20, Defendants pick a single question with a partially-highlighted answer to suggest that Dr. Williams agrees that Arlan discloses a slot, but omits other testimony that makes clear that he does not believe the device is installed into a slot—testimony that the Court relied on in its Order denying summary judgment.

**Slide 24.** Defendants object under FRE 106 to Slide 24, which shows a page from a reexamination request filed by Fujitsu. FRE 106 does not apply to opening statements. Further, the parties have stipulated to admitting the underlying document PTX283 into evidence "without restriction." If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

**Slide 25.** Defendants object under FRE 106 to Slide 25, which shows a page from a reexamination request filed by Belkin. FRE 106 does not apply to opening statements. Further, the parties have stipulated to admitting the underlying document PTX284 into evidence "without restriction." If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

**Slide 26.** Defendants object under FRE 106 to Slide 26, which shows an excerpt of a page from a letter from Belkin's opinion counsel. FRE 106 does not apply to opening statements. Further, the parties have stipulated to admitting the underlying document PTX27 into evidence "without restriction." If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

1 **Slide 27.**  Defendants object under FRE 106 to Slide 27, which shows the excerpt from Slide 26 with a single sentence highlighted.  FRE 106 does not apply to opening statements.  Further, the parties have stipulated to admitting the underlying document PTX27 into evidence "without restriction."  If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

**Slide 28.**  Defendants object under FRE 106 to Slide 28, which shows the excerpt from Slide 26 with a single sentence highlighted.  FRE 106 does not apply to opening statements.  Further, the parties have stipulated to admitting the underlying document PTX27 into evidence "without restriction."  If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

**Slide 46.**  Defendants object under FRE 106 to Slide 46, which shows an excerpt from the letter used in Slide 26 with a single sentence highlighted.  FRE 106 does not apply to opening statements.  Further, the parties have stipulated to admitting the underlying document PTX27 into evidence "without restriction."  If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

**Slide 47.**  Defendants object under FRE 106 to Slide 27, which shows an excerpt of a page from a letter from NETGEAR's opinion counsel with two sentences highlighted.  FRE 106 does not apply to opening statements.  Further, the parties have stipulated to admitting the underlying document DTX433 into evidence "without restriction."  If Defendants believe that the portion shown in the slide is incomplete, Defendants may seek to use other portions of the exhibit during trial.

*          *          *          *

Defendants insistence on a "complete" document or recitation of testimony is calculated merely to disrupt Fujitsu's opening and deprive it of the ability to put forward evidence favorable to its case.  Indeed, Defendants own slides demonstrate the absurdity

of this objection, as Defendants frequently list portions of depositions or documents that favor their case. *See, e.g.*, Defense Opening Slide 18 (O'Hare testimony on Arlan being a card that "plugs into a slot" but leaves out the balance of his testimony regarding the installation process); Defense Slide 20 (Williams testimony suggesting that there is a "slot" in Arlan notwithstanding his clear testimony that he does not think that it is installed into a slot); Defense Slide 24 (showing Fig. 5 from Murakami but never noting that you have to hit the keystroke for the data to go from Memory Element 47 to the Interface Circuit); Slide 25 (suggesting that Williams thinks there is a data transfer circuit in Murakami when his opinion is the opposite); Defense Slide 28 (selectively quoting Section 4.9.4 while failing to include the balance of the document that demonstrates that PCMCIA Rev. 1.0 was a memory card standard, not an interface standard).

## II. Fujitsu's Objections to Defendants' Opening Slides

### A. Defendants' slides (3-5; 8-9; 26-27; 34-35; 51-53; 69-70) contain improper legal argument.

Defendants' slides contain numerous impermissible legal arguments. *See* slides 3-5; 8-9; 26-27; 34-35; 51-53; 69-70. It is well settled that litigants may not make legal arguments in their opening statements. *Wells v. Cramer*, 2009 WL 678102, *9 (M.D. Fla. Mar. 12, 2009) ("The purpose of an opening statement is to advise the jury of facts of the case and not to make legal argument."); *Icon Enterprises Int'l, Inc. v. Am. Prods. Co.*, 2004 WL 5644805, *10 (C.D. Cal. Oct. 7, 2004) ("a legal argument [ ] has no place in an opening statement"); *U.S. v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 353 (D. Conn. 1990) (rejecting request to make statement to jury because it amounted "to a request to make a legal argument during opening statement which is precisely what should be avoided in opening statements"); *Central Telecommunications, Inc. v. TCI Cablevision, Inc.*, 610 F. Supp. 891, 904 (W.D. Mo. 1985) ("Opening statements afford the parties an opportunity to outline what their evidence will be. Legal arguments offered during the course of an opening statement are improper.").

1    Despite this clear rule, Defendants seek to include in their opening statement slides
2 instructing the jury on a host of legal issues. As just one example, Defendants plan to use
3 several slides which purport to explain the "patent process." *See* slides 5 and 34. The
4 Court has already determined that the jury should be instructed on the patent system
5 through the Federal Judicial Center video and a narrow instruction on reissue and
6 reexamination. Defendants, however, intend to go well beyond that, and make statements
7 about the law which are inconsistent with the instructions that will be provided by the
8 Court. Defendants' attempt to usurp the Court's role in instructing the jury by making
9 legal arguments in their opening statement should be rejected. *See Schwartz v. Sys.*
10 *Software Associates, Inc.*, 32 F.3d 284, 288 (7th Cir. 1994) ("Since it was the province of the
11 district court to pass upon the law, it was entitled to tell plaintiff's counsel to refrain from
12 legal argument in his opening statement.") (internal citations omitted).
13    Many of Defendants' legal argument slides should also be excluded for the
14 additional reason that, not only do they contain legal argument, they misstate the
15 applicable law.

- Slides 4, 5, 8, 26, and 34 imply that the jury has the right to assess and determine the validity of the patent and that the jury may find a patent invalid based on either anticipation or obviousness. However, obviousness is an issue to be determined by the Court rather than the jury.

- Slides 52-53 incorrectly state the elements of inducement, asserting that belief in the invalidity of a patent negates specific intent.

- Slide 69 contains statements that are contrary to the law governing damages. Specifically, Defendants' statements that external devices should not be included in the royalty base because they are non-infringing or because Defendants allegedly believed the patent was invalid violate the well-settled rule that the parties must assume that the patent-in-suit is valid and infringed for purposes of calculating damages.

**B.    Objections to Slides 73-76**

Fujitsu objects to slides 73-76 of Defendants' opening slides on the ground that they violate the Court's ruling on Fujitsu's Motion *in Limine* #2, which prohibits

1 Defendants from using evidence of the cancellation of claims to dispute the validity of the
2 asserted claims.
3       The Court's ruling was clear:  cancellation of claims could be used to show lack of
4 willfulness or inducement, *but not invalidity*:

> Defendants may rely on the cancellation of claims for the purpose of disproving willfulness and intent to induce infringement.  This evidence cannot, however, be introduced for the purpose of disputing the validity of the claims that were confirmed on reexamination.

9 Dkt. No. 365 at 4 (Pretrial Conference Order dated Nov. 13, 2012); *see also* Nov. 1 Tr. at
10 56:15 – 57:3, 59:10-18 (same).
11       Defendants' slides 73-76 improperly argue that the cancellation of some claims
12 demonstrates the invalidity of the asserted claims.  When Defendants first disclosed these
13 slides, they plainly related to validity.  After Fujitsu objected, Defendants simply changed
14 the header on one of the slides (Slide 73) to make reference to "Opinion" (even though no
15 opinion is referenced on the slide).  This fig leaf, however, cannot hide the fact that
16 Defendants are improperly arguing invalidity:

- "Fujitsu's arguments about why the prior art does not *invalidate* the patent all come from terms in the cancelled claims."  Slide 73 (emphasis added).

- "None of Fujitsu's *validity arguments* concern terms found solely in the dependent claims."  Slide 74 (emphasis added).  Again, including the word "Opinion" in the header does not make this a willfulness/inducement argument.

- "What you will not hear about the *prior art*…"  Slide 74.

- Defendants' Slides 75-76 (together with the rest of the slides) are a clear effort to argue that claim 2 (which depends on claim 38) must be invalid because claim 38 was rejected by the PTO.  Slides 75-76 use circles to argue that the additional limitation of claim 2 is unimportant.  These slides build on Slide 74, which identifies the additional limitations of claim 2 and argues that they are taught by the prior art.

1  Accordingly, the Court should strike Slides 73-76 as a violation of its ruling on
2  Fujitsu's motion *in limine.*

3  **C.  Objections to Slides 43-50 and 67-68**

4  Fujitsu objects to Defendants' Slides pages 43-50 and 67-68 to the extent they refer
5  to the PTO finding a "substantial new question of patentability" in granting the
6  reexamination requests.  These slides plainly violate the Court's ruling on Fujitsu's motion
7  *in limine* #2 barring evidence of interim office actions.

8  The Court's ruling was clear and unqualified:  "Fujitsu's motion to exclude evidence
9  and argument regarding the PTO's interim office actions is GRANTED pursuant to FRE 402
10 and 403."  Dkt. 365 at 4; *see also* Nov. 1, 2012 Tr. at 56 ("Fujitsu is right that what
11 happened in the interim office actions, the probative value of that is very minimal and,
12 under 403, that wouldn't come in.").

13 The Court's ruling finds strong support in the case law.  *See, e.g., Minemyer v. B-Roc*
14 *Representatives, Inc.*, 2012 WL 346621, at *4 (N.D. Ill. Feb. 2, 2012) ("initial rejection by the
15 PTO of original claims that were later confirmed on re-examination is so commonplace
16 that they hardly justif[y] a good faith belief in the invalidity of the claims") (quoting and
17 citing cases) (internal quotation marks omitted).  The Minemyer court noted that 92% of
18 ex parte reexamination requests have been granted since 1981.

19 The PTO's finding of a substantial new question of patentability is precisely the
20 kind of interim office action barred by the Court's ruling.  It has no probative value, and it
21 will only cause confusion and unfair prejudice in a jury unfamiliar with PTO procedures.
22 Defendants' citation of these interim decisions should be stricken from their opening
23 slides.

24 **D.  Slide 18 violates the Court's ruling on Fujitsu's Motion *in Limine* #5**
25
26 Defendants' opening slide 18 includes a blow-up of Defendants' Exhibit 57, which is
27 an ARLAN manual.  This document is excluded under the Court's ruling on Fujitsu's motion
28 *in limine* #5, which barred the use of prior art not disclosed in the invalidity contentions.

1  *See* Dkt. 365 at 5.  Defendants do not dispute that they failed to disclose the document in
2  their invalidity contentions.  Accordingly, it must be excluded.[2]
3  To the extent that Defendants argue that the document can be considered for "state
4  of the art" even though it was not disclosed in the contentions, the Court squarely rejected
5  this effort last week as to the Reimer reference:

6      THE COURT:  Well, I said Reimer is excluded, so what's the
       purpose of – you're going to get it in for state of the art?  *That's*
7      *not happening*.

8  Nov. 20, 2012 Tr. at 52 (emphasis added).
9  Defendants have suggested in meet-and-confers that the Court subsequently
10 changed its mind on this issue.  This is not true.  The Court and the parties next discussed
11 whether references that post-date the priority date were subject to the same rule.  The
12 Court concluded that they were not.  *See id.* at 54:1-6.  The Court concluded the discussion
13 by reiterating:

14      THE COURT:  I've already ruled.  Now, there will be a limiting
       instruction.  It cannot be prior art that I've already excluded
15      on other grounds.

16 *Id.* at 54:13-15 (emphasis added).  Prior art not disclosed in the contentions falls
17 within the category of art that the Court has "already excluded on other grounds."  Just like
18 the Reimer reference, Defendants cannot use "state of the art" as a loophole to bring in art
19 that they failed to disclose in their contentions.
20 The Court's decision is consistent with the case law in this district.  Courts have
21 held that the disclosure requirements apply to all prior art; there is no exception for
22 references or publications that relate to background on the art.  *See Life Techs. Corp. v.*
23 *Biosearch Techs., Inc.*, 2012 U.S. Dist. LEXIS 132478, *5-6 (N.D. Cal. Sept. 17, 2012) (Alsup,
24 J.) (rejecting defendants' efforts to rely on improperly disclosed references as "background
25 on the art," as such contextual material still constituted prior art that must meet the

---

[2] The document was produced by Defendants for the first time *after* the scheduled close of fact discovery, when it was marked at the deposition of John O'Hare.  Defendants used it at deposition without first having produced it in discovery.

1 requirements of PLR 3-3); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d
2 1025, 1047-48 (N.D. Cal. 2011) (Spero, M.J.) (dismissing defendants' efforts to elude patent
3 local rules by defining materials as background or context).

### III. Fujitsu's Responses to Defendants' Objections to Fujitsu's Direct Examination Exhibits

#### A. Fujitsu's Redactions to Exhibit PTX300 comply with the Court's Order regarding the limited use of this document to show notice.

Defendants object to the redacted version of PTX300 (attached hereto as Exhibit 3) that Fujitsu proposes to use at trial during the direct examination of Hitoshi Fuji. This exhibit is a pre-suit settlement communication sent by Fujitsu's counsel to NETGEAR's counsel. Fujitsu plans to use this document to show that it provided NETGEAR with notice of the '769 patent and categories of accused products. This exhibit is subject to the Court's ruling on Fujitsu's motion *in limine* #4, which pursuant to Federal Rule of Evidence 408, prohibits the use of pre-suit settlement correspondence for any purpose other than notice.

Fujitsu's redactions are meant to comply with the Court's ruling and to prevent any suggestion that Fujitsu may have opened the door to the unlimited use of pre-suit settlement correspondence by introducing more than the notice portions of the document. Accordingly, Fujitsu has redacted the inadmissible portions of the document and left the portions of the document that demonstrate notice.

Defendants' assertion that the redacted exhibit somehow violates Federal Rules of Evidence 106 and 403 is completely unfounded. Indeed, the portions of the document that Defendants seek to include—for example, substantive arguments about validity, arguments about intervening rights, and a draft licensing offer—have already been excluded by the Court's motion *in limine* ruling.

### IV. Fujitsu's Objections to Defendants' Cross Examination Exhibits

#### A. Ozawa Objection #1: Prior art references not identified in Defendants' contentions are barred by the Court's ruling on Fujitsu's Motion *in Limine* #5

1    Defendants have identified numerous prior art exhibits for cross-examination of
2    Mr. Ozawa, one of the inventors.  Many of these were not disclosed in Defendants'
3    invalidity contentions and thus are excluded by the Court's ruling on Fujitsu's motion *in*
4    *limine* #5.  See Dkt. 365 at 5.  These exhibits are: DTX 97, 106, 197, 198, 203, 204, and 460.
5    In the meet-and-confer process, Defendants have not disputed that these documents are
6    absent from their contentions.
7    To the extent that Defendants seek to circumvent the Court's ruling by
8    characterizing these references as "state of the art," the Court has already rejected this
9    tactic in connection with the Reimer reference.  For the same reasons as stated in Section
10   II.D. above, Defendants attempt to use "state of the art" as a backdoor should be rejected.

**B.     Ozawa Objection #2:  PCMCIA-related prior art**

12   DTX818 is the PC Card Standard, Release 1.0.  Defendants did not identify DTX818
13   in their November 9 prior art election or in their November 15 prior art election.  Instead,
14   they identified DTX458—a different document that included certain excerpts from the
15   Standard and was marked at a deposition.  Defendants argued at the November 20
16   conference that DTX458 should come into evidence and the Court issued an order the
17   following day authorizing Defendants to include DTX458 in a revised prior art election.
18   *See* Dkt. No. 396 at 2.  The Court cautioned:  "This is not an invitation to add any further
19   references."  *Id.*  Defendants, however, did just that.  In contravention of the Court's order,
20   Defendants added DTX818 to their revised election.  On this ground alone, the document
21   should be barred.
22   DTX818 also is objectionable on several evidentiary grounds.  First, as reflected in
23   Defendants' opening slides (Slide 28), Defendants will use this document to argue that the
24   PCMCIA was working on developing "I/O cards" in November 1990:  "PCMCIA is working
25   on defining a standard I/O function."  Fujitsu objects pursuant to FRE 402 and FRE 403
26   because the reference to "I/O cards" is ambiguous; in fact, there is no evidence that the
27   PCMCIA was working on developing wireless interface cards at this time.  Accordingly, the
28   document confuses the issues and is unfairly prejudicial.  Moreover, Defendants have not

laid the proper foundation for DTX818.  They made no attempt—through a subpoena or otherwise—to obtain testimony from an individual with knowledge about the activities of the PCMCIA during the relevant time period.[3]

DTX460, a Japanese-language article concerning the standardization of IC memory card specifications in Japan, suffers from the same evidentiary problems.  Like DTX818, there is a short excerpt concerning I/O cards, but it only relates to wired, not wireless, cards.  Accordingly, this document should similarly be excluded under FRE 402 and 403, and for lack of foundation.

### C. Ozawa Objection #3:  Prior Art Devices Lacking Authentication or Foundation

Defendants have identified certain physical devices for which they have no authentication or foundation.  DTX 106 purports to be a VIC 20 Modem, and DTX 197 purports to be nine different "Interface Modules."  None of these devices can be authenticated.  They are in the possession of D-Link's counsel, but Fujitsu has no information concerning where they came from or whether they are what they purport to be.  Defendants have not pursued discovery to authenticate the devices.  Nor do they have a witness on their trial list who can do so (other than a generic "Hewlett-Packard Company" as a "may call").  Certainly Ozawa will not be able to authenticate the devices or lay the proper foundation for their admission.  Accordingly, these exhibits should be excluded under Federal Rule of Evidence 901 and for lack of foundation.

In addition, DTX 197 is a compound exhibit consisting of nine different devices.  Identifying them as a single exhibit wrongly suggests that they are all part of a single system or single prior art reference.  Accordingly, these should also be excluded under Federal Rule of Evidence 403.

### D. Fuji Objection #1:  Pre-suit Settlement Communications (DTX434-438)

---

[3] While Defendants do not expressly cite Tr. Ex. 818 in their Opening Slides, a passage from it - Section 4.9.4 -- appears on their Slide 28.  It is objectionable there for the same reasons set forth here.

1    Defendants intend to examine Fujitsu witness Hitoshi Fuji regarding DTX434,
2 DTX435, DTX436, DTX437, and DTX438.  These exhibits consist of settlement
3 communications between Fujitsu and third parties, many of which are clearly labeled
4 "PRIVILEGED AS SETTLEMENT NEGOTIATIONS PURSUANT TO FED. R. EVID. 408."  Some
5 of the exhibits Defendants have identified consist of multiple letters combined into one
6 exhibit.  Use of these settlement communications would violate Federal Rule of Evidence
7 408 and the Court's prior ruling on this issue.
8    In its November 13, 2012 Pretrial Conference Order (Dkt. # 365), the Court granted
9 Fujitsu's motion *in limine* and "exclude[d] evidence of pre-suit settlement communications,
10 if offered for any purpose other than to show notice of the '769 patent."  Dkt. # 365, at 4.
11 The Court also allowed an exception for "advice of counsel letters and charts that were
12 relied upon by Defendants' corporate reliers will be admissible for the limited purpose of
13 disproving willfulness and intent to induce infringement."  *Id.*  Defendants' offer of these
14 confidential settlement communications cannot be reconciled with the Court's clear order-
15 -none of them concern notice of the patent to Defendants and none of them could have
16 been relied upon by Defendants' reliers because none of the correspondence is with
17 Defendants.  Indeed, the only purposes of such documents would appear to be to disprove
18 or minimize liability or damages in direct contradiction to Rule 408.
19    **E.    Fuji Objection #2:  DTX787**
20    Fujitsu objects to DTX787 on the ground that it is an inaccurate translation.  The
21 document purports be a translation of DTX575, which is a compound exhibit that includes
22 (among other things) the invention disclosure form.  As Fujitsu has pointed out to
23 Defendants, the translation is not accurate for multiple reasons, including because it omits
24 a number of markings from the Japanese version that are important to understanding the
25 document.  Fujitsu informed Defendants that Fujitsu would consider withdrawing its
26 objections if Defendants were to provide a revised version of the translation that correct
27 the mistakes, including correcting the missing markings.
28    **F.    Fuji Objection #3:  DTX466-473**

1    Fujitsu objects to DTX466-473 on the ground that they are, in whole or in part, Japanese-language documents for which Defendants have not provided translations.  *See, e.g., United States v. Rivera-Rosario*, 300 F.3d 1, 5, 7 n. 4 (1st Cir. 2002) (noting "well-settled rule that parties are required to translate all foreign language documents into English").  Defendants have had these exhibits for more than seven months, yet chose not to obtain certified translations.

DATE:  November 25, 2012

COVINGTON & BURLING LLP

By:  _/s/ Robert D. Fram_____

Robert D. Fram (rfram@cov.com)
Thomas E. Garten (tgarten@cov.com)
Jeffrey T. Pearlman (jpearlman@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone:    415.591.6000
Facsimile:     415.591.6091

Philip A. Irwin (pirwin@cov.com)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone:    212.841.1000
Facsimile:     212.841.1010

Gary M. Rubman (grubman@cov.com)
R. Jason Fowler (jfowler@cov.com)
William E. Zapf (wzapf@cov.com)
Brianne Bharkhda (bbharkhda@cov.com)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:    202.662.6000
Facsimile:     202.662.6291

Attorneys for Plaintiff and Counterclaim-Defendant FUJITSU LIMITED