| | |
|---|---|
| John P. Bovich (SBN: 150688)<br>Email: jbovich@reedsmith.com<br>William R. Overend (SBN: 180209)<br>Email: woverend@reedsmith.com<br>Seth B. Herring (SBN: 253907)<br>Email: sherring@reedsmith.com<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105-3659<br>Telephone: (415) 543–8700<br>Facsimile: (415) 391–8269<br><br>Attorneys for Defendant<br>NETGEAR, INC.<br><br>David Enzminger (SBN: 137065)<br>Email: denzminger@winston.com<br>David S. Bloch (SBN: 184530)<br>Email: dbloch@winston.com<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071–1543<br>Telephone: (213) 615–1700<br>Facsimile: (213) 615–1750<br><br>Attorneys for Defendants<br>BELKIN INTERNATIONAL INC.<br>AND BELKIN, INC. | Duncan Palmatier (SBN 116692)<br>Email: dpalm@dpalmlaw.com<br>S. J. Christine Yang (SBN 102048)<br>Email: cyang@sjclawpc.com<br>Victoria Hao (Admitted Pro Hac Vice)<br>Email: vhao@sjclawpc.com<br>LAW OFFICES OF S.J. CHRISTINE YANG<br>17220 Newhope Street, Suites 101 and 102<br>Fountain Valley, CA 92708<br>Telephone: (714) 641–4022<br>Facsimile: (714) 641–2082<br><br>Attorneys for Defendants D-LINK SYSTEMS,<br>INC. and D-LINK CORP. |

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FUJITSU LIMITED,<br><br>        Plaintiff,<br><br>    v.<br><br>BELKIN INTERNATIONAL, INC., BELKIN, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ZYXEL COMMUNICATIONS CORPORATION, and ZYXEL COMMUNICATIONS, INC.,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 10–cv–03972–LHK (PSG)<br><br>**DEFENDANTS' RESPONSE TO FUJITSU'S OBJECTIONS TO DEFENDANTS' OPENING SLIDES AND EXHIBITS**<br><br>**Trial Date:** November 26, 2012<br>**Time:** 8:30 a.m.<br>**Location:** Courtroom 4, 5th Floor<br><br>Hon. Lucy H. Koh |

On November 20, the Court said, "I really hope you don't have any objections to each other's openings." 11/20/12 Transcript at 67:25-68:1. So, during last night's meet-and-confer call, Defendants' proposed that both parties allow each other's opening slides without any objection, save for an incurable defect in Fujitsu's Slide 22 (which claims 12 years of damages on Defendants' entire wireless product line). Fujitsu refused. Defendants now respond to Fujitsu's objections to Defendants' opening slides and cross-examination exhibits.

I.   **Defendants' Opening Slides**

The parties *did* resolve Fujitsu's objection to Slides 33 and 66, which involved typographical or other ministerial errors. Fujitsu's remaining objections can be grouped into four categories:

***1.   "Legal argument" objections.*** Fujitsu objects that Defendants' Slides 3-5, 8-9, 26-27, 34-35, and 51-53 (see **Tab 1**) contain improper legal argument. It asserts further that Slides 4-5, 8, 34, and 52-53 misstate the law. And it claims that Slide 69 incorrectly describes the law of damages. Fujitsu is wrong on all counts. The challenged slides derive from the Court's own preliminary jury instructions, which is precisely what Fujitsu did in its Slide 38. **Tab 2**. And, as importantly, the statements Fujitsu complains about do not focus on the law but rather on *what the evidence will show*: that the `769 patent is invalid because somebody else conceived of the underlying concept first (**Tab 1**, pp. 3, 35), and that this is a *factual* question for the jury to decide (pp. 4-5, 8, 26, 34). Similarly, Defendants' slides on willfulness emphasize what Fujitsu must prove and what the jury must find, and what *evidentiary* standard applies (pp. 51, 53). The other slides Fujitsu complains about are merely explanatory, not argumentative, and help frame the factual discussion that precedes and follows them (pp. 9, 27, 52).

As to the purported misstatements, it is unquestionably true, as Slide 4 says, that the fact the PTO grants a patent does not necessarily mean that the invention claimed therein is patentable; an accused infringer has every right to assert that an asserted patent is invalid, and validity is indeed a jury question. Fujitsu's objection to these slides is a

1  transparent attempt to preclude the jury from even understanding that it may decide
2  invalidity in this case and it would materially prejudice Defendants if they are not allowed
3  to provide that proper context for the evidence at the outset of the trial.  Slide 5 correctly
4  notes that, in patent prosecution and ex parte reexamination, only the patentee
5  participates (MPEP § 2209; FJC Video), no actual devices are considered (*id*.), and
6  accordingly some prior art is never seen (FJC Video); while in litigation the jury decides
7  whether prior art (including actual devices and other material not before the PTO)
8  invalidates a patent.  As Fujitsu's own lawyer explained, "Fujitsu doesn't object to the fact
9  that a reference was before the Patent Office or that it was not before the Patent Office."
10 11/1/12 Hearing Transcript at 55:13-15.  Moreover, given Fujitsu's heavy emphasis on the
11 reexaminations during its opening slides, (as mentioned below, Fujitsu references the re-
12 examinations in 20 of its 58 slides) Defendants' Slide 5 simply provides *evidence*
13 concerning the actual prosecution and reexamination procedure, which Fujitsu
14 undoubtedly intends to explain to the jury.
15        In like fashion, Slide 8 correctly states that a jury can invalidate a patent based on
16 anticipation or obviousness.  Dkt. No. 399, p. 24.  Slide 52 correctly states that inducement
17 requires a showing that the defendant was aware of the patent, induced another to commit
18 infringing acts, knew that the acts it was causing would infringe a valid patent, and actually
19 succeeded in causing a third party to infringe.  *Id*.  And Slide 53 does not contain a legal
20 conclusion at all, but rather tells the jury what *facts* to look out for in the upcoming trial.
21 Likewise, Slide 69 merely states what the Defendants believe the evidence will show--
22 namely, that they believed the `769 patent was invalid and thus lacked the requisite intent,
23 and that there is no proof of actual use--without addressing legal issues at all.  If anything,
24 Fujitsu's arguments violate the Court's *Daubert* ruling, which criticized Dr. Meyer's
25 methodology and excluded third-party devices from the royalty base.  Dkt. No. 370.
26        If the Court is inclined to exclude these slides, Defendants propose three
27 replacement slides, attached hereto as **Tab 3**.  The "Anticipation" and "Obviousness"
28 replacement slides contain direct quotes from the Court's Preliminary Jury Instructions

(just like Fujitsu's Slide 38), while the "Federal Judicial Center Video" slide contains direct quotes from the Federal Judicial Center video on the patent system that was shown to the jurors.

2. ***Objections to ARLAN.*** Fujitsu persists in objecting to the ARLAN system, which the Court has overruled twice thus far. This time, Fujitsu complains about an excerpt of DTX 057 on Slide 18 of Defendants' Opening Slides. DTX 057 (the user manual for ARLAN 440) was originally marked at the deposition of John O'Hare, one of the Telesystems employees who worked on ARLAN. It was discussed in Dr. Mirhan's expert report and Fujitsu's expert, Dr. Williams, specifically addressed it both in his written report and at deposition:

```
Q. And I note that in the picture in your report under
Section 4, it says, "Insert the ArLAN 440 module in
the slot."  So going back to the question, does ArLAN
refer to it as "slot"? The answer is it does, doesn't
it?

A. The word "slot" appears in this installation
process for the 440 model -- module, yes.

                        ***

Q.  In terms of how the ArLAN 440 was installed to the
computer, it was the same procedure as the 450,
correct?

A.  That portion that resided inside the computer,
yes.
```

Fujitsu wants to exclude the ARLAN reference because it concededly shares all aspects of the "card" claimed by the `769 patent. Fujitsu's only argument why ARLAN does not anticipate the '769 patent is that it does not disclose a "slot." Yet the ARLAN manual at DTX 057 discloses exactly that. Naturally, DTX 057 appeared on Defendants' November 15, 2012, "skinny" list of prior art references. Dkt. No. 381-6. Fujitsu objected to four *other* references on that list, including the combination of ARLAN and the Vic-20 computer, and made a motion to exclude them. Dkt. No. 381. ARLAN was discussed extensively, with Fujitsu arguing that it was disclosed individually but not in combination:

> THE COURT: … YOU'RE SAYING IT DISCLOSES ARLAN, BUT IT DOESN'T DISCLOSE THE COMBINATION OF VIC-20?
>
> MR. FRAM: CORRECT, YOUR HONOR.

11/20/12 Transcript at 48:18-23.  The Court disagreed, allowing the ARLAN/Vic-20 combination reference and confirming that systems can properly be described by multiple documents.  Dkt. No. 396.  That Order specifically states: "***Defendants may use the references they previously identified in their motion to the Court filed at ECF No. 387, at 2***, with the exclusion of the reference to John Reimer."  *Id*.  Page 2 of ECF No. 387 explicitly refers to DTX 057.  Following the Court's order, Defendants submitted a final disclosure of prior art.  Dkt. No. 398.  The Court has held that DTX 057 is admitted into evidence.  Whatever objections Fujitsu had to DTX 057 have long been waived.  Relitigating this issue yet again is a waste of the Court's time.

　　　　3.　　***References to cancelled claims.***  Fujitsu asserts that Slides 71-76 violate the Court's ruling on Fujitsu's motion *in limine* # 2 because they show the cancellation of claims not currently asserted against the Defendants "to dispute the validity of the asserted claims."  In fact, the slides are careful to note that each of the identified claims had previously been asserted against the Defendants.  Besides, as the Court's order clearly states, Fujitsu's motion *in limine* # 2 "is **DENIED** as to the PTO's cancellation of claims Fujitsu asserted against Defendants before and during the litigation.  Defendants may rely on the cancellation of claims for the purpose of disproving willfulness and intent to induce infringement."  (emphasis added).  That is all that these slides are offered to prove.  Indeed, everything from Slide 36 to Slide 76 is directed to disproving Fujitsu's willfulness and intentional-inducement claims; validity is addressed in Slides 1-35.

　　　　4.　　***References to re-examinations.***  Fujitsu argues that Slides 44-51 and 68-69 improperly refer to the PTO's re-examination findings, which Fujitsu asserts is prohibited by the Court's ruling on its motions *in limine*.  But Defendants are no more than stating the letter of the law as to when a re-examination petition is granted.   And as the Court explained, "[a] relitigation of the reexamination … is excluded under a FRE 403 balancing

test," but "[t]he Court recognizes that fine lines in specific contexts will have to be drawn ...." Dkt. No. 365. Besides, at the November 1 hearing the Court acknowledged the risk that Fujitsu might try to put on evidence of the multiple re-examination proceedings in an effort to buttress the perceived strength of the `769 patent, and invited the Defendants to "re-raise the issue" should Fujitsu "open the door":

```
MR. BOVICH: I THINK THE MOST THEY CAN DO IS THEY CAN
SAY THE PATENT GOT RE-EXAMINED. IT GOT THROUGH. THAT'S
FINE.
    BUT IF THEY WANT TO START SAYING THAT ESSENTIALLY
THAT'S AN INDICIA OF VALIDITY, THAT MEANS THE PATENT'S
VALID, YOU NEED TO FIND THAT THE PATENT IS VALID, THEN
IT'S TOTALLY UNFAIR AND IT'S ONE-SIDED.

THE COURT: ISN'T THAT THE LAW? THERE IS A PRESUMPTION
OF VALIDITY.

MR. BOVICH: YEAH, THEY'RE ENTITLED TO THEIR
PRESUMPTION.  WHAT I'M CONCERNED ABOUT IS THE EVIDENCE
AND THE INNUENDO IS GOING TO START SAYING THIS WAS A
QUALITY PROCEEDING. IT WAS VETTED. IT MUST BE RIGHT.

THE COURT: IF THEY OPEN THE DOOR, RE-RAISE THE ISSUE.
```

[11/1/12 Pretrial Conference Transcript at 60:6-21.]

Fujitsu's opening statement inarguably opens the door. It mentions various re-examination proceedings in 20 of its 58 slides, boasting in one that "the Patent Office has been reviewing prior art regarding the patent for 20 years" (**Tab 4**). If Fujitsu is permitted to use the re-examinations to bolster the credibility of its claims, then the Defendants must be allowed to offer their explanations for why the Patent Office did not invalidate the remaining asserted claims of the `769 patent.

Moreover, Fujtisu's use of 20 slides to discuss the reexamination proceeding is clearly intended to convey to the jury that the Defendants could not have believed the patent was invalid. But the truth is that the patent office, at Fujitsu's request, did find there was a substantial new questionability in 2005. The PTO found a substantial new question of patentability in 2005, based on Fujitsu's own admission that art the defendants gave Fujitsu raised that substantial question. Yet Fujitsu seeks a finding of willful

infringement on the sales made before the PTO made any decision upholding any claims of the patent. Nearly all the sales of the accused card and kit products occurred before 2009; by 2010, the accused products were largely obsolete. If Fujitsu is permitted to tout the reexaminations (and they should be), then Defendants should be similarly be able to say that at the time the accused sales were made, the patent office was considering the substantial new question of validity that Fujitsu itself raised. Fujitsu has articulated no basis to reject any of Defendants' slides. Moreover, jousting over the admissibility of opening statements is a waste of judicial resources and party time. The Court should reject Fujitsu's objections to Defendants' opening slides.

## II.     Defendants' Cross-Examination Exhibits

Fujitsu also objects to a host of slides that Defendants may use in the cross-examination of Messrs. Ozawa and Fuji, both of whom Fujitsu intends to present on Monday, November 26. Of course, because Defendants do not know what these witnesses will say, they have identified more documents than they will likely use in any given cross-examination.

Importantly, all of the documents Fujitsu challenges here were produced by Fujitsu. Defendants are thus at a loss as to why Fujitsu thinks an objection is proper. The Court strongly suggested otherwise at the November 20 pretrial conference, and Fujitsu seems to have agreed at the time:

```
THE COURT: … AND THIS IS MY INCLINATION. IF IT'S A
DOCUMENT THAT YOU ALL HAVE PRODUCED AND IT'S CLEARLY
YOUR CORPORATE DOCUMENT, I REALLY DON'T WANT TO WASTE
TIME ON, LIKE, FOUNDATION AND CUSTODIANS OF RECORD. I
MEAN, IF IT'S A PARTY AND YOU PRODUCED IT AND IT'S
CLEARLY YOUR DOCUMENT, THEN LET'S NOT FUSS AROUND WITH
OBJECTIONS ABOUT THAT.

MR. IRWIN: YEAH.
```

11/20/12 Transcript at 61:14-20. In any event, Fujitsu's objections are now of record, and Defendants respond to them here. Even aside from the Court's directive, all of the documents challenged by Fujitsu should be admitted.

**A.     Mr. Ozawa**

Masayuki Ozawa is one of two co-inventors of the `769 patent.  The other, Mr. Suzuki, will not testify live.  Because Mr. Ozawa is the inventor, he is uniquely situated to testify about what he actually invented, as well as the state of the art at the time of his invention.  Fujitsu raises three objections to the documents.

***Art not disclosed in contentions (DTX 97, 106, 197, 203, 204, and 460)***.  First, Fujitsu argues that several documents and physical samples (all of which predate the `769 patent) were not disclosed in Defendants' invalidity contentions.  Fujitsu is wrong on the facts: DTX 106 (the Vic-20) and DTX 197 (HP 82950a) were in Defendants' invalidity contentions, and indeed were addressed by the Court's November 21 Pretrial Conference Order.  Dkt. No. 396.  DTX 203 and 204 were also disclosed in Defendants' contentions, but were not elected as part of Defendants' final list of asserted prior art.   DTX 97 and 406 are excerpts from the `769 patent's file history, and DTX 97 also was discussed in Dr. Mirhan's report (though not the invalidity contentions).

None of these documents are being offered as prior art.  Instead, they fall into the general category of "state of the art": materials that may be admitted into evidence to establish the general background from which the `769 patent emerged, but not for purposes of validity.  The Court did *not* limit state-of-the-art or background materials to those both charted in Defendants' invalidity contentions and analyzed by Dr. Mirhan.  *See* Dkt. No. 396. Rather, "I WOULD ALLOW THIS, BUT YOU HAVE TO GIVE A LIMITING INSTRUCTION THAT IT'S NOT TO BE CONSIDERED AS PRIOR ART TO INVALIDATE, YOU KNOW, FOR PURPOSES OF INVALIDITY. IT'S ONLY TO ESTABLISH THE STATE OF THE ART." 11/20/12 Transcript at 51:3-6. Defendants have proposed a limiting instruction, just as the Court instructed.  *See* Dkt. No. 404.  That limiting instruction removes any prejudice that Fujitsu may fear and thus should clear the way for the use of these documents for purposes other than validity.

***Objections as to PCMCIA-related art (DTX 818 and 460).***  Fujitsu objects yet again to Defendants' inclusion of PCMCIA 1.0a (DTX 818) and an article from the `769 patent's

file history describing the PCMCIA standard (DTX 460).  Clearly, Fujitsu cannot exclude a portion of the file history of its own patent.  And Fujitsu already has litigated--and lost--the issue of whether DTX 818 is admissible.  DTX 818 was fully disclosed in the Invalidity Contentions, discussed by Dr. Mihran in his report, and ruled on by the Court.

```
     THE COURT: I AGREE THAT THEY GOT THE BATES NUMBER
     WRONG, BUT IT IS PRETTY EXPLICIT IN THE -- IN DR.
     [MIRHAN]'S EXPERT REPORT THAT HE THOUGHT HE WAS
     REFERRING TO THE 1.0 RELEASE.

     MR. FRAM: YOUR HONOR, OUR POSITION, OF COURSE, IS IT
     HAS TO BE IN THE CONTENTIONS. YOU CAN'T CURE THAT
     THROUGH THE EXPERT REPORT, AS WE LEARNED IT THE THIRD
     PARTY CARD LITIGATION IN THIS CASE.

     THE COURT: BUT I'M LOOKING AT THE CONTENTIONS. IT
     STAYS "INCLUDING PC CARD STANDARD RELEASE 1.0, RELEASE
     1.0A, OR SIMILAR RELEASE PRIOR TO THE CRITICAL DATE."
         NOW, YOU'RE RIGHT. IT DOES GIVE AS AN EXAMPLE THE
     BATES RANGE OF FUJITSU 1515 THROUGH 1528.
         I'M GOING TO ALLOW IT. OKAY?  FOR PCMCIA, THAT'S
     ALLOWED.
```

11/20/12 Transcript at 41:17-22.  Fujitsu also objects on relevance, hearsay, foundation, and prejudice grounds; but PCMCIA is invalidating prior art and is clearly relevant.  The challenged documents were produced by Fujitsu in this litigation and it offers no basis whatsoever for their exclusion.

***Evidentiary objections as to devices (DTX 106, 197/599, 198/600, and 96).***
Fujitsu's objection that it has not had a chance to review the devices identified at DTX 197/599 (HP 82-series interface modules, including the HP82950A), and DTX 198/600 (HP Series 80 computer, including the HP-85, into which the modules are inserted), is frivolous, since these devices were brought to and made available to Fujitsu's attorneys and its experts at multiple depositions during the course of discovery.  Moreover, in preparation for trial, the parties  have agreed to a mutual review of available physical devices on Sunday.  To the extent Fujitsu challenges these devices and foundation grounds, it should be noted that publications related to them were part of the reexaminations.  During the parties' negotiations concerning admissibility of exhibits, Fujitsu had

tentatively agreed to their admission.  Moreover, on November 20, 2012, Defendant D-Link Systems served a trial subpoena on Hewlett-Packard in Palo Alto, to appear on Monday, December 3, 2012 – the likely start of Defendants' case – to appear and verify the authenticity of and foundation for these devices.  Fujitsu's objections are frivolous and these exhibits should be admitted.

Fujitsu identified DTX 96 as a device, as well, but it is in fact a damages article relied upon by Dr. Leonard.  Whatever device was intended, Defendants are confident that mutual inspections will resolve any evidentiary concerns.

Fujitsu also objected to Defendants' identification of some foreign language documents for use in cross examination of Mr. Ozawa, including his original invention disclosure, as well as translations.  These are discussed below.

### B. Mr. Fuji

Hitoshi Fuji has been a Fujitsu employee for over 30 years.  He is presently a Senior Director, with responsibility for supporting litigation and licensing relating to Fujitsu's patents.  Mr. Fuji was designated for 37 out of 46 topics in response to Defendants' 30(b)(6) notice to Fujitsu, and was disclosed by Fujitsu as a direct witness to testify regarding the prosecution of the '769 patent and Fujitsu's licensing of this and other patents.  Fujitsu raises three objections to the documents Defendants have identified as possible cross-examination materials for Mr. Fuji.

***Pre-suit communications with non-parties (DTX 434-438).*** [1]  Fujitsu appears to contend that its licensing negotiations regarding the '769 patent are irrelevant (FRE 402), unduly prejudicial (FRE 403), settlement communications (FRE 408), and--in some cases-- compound.  Fujitsu's objections are without merit.

---

[1] In the parties' final meet-and-confer exchange, Fujitsu limited this objection to DTX 434-438, which would suggest that Fujitsu does not object to the admission of DTX 440, 450, or 451. But because it is not clear why Fujitsu would agree to the admission of pre-suit communications with some non-parties but not others, we address all of them here.

1  Licensing negotiations concerning the patent in suit provide a reliable window into
2 the market demand for the patent and the general view of its applicability.  Importantly,
3 these are *not* litigation settlements but rather letters from Fujitsu attempting to license the
4 '769 patent.  Thus, FRE 408 does not apply.  Nor is there any undue prejudice in revealing
5 what actually happened when Fujitsu tried to license the '769 patent.  As it happens, none
6 of them resulted in a royalty-bearing license: AT&T (DTX 440), Ricoh (DTX 450), and
7 Toshiba (DTX 451) took royalty-free cross-licenses that included the patent in suit, while
8 the other recipients of Fujitsu's licensing overtures (Airlink - DTX 434; Buffalo - DTX 435;
9 ePure - DTX 436; GigaCast - DTX 437; SohoWare - DTX 438) ignored Fujitsu's offer of a
10 license altogether.  Whether the industry acquiesced in the patent or recognized its value
11 is an indicator of obviousness.  Further, it further is relevant to the commercial
12 reasonableness of the Defendants in declining Fujitsu's license, which goes to willfulness.
13 And the fact that Fujitsu never bothered to enforce the patent against the majority of the
14 industry or find a single paying licensee before this lawsuit indicates the low-value placed
15 on the patent by Fujitsu itself.  This stands in stark contrast to the unreasonably high
16 royalty rate Fujitsu seeks in this case.   But this is surely probative evidence.  And it is
17 evidence that Mr. Fuji is uniquely qualified to provide.
18  These are all documents **produced by Fujitsu** and maintained in the ordinary
19 course of Fujitsu's business in Mr. Fuji's files.  They are "compound" only to the extent that
20 Fujitsu produced them that way.  Having collected and produced its documents in this
21 fashion, Fujitsu cannot now complain that the collection *it produced as a single document* is
22 compound.
23  Lastly, the idea that Mr. Fuji is an improper witness for these documents is absurd.
24 Mr. Fuji is in charge of Fujitsu's licensing program and was the company's corporate
 designee on licensing issues; he personally supervised all of these negotiations and has
25 personal knowledge about each of them.
26  ***Objections to Fujitsu's Japanese documents for lack of translation (PCMCIA***
27 ***documents: DTX 450, 451, 466-73) and/or inaccurate translation (invention***
28 ***disclosure: DTX 787).***  Fujitsu appears to contend both that Japanese documents cannot

be used without a translation (DTX 450, 451, 466–73), and that certified, produced translations of Japanese documents cannot be used (DTX 787).

As to the first, Fujitsu appears to object to Defendants utilizing the same procedure that Fujitsu itself will use for other documents.  Fujitsu identified DTX 575 (the Japanese-language invention disclosure) as a document it will use for the direct examination of both Messrs. Ozawa and Fuji.  Fujitsu confirmed during the meet-and-confer process that it will ask both witnesses questions about the document in its native format.  But Fujitsu claims that Defendants must supply translations before asking these same witnesses about *other* Japanese documents it produced (many from Mr. Fuji's own files).  It is hard to see how Fujitsu can maintain a good-faith objection to the use on cross-examination of DTX 450, 451, or 466-73.

Fujitsu originally objected to several of these same documents (all relating to the PCMCIA standard: DTX 460, 461, 464-69) on the grounds of relevance, prejudice, and in many cases hearsay (Rules 402, 403, and 802).  As to relevance, these documents are relevant to a number of issues, including (but not limited to): state of the art (DTX 460, 461, 464, 465), spoliation/laches (DTX 464-473), and *Georgia Pacific* factors on reasonable royalty (464, 466, 468, 469).  And as to hearsay, each document is more than 20 years old.  Fed. R. Evid. 901.  We understand that these objections are no longer being maintained.

On the second point, DTX 787 is a certified translation of DTX 575.  It was produced to Fujitsu by Defendants on March 9, 2012.  Fujitsu now objects on the grounds of relevance (Rules 401 and 402), foundation, and "objection to translation."  The document translated (the invention disclosure that Fujitsu plans to use on direct) unquestionably is relevant; it is accompanied by a signed and notarized certification; and Fujitsu has neither objected to the translation, sought discovery by deposition or otherwise into the translation, nor produced an alternate.  Instead, as noted, it wishes to question Messrs. Ozawa and Fuji on the Japanese version of the document, without offering any translation at all.

This is fine for documents of only modest importance.  But for such a critical document--one that the Court already found "highly probative" [11/1/12 Transcript at 60:23-25]--this procedure is unsound.  Providing only the Japanese-language invention disclosure without an English translation would render it largely incomprehensible to the jury.  Fujtisu's attempt to place the invention disclosure before the jury in an unreadable

form would create confusion and mislead the jury as to the importance of the document. Thus, the English translation must be admitted under Federal Rules of Evidence 402 and 604.

Respectfully submitted,

/s/     *John P. Bovich* [2]
John P. Bovich (SBN 150688)
Email: jbovich@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Seth B. Herring (SBN 253907)
Email: sherring@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105–3659
Telephone:    (415) 543–8700
Facsimile:     (415) 391–8269
Attorneys for Defendant NETGEAR, INC.

/s/          *David S. Bloch*
David Enzminger (SBN: 137065)
Email: denzminger@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071–1543
Telephone:    (213) 615–1700
Facsimile:     (213) 615–1750

David S. Bloch (SBN: 184530)
Email: dbloch@winston.com
WINSTON & STRAWN LLP
101 California St.
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Joshua Wyde (*Pro Hac Vice*)
Email: jwyde@winston.com
Michael J. Forbes (*Pro Hac Vice*)
Email: mforbes@winston.com
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor

---

[2] In compliance with General Order 45.X.B, I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories hereto.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Houston, TX  77002
Telephone:     (713) 651–2600
Facsimile:      (713) 651–2700
Attorneys for Defendants
BELKIN INTERNATIONAL INC. AND BELKIN, INC.

*/s/      Duncan Palmatier*

Duncan Palmatier (SBN 116692)
Email: dpalm@dpalmlaw.com
S. J. Christine Yang (SBN 102048)
Email: cyang@sjclawpc.com
Victoria Hao (Admitted Pro Hac Vice)
Email: vhao@sjclawpc.com
LAW OFFICES OF S.J. CHRISTINE YANG
17220 Newhope Street, Suites 101 and 102
Fountain Valley, CA 92708
Telephone:     (714) 641–4022
Facsimile:      (714) 641–2082
Attorneys for Defendants D-LINK SYS., INC. and D-LINK CORP.