Robert D. Fram (rfram@cov.com) (CA Bar No. 126750)
Thomas E. Garten (tgarten@cov.com) (CA Bar No. 247122)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone:   415.591.6000
Facsimile:    415.591.6091

Philip A. Irwin (pirwin@cov.com) (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone:   212.841.1000
Facsimile:    212.841.1010

Gary M. Rubman (grubman@cov.com) (admitted *pro hac vice*)
R. Jason Fowler (jfowler@cov.com) (admitted *pro hac vice*)
William E. Zapf (wzapf@cov.com) (admitted *pro hac vice*)
Brianne Bharkhda (bbharkhda@cov.com) (admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:   202.662.6000
Facsimile:    202.662.6291

Attorneys for Plaintiff Fujitsu Limited

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FUJITSU LIMITED,<br><br>           Plaintiff,<br><br>     v.<br><br>BELKIN INTERNATIONAL, INC., BELKIN, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ZYXEL COMMUNICATIONS CORPORATION, and ZYXEL COMMUNICATIONS, INC.,<br><br>           Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 10-cv-03972-LHK (PSG)<br><br>**FUJITSU'S RESPONSE TO DEFENDANTS' OBJECTIONS TO FUJITSU'S DEPOSITION DESIGNATIONS AND FUJITSU'S OBJECTIONS TO COUNTER-DESIGNATIONS**<br><br>Date:         November 27, 2012<br>Time:        9:00 a.m.<br>Location:  Courtroom 8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

When Defendants first served their objections yesterday afternoon, they asserted more than 225 objections to Fujitsu's deposition designations. The objections were contrary to basic rules of evidence and, in many cases, the parties' stipulation regarding admissibility of documents. For example, Defendants objected to the following types of evidence:

- Testimony about the date when Defendants received notice of the patent on the grounds that it is irrelevant (FRE 402) and unduly prejudicial (FRE 403);
- Testimony by Defendants admitting that they conduct interoperability testing of their products to ensure that they work with products sold by other companies on the grounds that it is irrelevant (FRE 402) and unduly prejudicial (FRE 403);
- Testimony about whether the Defendants manufacture the accused products on the ground that it is unduly prejudicial (FRE 403);
- Testimony about whether Defendants rely on third party market research reports to understand the wireless market on the grounds that it is irrelevant (FRE 402) and unduly prejudicial (FRE 403), even though all of the damages experts (including both of Defendants') rely on precisely the same reports; and
- Testimony about the Defendants' internal marketing documents relating to accused products on the grounds that they are irrelevant (FRE 402) and unduly prejudicial (FRE 403).

Essentially, Defendants sought to use the objections process to try to exclude from the case harmful testimony by their own employees. Defendants made no effort to pare down their objections to what they really planned to assert. Instead, they waited until after 9pm the night before the submission was due to identify their real objections. Defendants ultimately relented on many of these clearly meritless objections, but they continue to assert some. Accordingly, this submission unfortunately became necessary.

Defendants' objections also confirm the blatant double-standard that Defendants seek to apply in this case regarding spoliation allegations. Notwithstanding their opposition to Fujitsu's motion in limine seeking to exclude such evidence at trial (on the grounds that it is

1

both procedurally and substantively improper), at least some Defendants object to testimony being played from their own employees that establishes that Defendants failed to properly preserve evidence.  Fujitsu addresses this double-standard more fully below in Section II.

**I.   DEFENDANTS' OBJECTIONS TO FUJITSU'S DESIGNATIONS LACK MERIT**

Given the sheer quantity of objections by Defendants, it is impossible for Fujitsu to address in this brief each objection.[1]  Based on the parties' discussion at the meet and confer, Fujitsu is limiting its discussion in this submission to the objections that Defendants indicated they intend to pursue.  To the extent Defendants pursue additional objections, Fujitsu requests an opportunity to address those issues in a separate submission.

**A.   NETGEAR's Objections and Counter-Designations**

Fujitsu responds below to the objections that it understands NETGEAR intends to stand on.

**1.   Brian Busse Designations**

**113:14-113:19; 113:23; 114:8-114:15 and Defendants' Counter-Designation (218:10-18).**  Mr. Busse testified that after Fujitsu placed NETGEAR on notice of the '769 patent in 2002, NETGEAR did not consider stopping its marketing activities for the accused cards.  He also testified that NETGEAR would have continued to sell if it was "making the money on the card interface devices."

Defendants object to Fujitsu's designation of this testimony on the following grounds: FRE 602; lacks foundation; and incomplete.  The Court should permit the testimony.  First, Fujitsu disclosed this very same testimony to Defendants in its opening slides and Defendants did not object.  The objections are waived.  Second, Mr. Busse was designated as a Rule 30(b)(6) witness on Topic 19, which covers:

---

[1] Fujitsu understands that Defendants will be submitting to the Court excerpts of all disputed deposition testimony.

2

RESPONSE TO OBJECTIONS TO FUJITSU'S DEPOSITION DESIGNATIONS
AND FUJITSU'S OBJECTIONS TO COUNTER-DESIGNATIONS                    CASE NO. 10-CV-03972-LHK (PSG)

> 19. **The value of the inventions claimed in the Fujitsu Patent in promoting sales of the Accused Products,** including the portion of profit on sales of the Accused Products attributable to the inventions claimed in the Fujitsu Patent.

The testimony falls squarely within a topic for which Mr. Busse was designated and there was no objection on the grounds that the questions were outside the scope of the designation. Accordingly, Defendants' FRE 602 and lack of foundation objections fail.

Defendants also object on the ground that Fujitsu's designation is incomplete, and propose a counter-designation (218:10-18) from a deposition that took place nearly *two months later*. Fujitsu objects to this counter-designation. Notably, that deposition was limited to the issue of NETGEAR's reliance on opinions of counsel and in Defendants' proposed counter-designation Mr. Busse testifies that NETGEAR believed that the patent was invalid. This, of course, is a separate issue and goes beyond the scope of Fujitsu's designation. To the extent NETGEAR seeks to elicit such testimony, it should be required to do so by calling Mr. Busse as a witness. The counter-designations therefore should not be allowed.

**115:12-115:16; 115:25-116:10; 116:15-116:20; 116:22-116:24.** Mr. Busse testified that it is "common sense" that at least some people purchased and used NETGEAR's wireless cards and routers together. Defendants object to Fujitsu's designation on the grounds that it lacks foundation and violates FRE 602 and FRE 401-403.

This testimony is relevant because it goes to the issue of underlying direct infringement—an issue that Defendants emphasized in their trial brief. *See* Dkt. No. 386 at 13 ("Fujitsu Will Be Unable To Prove Direct Infringement of Its System Claims"). Given that Defendants appear to be disputing underlying direct infringement, the testimony is clearly relevant and is more probative than prejudicial. Defendants' FRE 602 and lack of foundation objections lack merit. There were no objections on the grounds that the questions went beyond the scope of the Rule 30(b)(6) notice. Furthermore, Mr. Busse is NETGEAR's Director of Intellectual Property. The notion that he has no personal knowledge or foundation to testify about how NETGEAR's products are used is simply not credible.

3

**120:7-120:13; 120:15-120:19.** Mr. Busse also testified about whether NETGEAR's ability to sell wireless cards and wireless adapters as a solution aided in the sales of those products. Defendants object to Fujitsu's designation on the grounds that it lacks foundation and violates FRE 602 and FRE 401-403. Like the designation above, Mr. Busse's testimony falls squarely within Topic 19, which covers the value of the claimed inventions in promoting sales of the accused products. As such, the FRE 602 and lack of foundation objections fail. The FRE 401-403 objections also fail because the testimony goes to the issue of active inducement and is circumstantial evidence of underlying direct infringement.

**140:5-141:1; 141:4-141:8.** Mr. Busse testified that after NETGEAR received Fujitsu's November 26, 2002 pre-suit letter (PTX300), NETGEAR understood that it was Fujitsu's position that NETGEAR's routers and access points are relevant to the '769 patent. Defendants object on the following grounds: FRE 401-403, FRE 602, lack of foundation and FRE 408. The testimony should come into evidence.

First, the relevant portion of the document being discussed is part of the admissibility stipulation, so Defendants have waived any objections to the document itself. The FRE 408 objection should not stand because this letter (and Mr. Busse's testimony) is being offered to show notice of the patent. The FRE 602 and lack of foundation objections lack merit because Mr. Busse was designated as a Rule 30(b)(6) witness to testify on the topic of "Defendant's knowledge prior to September 3, 2010 of the Fujitsu Patent." This testimony falls within the topic and is relevant because it goes to the issue of specific intent.

**127:22-128:1 -** This testimony is addressed in Section II below.

### 2.     David Henry Designations

David Henry was NETGEAR's Rule 30(b)(6) witness on marketing issues. NETGEAR objects to a substantial portion of the deposition testimony that Fujitsu has designated on the grounds of completeness and relevance. Defendants' objections are unfounded.

**35:9-35:14, 35:24-36:3.** Defendants object to the designation of Mr. Henry's testimony that Internet Service Providers (*e.g.*, Comcast) provide NETGEAR cards and routers to customers. This testimony is relevant because it is circumstantial evidence of direct

4

1  infringement by end users—an issue that Defendants dispute.  Defendants' objections to lack
2  of personal knowledge and lack of foundation for this testimony are also unfounded.  The
3  testimony relates to the topics for which Mr. Henry was designated as a Rule 30(b)(6)
4  witness.  Moreover, it is apparent from the transcript that he had personal knowledge on this
5  topic.

6      **78:22-78:24, 79:1-79:6.**  Defendants object to Mr. Henry's testimony regarding
7  whether NETGEAR "encourages" its customers to buy routers and cards and to use them
8  together on the grounds that it violates FRE 401-403.  Of course, the issue of inducement (and
9  specific intent) is central in this case.  The jury is entitled to hear testimony from NETGEAR's
10 Vice President of Product Management about NETGEAR's marketing practices.

11     **94:3-94:16, 95:9-95:12, 95:14.**  Defendants also object to Mr. Henry's testimony
12 about an internal NETGEAR document discussing the "interoperability" of NETGEAR's
13 products (*i.e.*, the ability of NETGEAR's products to be used interchangeably with other
14 NETGEAR products and the products of other companies).  Defendants object to this
15 testimony under FRE 401-403.  These objections are unfounded.  The document about which
16 Mr. Henry is testifying is covered by the admissibility stipulation *and* it appears on
17 Defendants' own exhibit list.  The testimony and the document are relevant to Fujitsu's claim
18 of induced infringement; it goes to encouragement and direct infringement by end users, both
19 of which Defendants' dispute.  To the extent, NETGEAR would like to elicit additional
20 testimony  from Mr. Henry, they may do so when he takes the stand.

21     **119:9-119:14.**  Defendants seek to exclude Mr. Henry's testimony about an internal
22 NETGEAR document—which the parties have stipulated is admissible for all purposes—
23 discussing sales forecasts and the ratio between sales of cards and external devices on the
24 grounds of relevance and hearsay.  NETGEAR's sales are indisputably relevant to the case and
25 document is admissible by agreement of the parties (even if it were not, it would be an
26 admission by NETGEAR).  Additionally, Defendants' best evidence objection is also
27 unfounded.

28     **141:24-142:13; 142:16-142:20.**  Defendants object to Mr. Henry's testimony

5

describing NETGEAR's strategy for persuading consumers to purchase wireless adapters and routers to be used together. Mr. Henry explained that NETGEAR used "Stronger Messages" in their product packaging, their website, and their training materials because "when selling a router, we want to be more direct with them that they should get an adapter." Defendants object to this testimony on the grounds of FRE 401-403 and FRE 602, each of which are baseless. This testimony is indisputably relevant and goes to inducement issues. The document being discussed is admissible for all purposes by agreement of the parties and would be considered an admission by NETGEAR in any event.

**157:9-157:12.** Defendants object to a question and answer asking Mr. Henry to confirm that NETGEAR markets cards, routers, and other devices under its "RangeMax" brand. As at least one of the selected products at issue in this case is marketed under this brand and this foundational testimony will assist the jury in understanding the products at issue. Accordingly, Defendants' objections should be rejected.

### 3.  Gordon Mattingly Designations

**104:10-104:13, 131:12-131:20, 131:22-131:23.** NETGEAR objects under FRE 401-403 and 701 to testimony from Mr. Mattingly related to NETGEAR's outsourcing of manufacturing operations. This testimony is indisputably relevant *Georgia-Pacific* factor 13 (the portion of realizable profit attributable to the invention versus non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer). NETGEAR's reliance on outsourced manufacturing is therefore probative to the reasonable royalty. Moreover, NETGEAR does not contend that the testimony is inaccurate, incomplete, or misleading.

As to NETGEAR's objection under FRE 701, Mr. Mattingly testified that he is NETGEAR's Vice President of Financial Planning and Analysis. Accordingly, he is qualified to give this type of testimony concerning NETGEAR's business model based on his own experience and perception.

### 4.  Peter Newton Designations

**62:1-62:9.** NETGEAR objects to testimony relating to an internal NETGEAR product

6

RESPONSE TO OBJECTIONS TO FUJITSU'S DEPOSITION DESIGNATIONS
AND FUJITSU'S OBJECTIONS TO COUNTER-DESIGNATIONS                CASE NO. 10-CV-03972-LHK (PSG)

planning document that is relevant to damages issues in this case, including NETGEAR's expectations regarding accused products. The document about which Mr. Newton was testifying is included in the parties' stipulation and, therefore, has been stipulated to be admissible without restriction. NETGEAR objects on a variety of grounds, including FRE 401, 402, 403, 602, 802 and lack of foundation. Particularly in light of the stipulation and the fact that Mr. Newton testified at length about this document, each of these objections (which apply to only a small portion of Mr. Newton's testimony about this document) lack merit.

**42:14-42:18, 43:4-43:5 and 43:20-44:5.** This testimony is addressed in Section II below.

### B.    D-Link's Objections and Counter-Designations

Fujitsu responds below to the objections that it understands D-Link intends to stand on.

#### 1.    Chia-Yu Chang Designations

**105:7-105:12; 105:14-105:20; 106:3-106:5; 106:22-106:25; 107:2-107:8; 107:10, 107:12-107:16, 107:21-107:22; 107:24-107:25 and Counter-Designations (104:18-105:6).** D-Link has asserted objections seeking to exclude 30(b)(6) testimony regarding D-Link Corporation's lack of reliance on opinions of counsel. *See* Chang Dep. Tr. at 105:7 – 107:25. *The Court already expressly ruled that this testimony should be admitted*, when it denied D-Link's motion *in limine* #4 on this very issue. *See* Dkt. No. 365 at 5; *see* Nov. 1 Tr. at 94:1-2 ("Chai-Yu Chang's testimony was within the scope of topic 20."). Accordingly, D-Link's objections – that the testimony is outside the scope of 30(b)(6), is not based on personal knowledge (FRE 602), and lacks foundation – should be rejected. D-Link also objects that the testimony is "incomplete." But this objection is also meritless, because Fujitsu's designation does not omit any portions of questions or answers.

Fujitsu also objects to part of D-Link's counter-designations to this testimony, specifically at 104:18-105:6, because it consists entirely of attorney discussion, not testimony.

### C.    Belkin's Objections

Fujitsu responds below to the objections that it understands Belkin intends to stand

7

on.

### 1.     Steven Lin Designations

**255:8-24.**  This 30(b)(6) testimony relates to alternative designs that Belkin considered as non-infringing alternatives to the '769 patent.  Belkin's sole objection is that it "calls for legal conclusion."  As an initial matter, this objection is waived, because it is a form objection that was not asserted during the deposition.  Moreover, the questions do not seek a legal conclusion; they seek factual information about whether Belkin considered alternative designs to the '769 patent.

**258:24 – 259:13:**  This 30(b)(6) testimony relates to whether Belkin obtained opinions of counsel on the issues of non-infringement and enforceability.  Belkin's relevance and FRE 403 objections are plainly meritless, as Belkin is asserting opinion-of-counsel defenses, and Fujitsu is entitled to explore the scope of counsel's opinions.  Belkin's "Not Evidence" and "Foundation" objections are also meritless.  Presumably, Belkin is objecting because counsel – rather than the witness – answered the questions.  But this was counsel's own choice; he precluded an answer by providing it himself.  Fujitsu is entitled to present that answer:

> MR. WYDE: Let me stop you. I think I can just answer, no, Belkin did not get advice of counsel on non-infringement.
>
> MR. FOWLER: Fair enough. Fair enough.
>
> MR. WYDE: Just short circuits everything, if that is okay.
>
> MR. FOWLER: Same question for invalidity and enforceability.
>
> MR. WYDE: Belkin did not seek -- again, get an opinion on enforceability.

**442:1-10.**  This 30(b)(6) testimony establishes that the corporate entities Belkin, Inc. and Belkin International, Inc. can be treated as one for purposes of this litigation.  Belkin objects on grounds of "relevance."  Unlike D-Link Systems and D-Link Corporation, Belkin has not raised defenses based on any corporate distinctions between the two companies.  If

8

Belkin is willing to stipulate that it is raising no such defenses and will not challenge that they are effectively a single company for purposes of this case, then we need not burden the jury with this issue. But if Belkin will not so stipulate, then this testimony is relevant to Fujitsu's burden to prove liability as to both companies.

### 2. Alexander Mack Designations

**172:17-173:5, 184:11-185:6.** Belkin objects under FRE 403 to testimony from Mr. Mack related to Belkin's limited role in the design and manufacture of the accused products. This testimony is indisputably relevant *Georgia-Pacific* factor 13 (the portion of realizable profit attributable to the invention versus non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer). Belkin's role as a reseller (who does not design or manufacture the accused products) is therefore probative to the reasonable royalty. Moreover, Belkin does not contend that the testimony is inaccurate, incomplete, or misleading.

**29:5-29:11 --** This testimony is addressed in Section II below.

## II. DEFENDANTS' OBJECTIONS TO SPOLIATION EVIDENCE CREATE A DOUBLE STANDARD

Through their objections, Defendants seek to impose a double standard with respect to evidence that may be introduced at trial regarding allegations of spoliation of evidence. Defendants assert objections to designations of testimony by Defendants' employees relating to document preservation and spoliation issues, including the following testimony: Peter Newton Transcript at 42:14-42:18, 43:4-43:5 and 43:20-44:5; Alexander Mack Transcript at 29:5-29:11; Brian Busse Transcript at 127:22-128:1.

At the same time Defendants object to this testimony, they seek to question Fujitsu witnesses about the same topics. Indeed, Defendants' deposition designations of Fujitsu witnesses include numerous lengthy exchanges about spoliation issues—similar types of questions that Defendants seek to exclude when directed at their own witnesses. Of course, such a double-standard is inappropriate and unjustified. Fujitsu requests that the Court either reconsider its prior decision to deny Fujitsu's motion to exclude such evidence from the

9

case (because Defendants have not complied with any of the procedural requirements for seeking a spoliation instruction, nor can they meet the high burden for doing so) or allow both sides to question the other sides' witnesses on these topics.

### III. DEFENDANTS' OBJECTIONS TO EXHIBITS REFERRED TO IN THE DESIGNATIONS ARE INCONSISTENT WITH THE PARTIES' JOINT STIPULATION

Defendants initially asserted a variety of evidentiary objections to 10 exhibits that are referred to in Fujitsu's deposition designations, all of which were included in the stipulation that the Court already has entered and, therefore, may be admitted into evidence "without restriction." (Dkt. No. 423)  During the meet and confer process late last night, it became unclear precisely which exhibits Defendants continue to object to, but it appears that the objections are now limited to PTX70 and PTX300.

PTX70 is a product manual for an accused D-Link card that has been selected for this trial.  Given this, plus the fact that the parties already have stipulated to its admissibility, Defendants' objections to this exhibit on FRE 401 and 403 grounds lack merit.

Defendants' objection to PTX300 appears to be based on the fact that Fujitsu is using a redacted version that is intended to comply with the Court's order regarding pre-suit communications.  This issue was briefed more fully in the submissions that the parties submitted the previous morning in connection with exhibits to be used during the upcoming examination of Hitoshi Fuji.

DATED:  November 26, 2012               COVINGTON & BURLING LLP

By: */s/  Robert D. Fram*

Robert D. Fram (rfram@cov.com)
Thomas E. Garten (tgarten@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone:    415.591.6000
Facsimile:    415.591.6091

Philip A. Irwin (pirwin@cov.com)
COVINGTON & BURLING LLP
The New York Times Building

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

620 Eighth Avenue
New York, NY 10018-1405
Telephone:     212.841.1000
Facsimile:     212.841.1010

Gary M. Rubman (grubman@cov.com)
R. Jason Fowler (jfowler@cov.com)
William E. Zapf (wzapf@cov.com)
Brianne Bharkhda (bbharkhda@cov.com)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:     202.662.6000
Facsimile:     202.662.6291

Attorneys for Plaintiff
FUJITSU LIMITED

11

RESPONSE TO OBJECTIONS TO FUJITSU'S DEPOSITION DESIGNATIONS
AND FUJITSU'S OBJECTIONS TO COUNTER-DESIGNATIONS                    CASE NO. 10-CV-03972-LHK (PSG)