# Corrected Exhibit F

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 1

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE NORTHERN DISTRICT OF CALIFORNIA
3                 SAN JOSE DIVISION
4
5   _____
6   FUJITSU LIMTED,                        )
7             Plaintiff,                   )
8        vs.                               )   Case No.
9   BELKIN INTERNATIONAL, INC.;            )   10-cv-03972-LHK(PSG)
10  et al.,                                )
11            Defendants.                  )
12  _____)
13  AND RELATED COUNTERCLAIMS              )
    _____
14
15     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16     VIDEOTAPED 30(b)(6) DEPOSITION OF ALEXANDER MACK
17              Los Angeles, California
18            Wednesday, February 15, 2012
19                     Volume I
20
21
22  Reported by:
23  GAIL E. KENNAMER
24  CSR No. 4583, CCRR
25

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 2

```
 1        IN THE UNITED STATES DISTRICT COURT
 2       FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5   _____
 6   FUJITSU LIMTED,                        )
 7              Plaintiff,                  )
 8         vs.                              )  Case No.
 9   BELKIN INTERNATIONAL, INC.;            )  10-cv-03972-LHK(PSG)
10   et al.,                                )
11              Defendants.                 )
12   _____)
13   AND RELATED COUNTERCLAIMS              )
     _____
14
15
16
17       Videotaped 30(b)(6) Deposition of ALEXANDER
18   MACK, Volume I, taken on behalf of Plaintiff at
19   707 Wilshire Boulevard, Suite 4750, Los Angeles,
20   California, beginning at 9:00 a.m. and ending
21   at 6:12 p.m. on Wednesday, February 15, 2012,
22   before GAIL E. KENNAMER, Certified Shorthand
23   Reporter No. 4583, CCRR.
24
25
```

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 3

1  APPEARANCES:

2

3  For Plaintiff:

4

5      COVINGTON & BURLING, LLP
6      BY: WILLIAM E. ZAPF, ESQ.
7      and R. JASON FOWLER, ESQ.
8      1201 Pennsylvania Avenue NW
9      Washington, DC 20004-2401
10     202.662.5046
11     wzapf@cov.com
12     jfowler@cov.com

13

14

15     For Defendant BELKIN INTERNATIONAL, INC.; and
16     BELKIN INC.:

17

18     WINSTON & STRAWN, LLP
19     BY: MICHAEL J. FORBES, ESQ.
20     1111 Louisiana Street, 25th Floor
21     Houston, Texas 77022-5242
22     713.651.2643
23     mforbes@winston.com

24

25  Also Present: JOANN YAGER, Videographer - Veritext

1   this -- this case.  Yes.
2        When we have a -- We have an attorney that would
3   send out litigation hold notices when there is pending
4   litigation for a lawsuit.
5        Q   So you received the litigation hold notice for
6   this case?
7        A   I believe I did.
8        Q   Do you recall when you received that notice?
9        A   I don't recall exactly.
10       Q   Was it in 2011?
11       A   I believe it would have been 2010.
12       Q   Was it in the latter part of the year in 2010?
13       A   I don't recall exactly.
14       Q   So you didn't receive a litigation hold notice
15  pertaining to Fujitsu prior to 2010?
16       A   I don't -- I don't recall.  I don't know if I
17  received one.
18       What I do know is that when there has been
19  litigation, there is a policy we send out litigation
20  hold notices.
21       Q   The policy --
22       A   So I may or may not have received one.
23       Q   Sorry.  I didn't mean to interrupt.  Feel
24  free.
25       Are you finished?

Page 172

1  And if you'd look on page 58, toward the bottom,
2  beginning at line 24.
3      A   (Indicating.)
4      Q   And without getting into -- I'm going to try
5  to stick to the facts here as much as possible -- so
6  this is a legal defense, some legal discussion; but it
7  does say in the second sentence in that paragraph,
8  "Facts supporting this defense include but are not
9  limited to Belkin's substantial investment in its
10 products during the relevant timeframes after issuance
11 of the '091 patent but prior to the issuance of the
12 asserted claims in this action."
13     Now, first, it's correct that Belkin did not
14 manufacture card-interface devices that are accused in
15 this case prior to July 11, 2000; correct?
16     A   That's my understanding, yes.
17     Q   And has Belkin ever manufactured
18 card-interface devices?
19     A   Not to my knowledge.
20     Q   And is it also correct that Belkin did not
21 manufacture some of the other accused products in this
22 case, namely, routers and access points and gateways
23 prior to July 11th, 2000?
24     A   Correct.  We didn't actually do the
25 manufacture of the part itself.

Page 173

1  Q   And has Belkin ever manufactured any of those
2  other accused products?
3  A   To my knowledge, in general, we -- we don't
4  manufacture the -- we haven't manufactured the accused
5  products, the actual part itself.
6  Q   There is some other part or aspect of the
7  accused products that Belkin manufactures?
8  A   There may be other aspects that we have put
9  time and investment into, such as, say, packaging,
10 packaging the product.  So that would be part of the
11 end product that we end up selling to the customer.
12 Q   And so did -- did Belkin make investments in
13 packaging for the accused products prior to July 11,
14 2000?
15 A   I don't have the -- I don't have information
16 prior to 2000; but, in general, Belkin would -- would
17 typically engage in designing things, such as packaging
18 for -- for the products we're purchasing for vendors.
19 Q   And how far in advance would Belkin begin
20 designing packaging for products that it will be
21 selling?
22 A   Oh, that would vary.  I couldn't say for sure.
23 Q   And -- and what -- Can you describe what the
24 investments are that go into packaging for products?
25 A   In general, time and materials.

1    To the extent it's privileged, I think it's been
2    waived.  I mean, he's -- he's made a statement about --
3    in support of this defense here, that the -- that one
4    of the Fujitsu inventors is not available; so I'm just
5    asking him how he knows that.
6           MR. FORBES:  That's fine.  You can answer --
7    you can answer that, but don't reveal the substance of
8    any conversation you may have had with counsel.
9           THE WITNESS:  In consultation with counsel.
10    BY MR. ZAPF:
11       Q   It states here in terms of designing,
12    developing, and marketing and selling the accused
13    products.  Does -- Does Belkin actually design the
14    products themselves that are accused in this case?
15       A   Generally no.
16       Q   And did they actually develop -- you know,
17    develop the actual products themselves?
18       A   They may be involved in development efforts
19    with vendors.
20       Q   What aspect -- What aspect of development
21    is -- is Belkin involved with as far as, for instance,
22    a wireless router?
23       A   I'm not -- I'm not familiar to what extent
24    they would be involved in those particular products,
25    other than working with vendors to bring a product to

Page 185

1  market.
2  Q  But in terms of actually developing a router
3  that works, that -- that type of development --
4  technical development work is performed by the vendor;
5  correct?
6  A  Generally by the vendor, correct.
7  Q  Do you know how much money annually Belkin
8  invests in marketing its products?
9  A  In general, Belkin doesn't do a lot of
10  marketing.  I wouldn't know the number offhand.
11  Historically, we haven't done -- really marketing as
12  one would generally consider marketing.
13  Q  So what is referred to here with "Substantial
14  time, money, and resources to market the accused
15  products"?
16  A  So when -- The use of that term, it would be
17  directed towards bringing a product to market.  So that
18  would be -- that would include -- that would include
19  efforts to ensure that the product from the vendor is
20  marketable to our customers in a certain way with
21  certain packaging and so forth.
22  Q  And this is -- This is specifically referring
23  to -- I'm switching back again to information that may
24  have been lost between November 2003 and the filing of
25  suit in September 2010.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 263

1        CERTIFICATE OF REPORTER

2        I, the undersigned, a Certified Shorthand

3   Reporter of the State of California, do hereby,

4   certify:

5        That the foregoing proceedings were taken

6   before me at the time and place therein set forth;

7   that any witnesses in the foregoing proceedings,

8   prior to testifying, were placed under oath; that a

9   verbatim record of the proceedings was made by me

10  using machine shorthand which was thereafter

11  transcribed under my direction; further that the

12  foregoing is an accurate transcription thereof.

13       I further certify that I am neither financially

14  interested in the action nor a relative or employee

15  of any attorney or any of the parties.

16       IN WITNESS WHEREOF, I have this date subscribed

17  my name.

18  Dated:  February 20, 2012

19

20  _____

21        GAIL E. KENNAMER, CSR 4583, CCRR