Duncan Palmatier (SBN 116692)
Email: dpalm@dpalmlaw.com
S. J. Christine Yang (SBN 102048)
Email: cyang@sjclawpc.com
Victoria Hao (Admitted Pro Hac Vice)
Email: vhao@sjclawpc.com
Martha J. Hopkins (Admitted Pro Hac Vice)
Email: mhopkins@sjclawpc.com
LAW OFFICES OF S.J. CHRISTINE YANG
17220 Newhope Street, Suites 101 and 102
Fountain Valley, CA 92708
Telephone: (714) 641–4022
Facsimile: (714) 641–2082

Lawyers for Defendant
       D-LINK CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FUJITSU LIMITED,<br><br>                Plaintiff,<br><br>      vs.<br><br>BELKIN INTERNATIONAL, INC., BELKIN, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ZYXEL COMMUNICATIONS CORPORATION, and ZYXEL COMMUNICATIONS, INC.,<br><br>                Defendants. | Case No. 10-cv-03972-LHK<br><br>**DEFENDANT D-LINK CORP.'S OBJECTIONS TO FUJITSU'S DISCLOSURE OF EXHIBITS PTX 128, PTX 302 AND DTX 833, AND TO THE TESTIMONY OF FUJITSU'S DAMAGES EXPERT, PAUL K. MEYER, RE SAME, TO BE USED AT TRIAL ON DECEMBER 3, 2012**<br><br>Honorable Lucy H. Koh |

Pursuant to Rule 26(a)(2)(B) of the Federal Rule of Civil Procedure ("Rule"), Federal Rule of Evidence ("FRE") 403 and FRE 702(b), Defendant D-Link Corporation ("D-Link Corp.") objects to Fujitsu's designated exhibits PTX 128, PTX 302, and DTX 833, to the extent they are relied upon by Fujitsu's damages expert, Mr. Paul Meyer, to impute to D-Link Corp. the sales of Defendant D-Link Systems. D-Link Corp. objects to any reliance by Mr. Meyer on PTX 128, PTX 302 or DTX 833 to support an opinion that these sales of D-Link Systems may also be attributed to and a basis for awarding damages against D-Link Corp., on the grounds that such opinions are outside scope of his reports and are unreliable under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

### Mr. Meyer's Conclusion in PTX302 Is Formed By Improper Analysis of PTX128

Mr. Meyer's opinions as to damages that should be awarded against "D-Link", reflected in PTX302, were based solely on PTX128, the sales data of D-Link Systems, and on his assumption that all sales of D-Link Systems may be attributed D-Link Corp.

### Mr. Meyer Has Not Provided Opinions Based on DTX833

Fujitsu would have its expert, Mr. Meyer, sponsor trial exhibit **DTX833**, which is D-Link Corp.'s sales data for the 8 accused models. However, in violation of FRCP 26(a)(2)(b), Mr. Meyer never analyzed D-Link Corp.'s sales data, either in DTX 833 or any other document supplied to Fujitsu, in his reports. Mr. Meyer cannot analyze or opine on D-Link Corp.'s sales data for the first during trial, as such testimony would be beyond scope of his reports.

First, D-Link Corp. did not supply all the accused products sold by D-Link Systems and included in Mr. Meyer's damages calculation against both D-Link Systems and D-Link Corp., which he lumps together as "D-Link".[1] In so doing, Mr. Meyer imposes damages against D-Link Corp. for sales it never made. Second, D-Link Corp.'s sales to D-Link Systems were at a much lower price than D-Link Systems' sales to third parties. Applying a royalty rate based on D-Link Systems' sales would result in a much higher effective royalty rate against D-Link Corp., since D-Link Corp.'s royalty base for the products would be substantially lower.[2]

---

[1] D-Link Corp. assumes that Fujitsu does not seek to obtain an impermissible double recovery of a royalty on an accused product from both D-Link Systems and D-Link Corp.

[2] To illustrate: If Mr. Meyer's 5% royalty were applied to a D-Link Systems' one dollar sale, the

From its entry into this case, D-Link Corp. has advised Fujitsu and the Court that it stopped selling products into the United States as of the end of May 2006.  *See* November 5, 2010 Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 53-1), at 4:14-15 (and Dkt. # 53-3, ¶ 8).  This fact is not in dispute.  But, D-Link Systems continued to buy the accused products from other suppliers and re-sell them during the liability period, from September 3, 2004 through April 30, 2012.  Thus, D-Link Corp.'s sales of accused products during the liability period is different from those of D-Link Systems.

Moreover, it also is undisputed that D-Link Corp. is a different entity from D-Link Systems, Inc.  D-Link Corp. provided its sales data and Fujitsu or Mr. Meyer could have provided a damage analysis based on D-Link Corp.'s sales, but they chose not to do so.  Instead, they chose to rely solely on D-Link Systems' sales and simply impute them to D-Link Corp. without an explanation or a factual basis or even a legal theory for doing so.

Thus, in his latest, supplemental damage report of November 19, 2012, Mr. Meyer states:

> 7. I understand that Fujitsu and the Defendants have stipulated to the revenues of the Selected Card Interface Devices and Selected Kit for the period September 2004 through March 2012.[7]  Based on the stipulated revenues, I have calculated royalty damages for the Selected Card Interface Devices and Selected Kit using the methodology outlined in my Initial Report.[8]  The royalty damages for Belkin's Selected Card Interface Devices

Fujitsu and D-Link Systems stipulated to *D-Link Systems'* revenues, but Fujitsu would not stipulate to D-Link Corp.'s different revenues.  *See*   Efforts to stipulate to D-Link Corp.'s sales were refused by Fujitsu, because it would not acknowledge D-Link Corp.'s different sales numbers and insisted that D-Link Corp. accept responsibility for all the sales of D-Link Systems, even though D-Link Corp. did not supply a substantial portion of those accused products and D-Link Systems' sales prices and revenues were substantially higher than those earned by D-Link Corp. for sales of accused products it did supply.  *See* November 16, 2012 Revised Stipulation Regarding Sales (Docket No.

---

royalty would be a nickel; but, if D-Link Corp. sold that product to D-link Systems for fifty cents, the effective royalty rate applied to D-Link Corp. would be doubled, to a dime.

373), at 1:5-7. Thus, Mr. Meyer offered his updated opinions based *solely* on D-Link Systems' stipulated sales data in his updated report. There was **no** analysis based on D-Link Corp.'s sales.

Similarly, in his earlier report, Mr. Meyer did not offer an analysis based on D-Link Corp.'s sales records, but instead relied only on D-Link Systems' sales.

Over six months ago, Mr. Meyer's failure to analyze D-Link Corp.'s sales data was noted by D-Link Corp.'s damages expert Dr. Russell Mangum[3]:

> In his expert report, Mr. Meyer does not appear to make any claims for damages owed by D-Link Corp. or ZyXEL Taiwan. That is, all of Mr. Meyer's damages calculations involve data which reflect only sales and products sold by D-Link Systems and ZyXEL US made between September 3, 2004 and 2011.

Now, having arrived at trial without any analysis of damages that could be attributed to D-Link Corp., D-Link Corp. objects to any attempt by Fujitsu to have Mr. Meyer offer an analysis or opinion based on D-Link Corp.'s sales data in DTX833. Such previously-undisclosed expert opinions, if allowed, would seriously prejudice D-Link Corp. Thus, Mr. Meyer should not be permitted at trial to make reference to or draw opinions from DTX833.

If either PTX 302 or PTX 128 is permitted, D-Link Corp. seeks a limiting instruction that they reflect only D-Link Systems' sales and cannot be used to calculate damages against D-Link Corp.

Date: December 2, 2012

Duncan Palmatier (SBN 116692)
Email: dpalm@dpalmlaw.com

LAW OFFICES OF S.J. CHRISTINE YANG
17220 Newhope Street, Suites 101 and 102
Fountain Valley, CA 92708
Telephone: (714) 641–4022
Facsimile: (714) 641–2082
Attorneys for Defendant D-LINK CORPORATION

---

[3] *See* May 29, 2012 Expert Report of Russell W. Mangum III Regarding Damages, at 16, lines 4-6.