1   David Enzminger (SBN: 137065)
       Email: denzminger@winston.com
2   David S. Bloch (SBN: 184530)
       Email: dbloch@winston.com
3   WINSTON & STRAWN LLP
    333 S. Grand Avenue
4   Los Angeles, CA 90071–1543
    Telephone:     (213) 615–1700
5   Facsimile:     (213) 615–1750

6   Joshua Wyde (*Pro Hac Vice*)
       Email: jwyde@winston.com
7   Michael J. Forbes (*Pro Hac Vice*)
       Email: mforbes@winston.com
8   WINSTON & STRAWN LLP
    1111 Louisiana St. 25th Floor
9   Houston, TX  77002–5242
    Telephone:     (713) 651–2600
10  Facsimile:     (713) 651–2700

11  Attorneys for Defendants
    BELKIN INTERNATIONAL INC. AND BELKIN, INC.

12  [COUNSEL FOR OTHER DEFENDANTS LISTED ON SIGNATURE PAGE]

13  **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**
14  **SAN JOSE DIVISION**

15

16  FUJITSU LIMITED,                          Case No. 5:10–cv–03972–LHK (PSG)

17          Plaintiff,                        **DEFENDANTS' OPPOSITION TO**
                                              **FUJITSU'S MOTION TO STRIKE**
    vs.                                       **SUPPLEMENTAL EXPERT REPORTS OF**
18                                            **DRS. MANGUM AND LEONARD [DKT. NO.**
                                              **449]**
19  BELKIN INTERNATIONAL, INC., BELKIN,
    INC., D-LINK CORPORATION, D-LINK
    SYSTEMS, INC., NETGEAR, INC., ZYXEL       The Honorable Lucy H. Koh
20  COMMUNICATIONS CORPORATION, and
    ZYXEL COMMUNICATIONS, INC.
21
            Defendants.
22

23  AND RELATED COUNTERCLAIMS.

24

25

26

27

28

Defendants' Opp. to MTS re: Mangum and Leonard                Case No. 10–cv–03972–LHK (PSG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

On November 15, the Court ordered Fujitsu's expert, Mr. Meyer, "to supplement his report by excluding damages based on Defendants' sales of their external devices used with third party cards." Dkt. No. 369 at 14. Mr. Meyer tendered a supplemental report, but his calculations treated all of the Defendants as a single entity, and also made erroneous assumptions concerning the hypothetical negotiation contemplated by *Georgia-Pacific*. The Court also allowed Defendants to submit rebuttal reports. "The proper scope and function of rebuttal is … refutation, which involves evidence which denies, explains, qualifies, disproves, repels, or otherwise sheds light on evidence offered by" the opposing party. *United States v. Webb*, 115 F.3d 711 (9th Cir. 1997), quoting 1 Michael H. Graham, *Handbook of Federal Evidence* § 611.3. Thus, in response, Drs. Mangum and Leonard pointed out that Mr. Meyer had failed to account for the fact that each Defendant must be accounted for separately, and Dr. Mangum further observed that existing evidence undermines Mr. Meyer's renewed opinions regarding the hypothetical negotiation. Fujitsu now seeks to exclude these supplemental opinions on the ground that they exceed the scope of Mr. Meyer's report. Dkt. No. 449. Fujitsu is wrong.

## 1. Each Defendant must be treated separately

In Mr. Meyer's supplemental report, he "calculated the percentage of Defendants' market share of NICs compared to non-Defendants market share." Dkt. No. 449-2 Ex. 5 (Meyer Supplemental Report) ¶ 10. In response, Dr. Leonard noted that "Mr. Meyer has essentially adopted the approach that I outlined in my original report to apportion a defendant's external device sales to account for defendants' market share." Dkt. No. 449-2 Ex. 1 (Leonard Supplemental Report) ¶ 9. However--as noted in Dr. Leonard's original report--Mr. Meyer still failed to account for the fact that "the accused external devices can also be used with non-accused wired connections." *Id*. ¶ 8. Also, Mr. Meyer's supplemental report used a flawed definition of "third party cards." Though they have been sued together and are cooperating in the defense of Fujitsu's claims, NETGEAR, Belkin, and D-Link are not joint venturers. They are direct competitors selling different products [*see* Trial Tr. at 553:22-554:8]; and had this case been filed in 2011, the Defendants would have been severed for misjoinder under 35 U.S.C. § 299. So as to each individual Defendant, *all products not made by*

-1-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*that Defendant are "third party cards."* To correct for Mr. Meyer's error, Dr. Leonard thus performed an additional calculation to account for the possibility that "the jury may find that a given defendant induced infringement only in situations where one of its external devices was used with one of its own cards." *Id.* ¶ 9. "In that case, instead of apportioning external device sales using the defendants' combined market share, the appropriate apportionment for each defendant would be based on that defendant's own market share only." *Id.*

Dr. Mangum reached the same conclusions. He described his assignment as to "1) review the supplemental report and supplemental opinions provided by Mr. Meyer, and, witin the context of available evidence, 2) comment on the supplemental report and opinions of Mr. Meyer; and 3) form my own opinions regarding the proper amount of potential damages in this matter." Dkt. No. 449-2 Ex. 2 (Mangum Supplemental Report) § I. He concluded that "Mr. Meyer's adjusted apportionment still fails to identify and set aside use of external devices in non-infringing ways," "he inappropriately retains … the portion of market shares of the remaining defendants reflecting products that are no longer accused products in this case," and he "has not provided opinions on apportionment or damages related to D-Link Corp., the sales of which are not the same as D-Link Systems." *Id.* ¶ III. In addition, he explained that "Mr. Meyer has attempted to correct for one flaw--his inclusion of devices sold by non-Defendant third parties," but "even his attempted correction falls short." *Id.* ¶ VII.B. He criticizes both the dataset used by Mr. Meyer and that Meyer "inconsistently and incorrectly retains the non-infringing products of the remaining defendants in his calculation of market share for the purpose of adjusting the external devices royalty base." *Id.* Further, "there has not been a determination or stipulation that D-Link Systems or D-Link Corp. induced infringement by customers in using a D-Link router or access point with an infringing card interface device by Belkin or NETGEAR." For that reason, Dr. Mangum concludes that "Mr. Meyer's current calculation of damages is not correct or applicable if D-Link Systems is not found to have induced infringement by its customers to use a D-Link router or access point with an infringing card interface device by Belkin or NETGEAR." *Id.*

Indeed, a key contested issue in this case is whether each individual Defendant actually

-2-

Defendants' Opp. to MTS re: Mangum and Leonard                    Case No. 10–cv–03972–LHK (PSG)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

encouraged use of its external devices with the other Defendants' cards.  Fujitsu bears the burden of proving that each Defendant had "an affirmative intent to cause direct infringement."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).  Dr. Williams testified at trial that  "I would not expect a company to encourage the sale of another company's product."  11/30/12 Trial Transcript at 565:10-11.  His only evidence of inducement was the fact that each Defendant's external devices comply with the 802.11 wireless standard (*id*. at 556:22-267:9, 579:11-16) --which is insufficient as a matter of law.  *Broadcom Corp. v. ITC*, 542 F.3d 894, 898 (Fed. Cir. 2008) (practicing a standard does not suffice to support induced infringement unless the standard *requires* infringement).  He also acknowledged multiple examples of Defendants *discouraging* the use of each other's products.  Dr. Williams was unable to point to a single document where any Defendant encouraged the use of any other Defendant's product by name.  11/30/12 Trial Tr. at 559:13-561:8.

So the jury can and should find that each Defendant is not liable for inducing infringement by the use of another Defendant's cards.  This would mean that Fujitsu's royalty base per Defendant would need to be substantially reduced.  Mr. Meyer's supplemental report offers no guidance on this point, evidently preferring to present the jury with an all-or-nothing choice in the hope that Fujitsu will be able to recover damages for a substantial volume of noninfringing sales.

The calculations Fujitsu seek to strike simply account for the possibility that Defendants win this issue.  Both supplemental rebuttal opinions are well within the scope of Mr. Meyer's supplemental report and identify errors that can and should have been corrected when Mr. Meyer filed his supplemental report.  His failure to properly account for the fact that the Defendants are independent companies is a significant flaw that should be explained to the jury.

**2.     Dr. Mangum properly relied on additional publications to rebut opinions stated in Mr. Meyer's supplemental report**

Dr. Mangum also identified an additional flaw in Mr. Meyer's supplemental report.  Mr. Meyer described the position of the parties to a hypothetical *Georgia-Pacific* negotiation and opined that they would have tried to account for non-infringing external devices sold by non-Defendants by looking at certain "third-party market research reports."  *See* Meyer Supplemental Report ¶¶ 9-10, n.

-3-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10.  But Dr. Mangum observed that "[i]t is in fact impossible that the hypothetical negotiating parties would have relied on the documents Mr. Meyer identified in his supplemental report."  Mangum Supplemental Report § VII.B, at 8.  Specifically, he noted that the documents Mr. Meyer relied upon were from 2004 or later, several years after the hypothetical negotiation in July 2000. *Id.*  Dr. Mangum explained that at the time of the actual hypothetical negotiation in July 2000, the parties would have known that the market was quickly moving toward embedded wireless solutions, as opposed to the accused card interface devices.  In support of that rebuttal opinion, Dr. Mangum pointed to publicly available evidence from early 2000 confirming that "well prior to the hypothetical negotiation, embedded wireless technology was already taking hold in the market place." *Id.*, n. 26 and Exhibits 19-20.  Fujitsu cites no rule barring the use of additional documentary evidence in a rebuttal report, so long as the subject matter does not exceed the scope of the report to which the rebuttal responds.

Accordingly, both of the rebuttal opinions challenged by Fujitsu are well within the scope of Mr. Meyers's supplemental report.  The jury should be allowed to hear them.

Dated:  December 3, 2012                          Respectfully submitted,

                                                  /s/      *David S. Bloch*[1]
                                                  David Enzminger (SBN: 137065)
                                                  Email:  denzminger@winston.com
                                                  WINSTON & STRAWN LLP
                                                  333 S. Grand Avenue
                                                  Los Angeles, CA 90071–1543
                                                  Telephone:     (213) 615–1700
                                                  Facsimile:     (213) 615–1750

                                                  David S. Bloch (SBN: 184530)
                                                  Email: dbloch@winston.com
                                                  WINSTON & STRAWN LLP
                                                  101 California St.
                                                  San Francisco, CA 94111
                                                  Telephone: (415) 591-1000
                                                  Facsimile: (415) 591-1400

---

[1] In compliance with General Order 45.X.B, I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories hereto.

-4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Joshua Wyde (*Pro Hac Vice*)
Email: jwyde@winston.com
Michael J. Forbes (*Pro Hac Vice*)
Email:  mforbes@winston.com
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX  77002
Telephone:      (713) 651–2600
Facsimile:      (713) 651–2700

Attorneys for Defendants
BELKIN INTERNATIONAL INC. and
BELKIN, INC.

*/s/        John P. Bovich*
John P. Bovich (SBN 150688)
Email: jbovich@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Seth B. Herring (SBN 253907)
Email: sherring@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105–3659
Telephone:      (415) 543–8700
Facsimile:      (415) 391–8269

Attorneys for Defendant NETGEAR, INC.

*/s/        Duncan Palmatier*
Duncan Palmatier (SBN 116692)
Email: dpalm@dpalmlaw.com
S. J. Christine Yang (SBN 102048)
Email: cyang@sjclawpc.com
Victoria Hao (Admitted Pro Hac Vice)
Email: vhao@sjclawpc.com
LAW OFFICES OF S.J. CHRISTINE YANG
17220 Newhope Street, Suites 101 and 102
Fountain Valley, CA 92708
Telephone:      (714) 641–4022
Facsimile:      (714) 641–2082

Attorneys for Defendants D-LINK SYSTEMS, INC.
and D-LINK CORPORATION

-5-