1 | David Enzminger (SBN: 137065)
Email: denzminger@winston.com
2 | David S. Bloch (SBN: 184530)
Email: dbloch@winston.com
3 | WINSTON & STRAWN LLP
333 S. Grand Avenue
4 | Los Angeles, CA 90071–1543
Telephone:    (213) 615–1700
5 | Facsimile:    (213) 615–1750

6 | Attorneys for Defendants
BELKIN INTERNATIONAL INC.
7 | and BELKIN, INC.

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| FUJITSU LIMITED,<br><br>            Plaintiff,<br><br>       v.<br><br>BELKIN INTERNATIONAL, INC., BELKIN, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ZYXEL COMMUNICATIONS CORPORATION, and ZYXEL COMMUNICATIONS, INC.,<br><br>            Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 10–cv–03972–LHK (PSG)<br><br>**BELKIN'S BRIEF RE: FUJITSU'S OBJECTION TO THE USE OF FILE HISTORY DOCUMENTS IN THE EXAMINATION OF LAWRENCE KURLAND**<br><br>**Trial Date:**  November 26, 2012<br>**Time:**         9:00 a.m.<br>**Location:**    Courtroom 4, 5th Floor<br><br>Hon. Lucy H. Koh |

Fujitsu's objections to Belkin's use of Exhibit 283s (the FINAL office action in the first reexamination) seeks to prevent Belkin's opinion counsel from explaining the basis for his opinion that the '769 patent remained invalid after the PTO indicated its intent to allow some claims of the '769 patent after reexamination in 2009. Fujitsu further seeks to preclude Mr. Kurland from testifying about Exhibit 285d (the FINAL office action in the second reexamination in 2011) in order to further explain the basis for his opinion. Fujitsu cannot be heard to attack the reliability of Belkin's opinions of counsel without allowing Belkin the ability to explain the basis for those opinions. Fujitsu's objections should be overruled.

## I.   Belkin's Opinion Counsel Must Be Allowed To Explain the Basis for The Opinion That Fujitsu Attacks as Unreliable.

Fujitsu's claim of willful infringement requires proof, by clear and convincing evidence, that Belkin had no reasonable belief in the invalidity of the ''769 patent *after* the 2009 reexamination. Since Fujitsu itself was sufficiently convinced of the merits of Belkin's arguments to refrain from suit for more than six years while seeking that reexamination, Belkin's sales before the 2009 reexamination decision cannot be willful infringement as a matter of law. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 568 (E.D. Tex. 2007) (no finding of willfulness where patentee was concerned enough to ask for reexamination and delayed filing suit). Nor can Belkin's conduct after the second reexamination show willful infringement because (1) Belkin had no sales of the products and (2) the patent expired on April 30, 2012—during the pendency of that reexamination.

Thus, Fujitsu's entire willfulness claim hangs by the most invisible of threads—that

Belkin sold a tiny fraction (**0.5%** -- zero point five percent[1]) of the of accused cards and kits after the PTO indicated its intent to confirm some claims of the '769. Although the accused cards were already at the end-of-life in the product cycle, Belkin sought a further opinion of its counsel:

> Chris Flower testified:
>
> Q. At this point, around February 2009, did you renew your request for an opinion concerning the validity of the `769 patent?
>
> A. I did. I talked to Larry [Kurland]. I think at some point in 2009 I asked him to look further into the validity issues of the patent.
>
> Q. At this time -- and what did he say? What was his response?
>
> A. His response was, again, the PTO had erred and that he would look for other prior art that we could submit in another re-examination.[2]

Thus, the central question on whether the Belkin's sale of 0.5% of its accused products constituted willful infringement depends on the jury's determination of the reasonableness of Belkin's reliance on Mr. Kurland's opinion.

From the opening statement to the present, Fujitsu has attempted to malign Mr. Kurland's opinions:

> **Belkin's story is also evidence you should follow**. Belkin hired an attorney and you'll hear about him. He's an experience patent, former patent examiner. He knew the ropes at the Patent Office, no doubt about it.
>
> And in 2009 -- you remember that timeline, Fujitsu had its first certificate in 2009--when the clock is ticking, the clock is ticking, Fujitsu is about to get its certificate, all that prior art the defendants gave them, it's about to be evaluated and people know that the Patent Office is going to come down with a decision and Fujitsu is going to get its claims affirmed.
> Belkin's lawyer, the folks they say they relied on, sent Belkin this e-mail on February 25, 2009, plaintiff's trial exhibit 27.

---

[1] JX3, Table 1.

[2] Tr. at 1062:18-1063:3; see also *id*. at 1062:9-12 and PTX 027.

> And he said. "I suggest that you authorize us," that's the law firm, the Bryan Cave law firm, "to do additional searching now to try to come up with new obviousness arguments," obvious arguments based on prior art, "so that we can file a new request for re-examination before the certificate issues in the pending re-examination.,"
>
> And why do you do that? Not only could this possibly prevent Fujitsu from moving forward from getting its certificate, but going forward on the current re-exam, that it might allow us to consolidate the new re-exam with the pending re-exam and put the brakes on.
>
> Like I said, he knew the ropes. You want to put the brakes on? You go to a mechanic who knows the car.
>
> He knew how to put the brakes on.[3]

Fujitsu's theory, from this opening statement to Mr. Flower's cross-examination last Tuesday, is that Belkin should have known that the `769 patent was valid and infringed, after the 2009 reexamination. Fujitsu asserts that the Bryan Cave lawyers were not competent professionals carefully analyzing the claims, but puppets who said what Belkin wanted to hear because Belkin paid them legal fees:

> Q. Now, over the past ten years, Bryan Cave has been one of the law firms that Belkin has -- at the top of Belkin's list in terms of monies paid to them?
>
> A. It varies by year. It really depends upon the events that have occurred during that particular year.
>
> Q. In most years, in fact, have they been number one?
>
> A. I don't know off the top of my head, but I would say that's probably accurate.[4]
>
> ***
>
> Q. And have their billings, in recent years, been in the area of 1 to 1 and a half million dollars a year?

---

[3] Fujitsu's opening statement, Tr. at 214:6-215:8 (discussing Mr. Kurland; "You want to put the brakes on? You go to a mechanic who knows the car"); see also *id* at 208:18-219:2 (discussing Belkin's first reexamination), 209:20-210: 2 (discussing Belkin's second reexamination).

[4] Tr. 1080:3-9.

| | | |
|---|---|---|
| 1 | A. | I believe that's accurate. |
| 2 | Q. | And that's been true for several years? |
| 3 | A. | Yeah, I would say so. |
| 4 5 | Q. | And whenever Belkin needs an opinion regarding a patent, about 90 percent of the time it goes to Bryan Cave; is that right? |
| 6 | A. | I think that's accurate.[5] |

Lacking any response whatsoever on the merits, the sole focus of Fujitsu's attack on Belkin's reliance on opinions is to attack reliability and competence of Belkin's opinion counsel.

But a competent opinion must consider the file history. A proper opinion of counsel thus should consider both the prior art and the contents of the prosecution history. *Cf. Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 744 (Fed. Cir. 1993) ("Counsel's opinions in this case are clearly competent and Westvaco was justified in rely on them. Each opinion letter begins with a statement that the opinion is based on a review of the file history of the patent, the prior art of record, and additional prior art. Thus, the opinions evidence an adequate foundation").

Thus, Fujitsu's willfulness contentions place the reasonableness of Mr. Kurland's opinions squarely at issue. And the law requires opinion counsel to consider the file history. Here, Belkin does not seek to malign the Patent Office or Fujitsu, but the fact that the Patent Office did make a mistake in failing to appreciate the data transfer circuit of ARLAN is central to Mr. Kurland's opinion. The Examiner's mistake is not a subject of dispute—it is an undisputed fact, as the evidence cited below shows. The fact that Mr. Kurland's opinion was correct in this regard is some evidence that it was reliable and competent overall.

---

[5] Tr. at 1081:11-19.

**II.  Since Fujitsu Attacks the Reasonableness of Belkin's 2009 Opinion of Counsel The Court Must Let Belkin's Opinion Counsel Explain It.**

On Friday, Belkin will present its opinion counsel, Lawrence Kurland of Bryan Cave LLP.  Mr. Kurland will provide the jury with the rest of the story Belkin started with the direct examination of Belkin litigation counsel Chris Flower on Tuesday.  The evidence reflects that Mr. Kurland advised Belkin from the time of Fujitsu's first assertion of the `769 patent and was responsible for both of Belkin's reexamination petitions.[6]  He kept Mr. Flower appraised of the progress of the reexaminations.[7]

In preparation for Mr. Kurland's testimony, Belkin notified Fujitsu that it intends to use the Exhibit 283s, in which the patent examiner explains the basis for distinguishing the ARLEN reference to establish the substantive reasonableness of Belkin's reliance on Mr. Kurland's advice.  Specifically, Belkin intends to ask Mr. Kurland about the file history excerpts designated PTX283s, in which the examiner failed appreciate the existence of a data transfer circuit within the meaning of the claims.  This is not maligning the Patent Office—it is directly quoting the reason for allowance.

Here, the entirety of PTX 283 and PTX 285 have been stipulated.  Nevertheless, Fujitsu argues that this file history evidence would violate the Court's order on Fujitsu's motions *in limine*.[8]  But in that same order, the Court allowed evidence concerning cancellation of claims Fujitsu originally asserted against the Defendants, with the limitation that such evidence "cannot ... be introduced for the purpose of disputing the validity of claims that were confirmed on reexamination." *Id*.

After the `769 patent emerged from reexamination,[9] Bryan Cave affirmed its opinion of invalidity, in part, because the Patent Office had erred in allowing the `769 patent to reissue:

---

[6] Tr. at 1049:16-1052:1 (retention and reliance on opinions), 1059:2-21 (first reexamination), 1077:13-1078:9 (second reexamination).

[7] *Id*. at 1060:16-20, 1078:10-19, 1079:2-6.

[8] Dkt. No. 356 at 4:9–10.

[9] Tr. at 1062:6-12.

> Q.   At this point, around February 2009, did you renew your request for an opinion concerning the validity of the `769 patent?
>
> A.   I did. I talked to Larry [Kurland]. I think at some point in 2009 I asked him to look further into the validity issues of the patent.
>
> Q.   At this time -- and what did he say? What was his response?
>
> A.   His response was, again, the PTO had erred and that he would look for other prior art that we could submit in another re-examination.[10]

In these discussions between client and counsel, Mr. Kurland and his team identified specific pieces of prior art that had been presented to the Patent Examiner. The evidence reflects that Belkin was told that the PTO originally had rejected all of the claims of the `769 patent in view of the prior art ARLAN reference.[11] Belkin inquired further, focusing specifically on the ARLAN reference--"We thought that was one of our strongest references"[12]--and why the PTO had not accepted it as an invalidating reference. Bryan Cave told Belkin that Fujitsu overcame the rejection by arguing to the PTO that ARLAN failed to disclose a parallel-to-serial converter and lacked a data transfer circuit.[13] Bryan Cave opined that the PTO was mistaken: "What Hassan explained to me was that the Examiner didn't think there was a data transfer circuit on the ARLAN card when, indeed, there is."[14] Belkin relied *specifically* on this communication.[15]

---

[10] Tr. at 1062:18-1063:3; see also *id*. at 1062:9-12 and PTX 027.

[11] Tr. at 1071:13-16 ("all the claims of the patent were cancelled, so what Hassan told me was this was an explanation as to how Fujitsu got some of the claims allowed later on"); see DTX044.

[12] Tr. 1066:20.

[13] Tr. 1071:25-1072:21; DTX 044.

[14] Tr. 1074:25-1075:2.

[15] *Id*. at 1074:20-1075:2.

1        Since Fujitsu attacks that opinion as unreliable, Belkin should be allowed to elicit
2   testimony and present documents showing precisely why Mr. Kurland thought the PTO
3   was mistaken and that his opinion was ultimately correct—as shown by an undisputed
4   fact in this litigation:

5   1.   Belkin's first reexamination request argued that the `769 patent was invalid in view
6        of ARLAN.

7   2.   As set forth in **PTX 283p**, in the course of that proceeding, the PTO rejected all of
8        the asserted claims as anticipated by ARLAN expressly based on the arguments
9        presented by Belkin:

> Claims 2, 4-5, 18, 20, 22-23, 36-43, 45-49, and 51-54 are rejected under 35 U.S.C. 102(b)as being anticipated by ARLAN.
>
> ***The rejection*** was proposed in the reexamination proceeding control number 90/008,071 [Belkin's first reexamination petition] by the requester and ***is substantially accepted for the reasons*** set forth in the discussion on page 35 through 37 and the detailed explanation in view of the item matching in the claim chart ... ***offered by the Requester*** [Belkin]are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided by Arlan.[16]

     PTX 283p has already been accepted into evidence and published to the jury in the
course of Mr. Fuji's cross-examination.[17]  And it twice has appeared without objection in
the parties' joint exhibit lists.[18]

3.   As set forth in **PTX 283q**, in response to this interim rejection, Fujitsu argued to the
     PTO that the ARLAN disclosure lacked a data transfer circuit.  It said:

> **Arlan *fails to disclose, teach, or suggest "a data transfer circuit*, incorporated with the card, in response to the input information being received by the second data interface unit, for transferring the input information to the second data interface unit." ... *In order to meet the limitations of Claim 38, Arlan must teach or suggest a data transfer circuit* that both transfers the input information to the

---

[16] PTX 283p at FUJ0165548 (emphasis added).
[17] Tr. at 427:12-428:23, 433:15-17.
[18] Dkt. Nos. 447, 466.

first data interface unit and transfers the output information to the second data interface unit. **Arlan *fails to do so*.**[19]

Like PTX 283p, PTX 283q already has been accepted into evidence and published to the jury in the course of Mr. Fuji's cross-examination, and has twice appeared without objection in the parties' joint exhibit lists.[20]

4.  As set forth in **PTX 283s**, (the Exhibit challenged by Fujitsu's objection), the Examiner stated his reasons for allowance:

    ***The prior art of record do not teach nor fairly suggest "a data transfer circuit,*** incorporated with the card, in response to the input information being received by the second data interface unit, for transferring the input information to the second data interface unit." in combination with "a card," "a first data interface unit" and "a second data interface unit" as recited.[21]

PTX 283s is not subject to Fujitsu's motion *in limine* because it is not an interim office action. Rather, it is the *final* office action after which Fujitsu to file suit in 2010.

| Office Action in Ex Parte Reexamination | Control No. 90/007,546 & 90/008, 071 | Patent Under Reexamination RE36769 ET AL. |
|---|---|---|
| | Examiner MY-TRANG N. TON | Art Unit 3992 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

a☒ Responsive to the communication(s) filed on *14 January 2008* .   b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

The Court denied Fujitsu's motion to exclude final office actions "as to the PTO's cancellation of claims Fujitsu asserted against Defendants before and during the litigation."[22] So Fujitsu is trying to relitigate an issue it already has lost. Indeed, the Court expressly ruled that "Defendants may rely on the cancellation of claims for the purpose of disproving willfulness and intent to induce infringement."[23] The evidence is proffered through Mr. Kurland to show that the PTO did, in fact, cancel various claims that had

---

[19] PTX 283q at FUJ0165684 (emphasis added).

[20] Dkt. Nos. 447, 466.

[21] DTX00283s at FUJ0165903 (emphasis added).

[22] Dkt. No. 365 at 4.

[23] *Id.*

1  previously been asserted against Defendants, which is highly probative of whether their
2  conduct was objectively reasonable.
3      The evidence of record already confirms that, after the first reexamination, the
4  lawyers at Bryan Cave advised Belkin that the patent was nevertheless invalid.[24]  He told
5  Belkin that the Examiner made a mistake when he said that the ARLAN references lacked a
6  data transfer circuit, when in fact they do.[25]
7  5.    And the evidence of record shows that Fujitsu has now stipulated that the
8      examiner's reason for allowance was incorrect.  Undisputed Fact 90a states:

> ***Arlan ... inherently discloses a data transfer circuit within the meaning of the asserted claims.***[26]

    Mr. Kurland should be permitted to explain that his analysis that ARLAN does show a data transfer circuit was correct as indicated by the statement of undisputed facts.

**III.    Exhibit 285d Should Be Admitted To Show Cancellation of Asserted Claims.**

    Lastly, Mr. Flower testified repeatedly that Bryan Cave's invalidity advice always started with an analysis of `769 patent claim 38.[27]  **PTX 285d** is the office action showing that Claims 38 and 39 (as well as originally asserted claims 20, 40, 43-46, and 49-53) were cancelled by the PTO.  Fujitsu acknowledged this fact in its opening statement ("I want to give you the whole picture here.  The Patent Office found some claims were not valid"[28]) and Mr. Flower closed his testimony by telling the jury:

> Q.    Do you know whether claims 38 and 39 survived the second re-examination?
>
> A.    They did not.  They were cancelled.[29]

---

[24] Tr. at 1062:9-1063:3.
[25] Tr. at 1074:20-1075:2.
[26] JTX 1 ¶ UF 90a-g.
[27] Tr. at 1053:21-24, 1058:3-7, 1084:2-10; PTX 027.
[28] Tr. at 209:15-18.
[29] Tr. at 1079:4-6.

1  There is no prejudice here.  The proffered evidence is relevant to Mr. Flower's testimony,
2  was previously referenced by both sides without objection, and Fujitsu already has
3  stipulated to its admissibility.  Considered together, this evidence establishes that Bryan
4  Cave's advice was not only reasonable and competent--it was correct.  In view of the
5  undisputed fact that Bryan Cave's opinion on the ARLAN data transfer circuit was correct,
6  the evidence cannot support a determination that Belkin's reliance was either objectively
7  reckless or subjectively unreasonable.  Bryan Cave competently analyzed the ARLAN
8  brochure and other ARLAN references and concluded (as it had before) that ARLAN
9  disclosed a data transfer circuit -- the Examiner had erred.  It communicated this
10 conclusion to Belkin, which relied on Bryan Cave's advice.  Without this evidence, the jury
11 will receive a skewed and misleading picture of what Belkin relied upon, potentially to its
12 prejudice if the jury concludes that it behaved willfully or did not actually think the `769
13 patent was invalid.

## IV.     Requested relief

Fujitsu's objections should be overruled.  Belkin should be permitted to elicit the testimony necessary to establish that the Bryan Cave opinions were reliable, including a discussion of the interim office actions specifically relied upon by Mr. Flower and already testified to without objection in open court, and the final office actions that the Court already has expressly allowed.

Respectfully submitted,

/s/     David S. Bloch
David Enzminger (SBN:  137065)
Email:  denzminger@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071–1543
Telephone:    (213) 615–1700
Facsimile:     (213) 615–1750

David S. Bloch (SBN: 184530)
Email: dbloch@winston.com
WINSTON & STRAWN LLP

|   |   |
|---|---|
| 1 | 101 California St. |
| 2 | San Francisco, CA 94111 |
|   | Telephone: (415) 591-1000 |
| 3 | Facsimile: (415) 591-1400 |
| 4 | Joshua Wyde (*Pro Hac Vice*) |
|   | Email: jwyde@winston.com |
| 5 | Michael J. Forbes (*Pro Hac Vice*) |
|   | Email:  mforbes@winston.com |
| 6 | WINSTON & STRAWN LLP |
| 7 | 1111 Louisiana, 25th Floor |
|   | Houston, TX  77002 |
| 8 | Telephone:    (713) 651–2600 |
|   | Facsimile:     (713) 651–2700 |
| 9 | Attorneys for Defendants |
| 10 | BELKIN INTERNATIONAL INC. and BELKIN, INC. |