UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FUJITSU LIMITED,<br><br>   Plaintiff,<br><br>   v.<br><br>BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; NETGEAR, INC.; ZYXEL COMMUNICATIONS CORPORATION; and ZYXEL COMMUNICATIONS, INC.,<br><br>   Defendants. | Case No.: 10-CV-03972-LHK<br><br>ORDER GRANTING IN PART, AND DENYING IN PART, MOTION TO STRIKE |

Plaintiff Fujitsu Limited ("Fujitsu") brings this action for patent infringement against Defendants Belkin International, Inc. and Belkin, Inc. (collectively, "Belkin"); D-Link Corporation ("D-Link Corp."); D-Link Systems, Inc. ("D-Link System"); and Netgear, Inc. ("Netgear") (collectively, "Defendants"). Before the Court is a Motion to Strike Improper Supplemental Opinions of Defendants' Damages Experts, filed by Fujitsu. *See* ECF No. 449. Dr. Gregory Leonard is the damages expert for Belkin and Netgear. Dr. Russell Mangum is the damages expert for D-Link Corp. and D-Link Systems. Fujitsu's reason for striking the supplemental opinions is

1

procedural: that the new opinions and documentary evidence should have been disclosed previously.  The Court GRANTS in part and DENIES in part Fujitsu's motion to strike.

## I. BACKGROUND

Prior to the beginning of trial, Fujitsu and Defendants filed motions to exclude expert testimony pursuant to Rules 401, 402, 403, and 702 of the Federal Rules of Evidence ("FRE"), as well as *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  *See* ECF Nos. 317, 318.  Through their *Daubert* motion, Defendants sought to preclude Fujitsu's damages expert, Paul K. Meyer, from offering testimony that Fujitsu should be entitled to damages arising from Defendants' sale of "external devices," such as routers.  Specifically, Defendants argued that Mr. Meyer's report was methodologically flawed because: (1) Mr. Meyer did not mention or satisfy the Entire Market Value ("EMV") rule when including sales of external devices in the royalty base; and (2) Mr. Meyer's report was based on the possibility of the use of Defendants' external devices with *all* card interface devices manufactured by any supplier in the industry, despite the fact that Defendants could not be held liable for direct or indirect infringement with third-party cards.[1]

Fujitsu justified Mr. Meyer's approach by arguing that it was an attempt to properly reflect what a reasonable licensor and licensee in a hypothetical negotiation would have agreed upon, recognizing that it would be too impractical and burdensome to track actual infringing usage.  Thus, Mr. Meyer applied an apportionment methodology in which, in the royalty base, Mr. Meyer included "only a small fraction (approximately 10%) of the entire value of the accused external devices to account for value attributable to non-infringing uses." ECF No. 334, at 6.

The Court denied Defendant's motion to exclude Mr. Meyer's expert opinion regarding external devices, finding that Mr. Meyer's methodology was not so unsound as to warrant total exclusion pursuant to FRE 702 and *Daubert*.  *See* ECF No. 370, at 12.  In so doing, the Court noted that a reasonable royalty analysis that is predicated on a hypothetical negotiation "necessarily involves an element of approximation and uncertainty." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (internal quotation marks and citation omitted).

---

[1] Defendants also argued that Mr. Meyer provided no analysis or evidence in support of his opinion that a higher royalty rate for the accused products should apply if external devices were excluded from the royalty base.

However, the Court did find that "the parties to a hypothetical negotiation would have tried to account for non-infringing [cards] sold by non-defendants by looking at third party market research reports." ECF No. 370, at 12.[2] *See generally Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988) (noting that the hypothetical "methodology encompasses fantasy and flexibility"); *Sinclair Ref. Co. v. Jenkins Petroleum Co.,* 289 U.S. 689, 698-99 (1933) ("To correct uncertain prophecies . . . is not to charge the offender with elements of value non-existent at the time of his offense. It is to bring out and expose to light the elements of value that were there from the beginning."). Therefore, the Court ordered Mr. Meyer "to supplement his report by excluding damages based on Defendants' sales of their external devices used with third party cards." ECF No. 370, at 12. The Court gave Fujitsu until Monday, November 19, 2012, to prepare this supplemental report. In addition, the Court granted Defendants leave to respond, ordering any such response to be prepared by Wednesday, November 21, 2012. Trial began on Monday, November 26, 2012.

On Saturday, December 1, 2012, Fujitsu filed a Motion to Strike Improper Supplemental Opinions of Defendants' Damages Experts. ECF No. 449 ("Mot."). In connection with this motion, Fujitsu filed a Motion to Shorten Time on the Motion to Strike, arguing that good cause existed to accelerate the briefing schedule so that the Court could rule before Defendants' damages experts testified at trial. Accordingly, Fujitsu requested that Defendants' opposition to the Motion to Strike be due on Monday, December 3, 2012. ECF No. 450. The Court granted Fujitsu's request, ECF No. 464, and Defendants filed their opposition as ordered, ECF No. 473 ("Opp'n"). The Court also granted Fujitsu's later request to file a reply in support of its Motion to Strike, which Fujitsu then filed on December 4, 2012. ECF No. 484 ("Reply").

## II. DISCUSSION

Through its Motion to Strike, Fujitsu seeks to exclude certain opinions and documentary evidence set forth by Defendants' damages experts in their supplemental reports, arguing that their admission violates the Court's discovery schedule, is untimely, and unfairly prejudices Fujitsu.

---

[2] Fujitsu is correct that the actual phrasing in the Court's order inadvertently used the phrase "non-infringing external devices" rather than "non-infringing cards." ECF No. 370, at 12.

3

Case No.: 10-CV-03972-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE

Specifically, Fujitsu contends that some of Defendants' opinions should be excluded because Defendants' experts "argue for the first time that damages for infringing sales of external devices should be limited to instances in which customers used a particular defendant's external device with the same defendant's card(s)." Mot. at 1. According to Fujitsu, Defendants' damages experts could have raised this criticism of Mr. Meyer's methodology previously but failed to do so. Therefore, Fujitsu alleges that this "last-minute disclosure" is "an unreasonable delay that has already unfairly prejudiced Fujitsu's ability to present its case to the jury." Reply at 1. In addition, Fujitsu contends that Dr. Mangum used his supplemental report as a vehicle for improperly submitting new evidence to support his opinions regarding the expectations that parties would have had about embedded Wi-Fi at the time of the hypothetical negotiation. *See* Supp. Mangum Rep. at 8 n.26. Fujitsu contends that "these previously undisclosed articles have nothing to do with Mr. Meyer's supplemental opinions concerning the market share of defendants vs. non-defendants for cards." Mot. at 4. Accordingly, Fujitsu asserts that these opinions and pieces of documentary evidence should be excluded pursuant to Rule 26 of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 26(a) requires witnesses who may be used at trial to provide a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). These expert reports must be disclosed "at least 90 days before the date set for trial or for the case to be ready for trial" unless there is a "stipulation or a court order." Fed. R. Civ. P. 26(a)(2)(D). In addition, a party "must supplement or correct its disclosure or response [including an expert report] . . . as ordered by the court." Fed. R. Civ. P. 26(e)(1).

Because Defendants' supplemental reports were filed pursuant to Court order, they are not *per se* untimely. Fed. R. Civ. P. 26(e)(1). Nonetheless, the Court agrees with Fujitsu that Dr. Mangum's previously undisclosed articles are not related to Mr. Meyer's supplemental apportionment calculation and should have been disclosed previously pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(ii). Therefore, the Court GRANTS Fujitsu's motion to strike Dr. Mangum's reliance on these two previously undisclosed news articles.

However, the Court DENIES Fujitsu's Motion to Strike the opinions by Dr. Leonard and Dr. Mangum that damages should be limited to use of each defendant's external devices with only its own cards. Pursuant to FRE 402 and 403, the Court finds the damages experts' supplemental opinions to be relevant to and probative of a damages calculation. In addition, allowing Defendants to elicit testimony at trial based on these opinions will not mislead the jury or cause undue delay.

Further, the Court does not find Dr. Mangum and Dr. Leonard's supplemental opinions regarding apportionment methodology to be unfairly prejudicial to Fujitsu. Defendants' damages experts' criticisms of Mr. Meyer's modified apportionment methodology are directly responsive to Mr. Meyer's supplemental report. Mr. Meyer updated his apportionment calculations "to exclude value that the parties to the hypothetical negotiation would have attributed to the use of External Devices with non-Defendant third-party Card Interface Devices pursuant to the Court's pre-trial rulings." Suppl. Meyer Report at 4. In order to adjust his calculations, Mr. Meyer determined Defendants' market share of card interface devices relative to other suppliers of card interface devices. In response, Dr. Leonard critiqued Mr. Meyer's approach, stating that "instead of apportioning external device sales using Defendants' combined market share, the appropriate apportionment for each defendant would be based on that defendant's own market share only." Supp. Leonard Rep. at 2. Similarly, Dr. Mangum criticized Mr. Meyer's report because "Mr. Meyer's adjusted apportionment inaccurately includes co-defendant Belkin or Netgear card interface devices in his calculation of updated damages for D-Link Systems." Supp. Mangum Rep. at 9. These criticisms are clear rebuttals to Mr. Meyer's updated calculations, and thus fall within the scope of the supplemental reports.

Although Fujitsu argues that Drs. Leonard and Mangum "could have gone further" and disclosed these critiques in their May 2012 rebuttal reports," Reply at 1, Fujitsu's argument disregards the fact that Defendants' damages experts actually did go further in their initial expert reports; neither Dr. Leonard nor Dr. Mangum believed that external devices should be included in the royalty base *at all*. In contrast, Mr. Meyer's report sought to account for a portion of every external device in the market. Given the all-or-nothing positions taken by the damages experts, it

5

is not surprising that Drs. Leonard and Mangum did not expound on every conceivable critique to an apportionment approach that Mr. Meyer did not initially adopt. Moreover, the criticisms set forth by Defendants' damages experts in their supplemental reports are not inconsistent with their prior positions. Nothing in Defendants' initial expert reports indicate a belief that a reasonable licensee in a hypothetical negotiation would have agreed to pay reasonable royalties based on infringement caused by Defendants' competitors.

Fujitsu also was on notice that Defendants did not believe damages should be calculated in a manner that held each Defendant liable for infringing acts that it did not commit. Defendants argued explicitly in their *Daubert* motion that, should the Court order Fujitsu to file a supplemental damages report, "[t]o preform an appropriate apportionment . . . Mr. Meyer would have to subtract all third party cards from the 'market share' of cards he used to apportion Defendants' external devices, and apportion liability based on *each* Defendant's own market share of accused cards." ECF No. 318, at 13 (emphasis added). In addition, during the November 1, 2012 pretrial conference, counsel for Belkin criticized Mr. Meyer's expert report by stating as follows:

> He [Mr. Meyer] includes in his analysis, every card sold by every manufacturer in the industry . . . Mr. Meyer's analysis is not in any way tied to any sale by any Defendant of any accused card. None. Zero . . . It wouldn't matter to Belkin's damages analysis, under Mr. Meyer's analysis, if we sold 0 cards, 100 cards, 1,000 cards, or 5 million cards.

Nov. 1, 2012 PTC Tr. 106:20–107:1.

Finally, while the approach taken by Mr. Meyer is different than the approach suggested by Defendants' damages experts, Defendants' positions are not clearly excluded by the Court's prior order. *See* ECF No. 370, at 12 (ordering Mr. Meyer to supplement his report "by excluding damages based on Defendants' sales of their external devices used with third party cards.").

In contrast, excluding Defendants from being able to offer the supplemental opinions of their experts may prove misleading to a jury and could result in unfair prejudice to Defendants. Although Defendants are cooperating in this lawsuit because they were sued together, they are not actually joint venturers. Rather, they are direct competitors selling different products, and had this lawsuit been filed in 2011 as opposed to 2010, Defendants would have been severed for misjoinder

under 35 U.S.C. § 299.  Therefore, it seems fair to allow Defendants the opportunity to rebut Mr. Meyer's modified apportionment model, particularly in light of the "approximation and uncertainty" involved when parties take part in a hypothetical negotiation.  *Lucent Technologies, Inc.*, 580 F.3d at 1325.  Moreover, Fujitsu is not entitled to additional damages just because it chose to sue multiple unrelated defendants in one lawsuit.  To preclude Defendants from presenting evidence countering Fujitsu's collective Defendants' damages theory would be unjust.

Therefore, pursuant to FRE 403 balancing, the Court finds that the probative value of admitting Defendants' supplemental expert opinions regarding Mr. Meyer's revised apportionment calculations outweighs the potential prejudice to Fujitsu.

### III.  CONCLUSION

For the forgoing reasons, Fujitsu's motion to strike is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated:  December 7, 2012

_____
LUCY H. KOH
United States District Judge