UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED, | ) | Case No.: 10-CV-03972-LHK |
| Plaintiff, | ) | |
| v. | ) | ORDER RE: OBJECTIONS TO DEFENDANTS BELKIN AND NETGEAR'S DIRECT EXAMINATION DEMONSTRATIVES FOR DR. GREGORY LEONARD AND D-LINK'S DIRECT EXAMINATION EXHIBITS AND DEMONSTRATIVES FOR DR. RUSSELL MANGUM |
| BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; NETGEAR, INC.; ZYXEL COMMUNICATIONS CORPORATION; and ZYXEL COMMUNICATIONS, INC., | ) | |
| Defendants. | ) | |

After reviewing the parties' briefing, considering the record in the case, and balancing the considerations set forth in Federal Rule of Evidence ("FRE") 403, the Court rules on the parties' objections as follows:

| EXHIBITS/ DEMONSTRATIVES | Court's Ruling on Objections |
|---|---|
| Direct Examination Slide #9 | Sustained in part, overruled in part.<br><br>Fujitsu objects to Slide 9 of Dr. Leonard's direct examination, which identifies several non-parties to this case that NETGEAR and Belkin contend are "Unlicensed PC Card Sellers" and "Unlicensed or Royalty Free Router/Access Point Sellers." Fujitsu contends that this slide should be excluded for the following reasons: (1) there has been no evidence presented during trial to establish that these companies make or sell infringing products that would require a license, thereby making this evidence irrelevant, misleading, and lacking a proper foundation; and (2) displaying this demonstrative would be improper in light of the Court's prior rulings excluding evidence of third-party products from this case.<br><br>Defendants Belkin and NETGEAR argue that this slide lists other companies to make the point that, because there are so many unlicensed and non-infringing competitors, Defendants would have been less likely to agree to a high royalty rate. Defendants contend that this slide is directly relevant to *Georgia Pacific* factors 1 and 4, as well as the bargaining positions of the parties to a hypothetical negotiation. Defendants also note that Fujitsu's damages expert, Mr. Meyer, cited the source document for these lists in coming up with his own market-share |

1

Case No: 10-CV-03972-LHK
ORDER RE: OBJECTIONS TO DEFENDANTS BELKIN AND NETGEAR'S DIRECT EXAMINATION
DEMONSTRATIVES FOR DR. GREGORY LEONARD AND D-LINK'S DIRECT EXAMINATION EXHIBITS
AND DEMONSTRATIVES FOR DR. RUSSELL MANGUM

United States District Court
For the Northern District of California

allocation.  Defendants further argue that, the fact that these products have not been found to infringe the '769 patent should not preclude Dr. Leonard from making the point that companies sell products that compete with Defendants' accused products, and have never paid any money to Fujitsu for licensing fees.

To the extent that Mr. Fuji testified that Fujitsu unsuccessfully contacted a third party to license the '769 patent, Defendants may identify those third parties as unlicensed competitors, such as Buffalo and SOHOware.  Accordingly, Fujitsu's objection is OVERRULED as to these third parties.

However, to the extent that there has been no evidence that a third party was ever contacted and accused of infringing the '769 patent, the Court agrees with Fujitsu.  The jury does not have any basis to assess the relevance of these third parties, and their inclusion in Slide 9 is likely to confuse and mislead the jury.  Therefore, pursuant to FRE 403, Fujitsu's objection is SUSTAINED as to these third parties because the probative value of their inclusion in this slide is outweighed by the potential of unfair prejudice to Fujitsu.

| Slide 8 of Dr. Leonard's direct examination and Slides 26, 29, and 31 of Dr. Mangum's direct examination | Sustained.<br><br>Fujitsu objects to Slide 8 of Dr. Leonard's direct examination because it contains "royalty rates" for the CSIRO, Acticon, and Linex licenses that Dr. Leonard calculated using all of Defendants' accused products, not just the eight products per Defendant selected for this case.  Similarly, Fujitsu objects to Slide 26 of Dr. Mangum's direct examination because it discusses the "effective" royalty rate of the Acticon-GPC/D-Link Systems License.  Dr. Mangum calculated the "effective" royalty rate by dividing the lump sum amount by the number of units of all cards accused in this case to determine a per-unit royalty of $0.12.  Fujitsu notes that  neither Dr. Leonard nor Dr. Mangum has updated any of these calculations since the Court ordered Fujitsu to limit the products at issue in this trial to only 8 per Defendant.<br><br>The Court finds that Defendants' damages experts' assumptions that the licenses at issue cover the Belkin and NETGEAR products originally accused in this case and D-Link's "Licensed Products" is speculative.  Moreover, in at least one instance involving the Acticon license, D-Link's corporate representative testified in deposition that he did not know which D-Link products constituted "Licensed Products."  Moreover, Defendants' trial evidence about which of their products is covered by the licenses at issue also is unclear.  Furthermore, at multiple Case Management Conferences, this Court asked the Defendants to consider stipulating to representative products to streamline the case and the trial.  Defendants steadfastly refused, and claimed that the products |

United States District Court
For the Northern District of California

| | originally accused in this case had material differences. Thus, to streamline the trial, this Court ordered Fujitsu to select 8 accused products for Belkin, NETGEAR, and D-Link (D-Link Systems and D-Link Corp.) respectively, and the issue of whether the parties will conduct a trial on the remaining accused products is not resolved. Therefore, because Dr. Leonard and Dr. Mangum's calculations are not linked to the eight accused products in this case and are overly speculative, pursuant to FRE 403, the Court finds that the probativeness of Defendants' exhibits and testimony regarding "royalty rates" based on the Linex, Acticon, and CSIRO licenses is outweighed by the risk of confusing the issues and misleading the jury. |
|---|---|
| Exhibits to Dr. Mangum's expert reports designated for his direct examination (DTX 313, 314, and 315, 325, 328, 866) | Sustained.<br><br>Fujitsu argues that Exhibits DTX 313, 314, and 315, purport to show calculations for all accused cards, kits, and external devices—the very type of calculation regarding non-selected products that Defendants have objected to Fujitsu showing to the jury. In addition, designated portions of DTX 866—Exhibits 19 and 20 to Dr. Mangum's supplemental report—calculate and use ratios of sales of selected products for trial versus accused products not selected for trial. Finally, Exhibits 325 and 328 reflect the $0.12 royalty rate calculation for the Acticon-GPC/D-Link Systems License based on all accused products.<br><br>Defendants D-Link Systems and D-Link Corp. contend that these exhibits will not be referenced or introduced into evidence in Defendants' direct examination of Dr. Mangum. However, Defendants do "reserve[] the right to rely on these exhibits if 'Fujitsu impeaches [Dr. Mangum] on the basis that his opinions lack support that can be found in those exhibits.'" ECF No. 506.<br><br>Defendants' position is inconsistent with their trial objections to Fujitsu's reference to accused products that have not been selected for this trial. The Court has sustained those objections. Defendants open the door to accused products not selected for trial at their own peril.<br><br>Pursuant to FRE 403 balancing, the Court sustains Fujitsu's objection to these exhibits that are unfairly prejudicial to Fujitsu and could mislead the jury. |

**IT IS SO ORDERED.**

Dated: December 9, 2012

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No: 10-CV-03972-LHK
ORDER RE: OBJECTIONS TO DEFENDANTS BELKIN AND NETGEAR'S DIRECT EXAMINATION
DEMONSTRATIVES FOR DR. GREGORY LEONARD AND D-LINK'S DIRECT EXAMINATION EXHIBITS
AND DEMONSTRATIVES FOR DR. RUSSELL MANGUM