UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 10-CV-03972-LHK |
| v. | ) | |
| | ) | |
| BELKIN INTERNATIONAL, INC.; BELKIN, INC.; D-LINK CORPORATION; D-LINK SYSTEMS, INC.; and NETGEAR, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**FINAL JURY INSTRUCTIONS – ANNOTATED**

Dated: December 13, 2012

LUCY H. KOH
United States District Judge

1

**GENERAL CIVIL INSTRUCTIONS**

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 1:**
**DUTY OF JURY**

Members of the Jury:  Now that you have heard all of the evidence, it is my duty to instruct you on the law.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.


Source:

Ninth Circuit Model Civil Jury Instruction 1.1C (2007 Ed.)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 2:**
**TWO OR MORE PARTIES - DIFFERENT LEGAL RIGHTS**

You should decide the case as to each Defendant separately.  Unless otherwise stated, the instructions apply to all parties.

Source:

Ninth Circuit Model Civil Jury Instruction 1.5 (2007 Ed.)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 3:**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

      the sworn testimony of any witness;

      the exhibits which were received into evidence; and

      any facts to which the lawyers have agreed.

Source:

Ninth Circuit Model Civil Jury Instruction 1.6 (2007 Ed.)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 4:**
**WHAT IS <u>NOT</u> EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

    1.   Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence.  But these arguments and statements are not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

    2.   Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

    3.   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; if I have given a limiting instruction, you must follow it.

    4.   Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Source:

Ninth Circuit Model Civil Jury Instruction 1.7 (2007 Ed.)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 5:**
**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may have been admitted for a limited purpose only.  You must consider it only for that limited purpose and for no other.

Source:

Ninth Circuit Model Civil Jury Instruction 1.8 (2007 Ed.)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 6:**
**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  You may use those charts and summaries as evidence.  Charts and summaries are only as good as the underlying evidence that supports them.  You should give them only such weight as you think they deserve.

Source:

Ninth Circuit Model Civil Jury Instruction 2.13 (2007 Ed.)

8

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 7:**
**CHARTS AND SUMMARIES <u>NOT</u> RECEIVED IN EVIDENCE**

Certain charts, summaries, and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.


Source:

Ninth Circuit Model Civil Jury Instruction 2.12 (2007 Ed.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 8:**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Source:

Ninth Circuit Model Civil Jury Instruction 1.9 (2007 Ed.)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 9:**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness said, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

In considering the testimony of any witness, you may take into account:

    1.   the opportunity and ability of the witness to see or hear the things testified to;

    2.   the witness's memory;

    3.   the witness's manner while testifying;

    4.   the witness's interest in the outcome of the case and any bias or prejudice;

    5.   whether other evidence contradicted the witness's testimony;

    6.   the reasonableness of the witness's testimony in light of all the evidence; and

    7.   any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Source:

Ninth Circuit Model Civil Jury Instruction 1.11 (2007 Ed.)

11

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 10:**
**IMPEACHMENT EVIDENCE - WITNESSES**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.


Source:

Ninth Circuit Model Civil Jury Instruction 2.8 (2007 Ed.)

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 11:**
**USE OF NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.


Source:

Adapted from the Ninth Circuit Model Civil Jury Instruction 1.14 (2007 Ed.)

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

## [UNDISPUTED] FINAL JURY INSTRUCTION NO. 12:
## TRANSLATION/INTERPRETATION

2

3   Languages other than English were used during the trial.  The evidence to be considered by
you is only that provided through the official court interpreters.  Although some of you may
4   know one of the languages used during the trial, it is important that all jurors consider the same
evidence.  Therefore, you must accept the English translation.  You must disregard any different
5   meaning.

6   You must not make any assumptions about a witness or a party based solely upon the use of
an interpreter to assist that witness or party.
7

8   The parties agreed on an individual to serve as the official interpreter for each foreign
language.  There may have been instances during the trial when there was a dispute about a
9   translation, which was resolved by the official interpreter.  You must accept the official
interpreter's translation.
10

11   Source:

12   Adapted from the Ninth Circuit Model Civil Jury Instruction s 1.16, 1.17 (2007 Ed.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 13:**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.


Source:

Ninth Circuit Model Civil Jury Instruction 2.4 (2007 Ed.)

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 14:**
**USE OF INTERROGATORIES OF A PARTY**

2

3   Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

4

5

6   Source:

7

8   Ninth Circuit Model Civil Jury Instruction 2.10 (2007 Ed.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 15:**
**USE OF REQUESTS FOR ADMISSION**

2

3
Evidence was presented to you in the form of answers of one of the parties to requests for admission submitted by the other side.  A party is bound by its sworn answers to requests for admission.  You should take the facts admitted in those answers as true for purposes of this case.

4

5
Source:

6
Language drafted by the parties.   *See* Fed. R. Civ. P. 36.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 16:**
**STIPULATIONS OF FACT**

The parties have agreed to certain facts to be placed in evidence as Joint Exhibit Numbers 1–5. You should therefore treat these facts as having been proved.

Source:

Ninth Circuit Model Civil Jury Instruction 2.2 (2007 Ed.)

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 17:**
**EXPERT OPINION**

2

3
Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

4
Opinion testimony should be judged just like any other testimony.  You may accept it or reject it,

5
and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

6

7
Source:

8
Ninth Circuit Model Civil Jury Instruction 2.11 (2007 Ed.); *see* Fed. R. Evid. 602, 701–05.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 18:**
**BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.  Preponderance of the evidence is the burden of proof for infringement.

You should base your decision on all of the evidence, regardless of which party presented it.

Source:

Ninth Circuit Model Civil Jury Instruction 1.3 (2007 Ed.)

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 19:**
**BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE**

2

3

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence. Clear and convincing evidence is the burden of proof for invalidity and willfulness.

4

5

You should base your decision on all of the evidence, regardless of which party presented it.

6

7

Source:

8

Ninth Circuit Model Civil Jury Instruction 1.4 (2007 Ed.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 20:**
**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source:

Ninth Circuit Model Civil Jury Instruction 3.1 (2007 Ed.)

1

2

## [UNDISPUTED] FINAL JURY INSTRUCTION NO. 21:
## COMMUNICATION WITH COURT

3

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing. I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

4

5

6

7

8

9

Source:

10

Ninth Circuit Model Civil Jury Instruction 3.2 (2007 Ed.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**PATENT JURY INSTRUCTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[DISPUTED] FINAL JURY INSTRUCTION NO. 22:**
**SUMMARY OF CONTENTIONS**

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

Fujitsu Limited ("Fujitsu") filed suit in this court seeking money damages from Defendants Belkin International, Inc. and Belkin, Inc. (collectively, "Belkin"), D-Link Corporation ("D-Link Corp."), D-Link Systems, Inc. ("D-Link Systems"), and NETGEAR, Inc. ("NETGEAR") (collectively, "Defendants"), for infringing the '769 patent by importing, selling, or offering for sale products that are covered by the claims of the patent. The products accused by Fujitsu of infringement fall into three categories: (1) wireless interface cards; (2) wireless routers or access points; and (3) network kits consisting of one wireless interface card and one router or access point.

It has already been decided that the wireless interface cards infringe claims 2, 4, and 41, which are claims that cover a card device, and that Defendants' network kits infringe claims 47 and 48, which are claims that cover a system consisting of a card device and an external device.

Fujitsu also contends that Belkin, D-Link Corp., D-Link Systems, and NETGEAR are each liable for induced infringement through the sale of wireless routers or access points. That is, Fujitsu alleges that each Defendant actively induced its customers to infringe system claims 20, 47, and 48 by encouraging them to use a wireless interface card with a router or access point in a system. I will explain the requirements for induced infringement in later instructions. It has already been decided that the accused wireless interface cards, routers, and access points meet the limitations of system claims 20, 47, and 48, and that a customer who uses them together commits an act of direct infringement. Therefore, you need only decide the issue of induced infringement with respect to these claims.

Fujitsu also claims that each Defendant's infringement was willful.

The Defendants argue that the asserted claims of the '769 patent are invalid. Invalidity is a defense to infringement. The Defendants also assert that there was no willful infringement of the patent claims, and that the Defendants lacked the required specific intent to induce infringement.

If you decide that any of the asserted claims are valid, you will need to determine the amount of money damages to be awarded to Fujitsu based on Belkin, D-Link Corp., D-Link Systems, or NETGEAR's sale of interface cards and kits to compensate Fujitsu for the Defendants' direct infringement. Additionally, for routers and access points, if you find that a Defendant is liable for induced infringement, you will need to determine the amount of money damages to be awarded to Fujitsu based on that Defendant's sale of those products. If you decide that any infringement was willful, that decision should not affect your damages award. I will take willfulness into account later.


Source:

Language proposed by Defendants with slight modifications.

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 23:**
**INTERPRETATION OF CLAIMS**

2

3   Before you decide whether the claims are invalid, you will need to understand the patent claims.
As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the
boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any
4   language in the claims that needs interpretation.

5

6   I have already interpreted the meaning of certain terms of the claims of the '769 patent.  Your
binders contain a document reflecting those meanings.  If I have not provided you with a specific
definition for a term, you should apply the term's plain and ordinary meaning.  You must accept my
7   definitions of these terms as correct.  My interpretation of the language of the claims should not be
taken as an indication that I have a view regarding the issue of invalidity.  The decisions regarding
8   invalidity are yours to make.

9   Source:

10

11   Language proposed by both parties.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 24:**
**INDUCED INFRINGEMENT - BURDEN OF PROOF**

2

3   I will now instruct you on the rules you must follow in deciding whether Defendants have induced
infringement of one or more of the asserted claims of the '769 patent.  Infringement is assessed on a

4   claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as
to another.

5

6   Fujitsu has alleged that Belkin, D-Link Corp., D-Link Systems, and NETGEAR are liable for
induced infringement of claims 20, 47, and 48 of the '769 patent.  In order to prove induced

7   infringement, Fujitsu must prove that the requirements for this type of infringement are met by a
preponderance of the evidence.  In other words, that it is more likely than not that all of the

8   requirements of induced infringement have been proved.

9   Source:

10  Language proposed by both parties.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

## [DISPUTED] FINAL JURY INSTRUCTION NO. 25:
## INDUCING PATENT INFRINGEMENT

2

3   Fujitsu argues that Belkin, D-Link Corp., D-Link Systems, and NETGEAR have each actively induced another to infringe claims 20, 47, and 48 of the '769 patent.  In order for there to be

4   inducement of infringement by Belkin, D-Link Corp., D-Link Systems, or NETGEAR, someone else must directly infringe a claim of the '769 patent.  If there is no direct infringement by anyone,

5   there can be no induced infringement.  In order to be liable for inducement of infringement, Fujitsu must prove by a preponderance of the evidence that Belkin, D-Link Corp., D-Link Systems, or

6   NETGEAR:

7       1.   have intentionally taken action that actually induced direct infringement by another;

8       2.   have been aware of the '769 patent; and

9       3.   have known that the acts it was causing would be infringing.

10

11   If Belkin, D-Link Corp., D-Link Systems, or NETGEAR did not know of the existence of the patent or that the acts it was inducing were infringing, that Defendant cannot be liable for

12   inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough if

13   Belkin, D-Link Corp., D-Link Systems, or NETGEAR was merely indifferent to the possibility that they might encourage infringement of a patent.  Nor is it enough that Belkin, D-Link Corp., D-Link

14   Systems, or NETGEAR took a risk that was substantial and unjustified.

15   If you find that Belkin, D-Link Corp., D-Link Systems, or NETGEAR was aware of the '769 patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was

16   invalid, Belkin, D-Link Corp., D-Link Systems, or NETGEAR cannot be liable for inducement. Belkin, D-Link Corp., D-Link Systems, or NETGEAR's reliance on advice given by their lawyers

17   is one factor you may consider in deciding whether each of these Defendants believed that it was not encouraging infringement of the patent or that the patent was invalid.

18

19   Source:  Adapted from the N.D. Cal. Model Patent Jury Instruction No. 3.9 (2011 Ed.)

20   Authorities:  35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060,

21   2068 (2011); *Technology Patents LLC v. T-Mobile (UK) Ltd.*, --- F.3d ----, 2012 WL 4903197, *12 (Fed. Cir. 2012); *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en

22   banc); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008).

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[DISPUTED] FINAL JURY INSTRUCTION NO. 26:**
**WILLFUL INFRINGEMENT**

In this case, Fujitsu argues that each of Belkin, D-Link Corp., D-Link Systems, and NETGEAR willfully infringed Fujitsu's patent.

To prove willful infringement, Fujitsu must first persuade you that Belkin, D-Link Corp., D-Link Systems, or NETGEAR infringed a valid claim of Fujitsu's patent.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, Fujitsu must persuade you by clear and convincing evidence that, prior to September 3, 2010, the filing date of the complaint, Belkin, D-Link Corp., D-Link Systems, or NETGEAR acted with reckless disregard of the claims of the '769 patent.

To demonstrate such "reckless disregard," Fujitsu must satisfy a two-part test.  The first part of the test is an objective issue that I will ultimately decide.

The second part of the test depends on the state of mind of Belkin, D-Link Corp., D-Link Systems, or NETGEAR.  Fujitsu must persuade you that Belkin, D-Link Corp., D-Link Systems, or NETGEAR actually knew, or it was so obvious that they should have known, that their actions constituted infringement of a valid patent.

In deciding whether Belkin, D-Link Corp., D-Link Systems, or NETGEAR acted with reckless disregard for Fujitsu's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

Factors that may be considered as evidence that Belkin, D-Link Corp., D-Link Systems, or NETGEAR was not willful include:

>    (1)    Whether Belkin, D-Link Corp., D-Link Systems, or NETGEAR acted in a manner consistent with the standards of commerce for its industry; and

>    (2)    Although there is no obligation to obtain an opinion of counsel, whether Belkin, D-Link Corp., D-Link Systems, or NETGEAR relied on a legal opinion that was well-supported and believable and that advised Belkin, D-Link Corp., D-Link Systems, or NETGEAR that the patent was invalid.

Factors that may be considered as evidence that Belkin, D-Link Corp., D-Link Systems, or NETGEAR was willful include:

(1)    Whether or not Belkin, D-Link Corp., D-Link Systems, or NETGEAR intentionally copied a product of Fujitsu covered by the patent.

Source:  Adapted from the N.D. Cal. Model Patent Jury Instruction No. 3.10 (2011 Ed.).

Authorities:  35 U.S.C. § 284; *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346

(Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

**[DISPUTED] FINAL JURY INSTRUCTION NO. 27:**
**INVALIDITY - BURDEN OF PROOF**

2

3   I will now instruct you on the rules you must follow in deciding whether Defendants have proven
    that claims 2, 4, 20, 41, 47 or 48 of the '769 patent are invalid.  Before discussing the specific rules,
4   I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of
    any patent claim, Defendants must persuade you by clear and convincing evidence that the claim is
5   invalid.

6   During this case, the Defendants have submitted prior art that was not considered by the United
    States Patent and Trademark Office ("PTO") during the prosecution of the '769 patent.  Defendants
7   have also submitted prior art that was considered by the PTO.

8   Defendants contend that the submitted prior art invalidates certain claims of the '769 patent.  In
9   deciding the issue of invalidity, the standard of proof—clear and convincing evidence—remains the
    same regardless of whether or not prior art was considered by the PTO when it issued the '769
10  patent.  Prior art that differs from the prior art considered by the PTO may carry more weight than
    the prior art that was considered, and may make the Defendants' burden of showing that a patent
11  claim is invalid easier to sustain.

12  Source:

13  Adapted from the N.D. Cal. Model Patent Jury Instruction No. 4.1 (2011 Ed.)

14
15  Authorities:

16  *Microsoft Corp. v. i4i LTD Partnership*, 131 S.Ct. 2238, 2242, 2251, ___ U.S. ___ (2011); *Buildex,*
    *Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal*
17  *Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *see also Fromson Advance Offset Plate,*
    *Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725
18  F.2d 1350, 1359–60 (Fed. Cir. 1984), abrogated on other grounds by *Therasense, Inc. v. Becton,*
    *Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011).
19

20

21

22

23

24

25

26

27

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[DISPUTED] FINAL JURY INSTRUCTION NO. 28:**
**ANTICIPATION**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device, system, or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices or systems, methods, publications, or patents are called "prior art references."  If a patent claim is not new, we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Defendants contend that the following prior art references anticipate certain claims of the '769 patent: Mizutani, ARLAN, and Murakami.  These are the only references you may consider in determining whether claims of the '769 patent are anticipated.

Here is a list of the ways that Defendants can show that a patent claim was not new:

> – if the claimed invention was already publicly known or publicly used by others in the United States before April 30, 1991;

> – if the claimed invention was already patented or described in a printed publication anywhere in the world before April 30, 1991.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

> – if the claimed invention was already made by someone else in the United States before April 30, 1991, if that other person had not abandoned the invention or kept it secret;

> – if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before April 30, 1991;

> – if Messrs. Ozawa or Suzuki did not invent the claimed invention but instead learned of the claimed invention from someone else.

Source:

Adapted from the N.D. Cal. Model Patent Jury Instruction No. 4.3a1 (2011 Ed.)

Authorities:

35 U.S.C. § 102(a), (c), (e), (f) and (g); *Flex-Rest, LLC v. Steelcase, Inc.,* 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *Apotex U.S.A., Inc. v. Merck & Co.,* 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.,* 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000);

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985).

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

**[DISPUTED] FINAL JURY INSTRUCTION NO. 29:**
**OBVIOUSNESS**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of April 30, 1991.  The Court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

> (1)   the levels of education and experience of persons working in the field;
> (2)   the types of problems encountered in the field; and
> (3)   the sophistication of the technology.

Fujitsu contends that a person of ordinary skill in the field would have at least a bachelor's degree or equivalent in electrical engineering or a related field and two or more years of experience in computer technologies.  Defendants contend that a person of ordinary skill in the field would have at least a bachelor's degree in electrical engineering or a related field such as telecommunications, computer science, computer engineering or physics, and two or more years of experience with computer interfaces plus an understanding of wireless communications.

Second, you must decide the scope and content of the prior art.  Fujitsu and Defendants disagree as to whether some of the prior art references should be included in the prior art you use to decide the validity of claims 2, 4, 20, 41, 47, and 48 of the '769 patent.  In order to be considered as prior art to the '769 patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

> (1)   commercial success of a product due to the merits of the claimed invention;
> (2)   a long felt need for the solution provided by the claimed invention;
> (3)   unsuccessful attempts by others to find the solution provided by the claimed invention;
> (4)   copying of the claimed invention by others;
> (5)   unexpected and superior results from the claimed invention;
> (6)   acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;
> (7)   other evidence tending to show nonobviousness;
> (8)   independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and
> (9)   other evidence tending to show obviousness.

34

The presence of any of factors 1–7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. The presence of factors 8–9 may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether Defendants have identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

Source:

Adapted from the N.D. Cal. Model Patent Jury Instruction No. 4.3b (2011 Ed.)

Authorities:

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 407, 418–419, 421 (2007); *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 727 (Fed. Cir. 2002); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985).

1

**[DISPUTED] FINAL JURY INSTRUCTION NO. 30:**
**PATENT DAMAGES - BURDEN OF PROOF**

2

3

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Belkin, D-Link Corp., D-Link Systems, or NETGEAR infringed any valid claim of the '769 patent, you must then determine the amount of money damages to be awarded to Fujitsu to compensate it for the infringement by each particular Defendant.

4

5

6

The amount of those damages must be adequate to compensate Fujitsu for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

7

8

9

Fujitsu has the burden to persuade you of the amount of its damages.  You should award only those damages that Fujitsu proves it suffered by a preponderance of the evidence.  While Fujitsu is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Fujitsu is not entitled to damages that are remote or speculative.

10

11

12

Source:

13

Adapted from the N.D. Cal. Model Patent Jury Instruction No. 5.1 (2011 Ed.)

14

Authorities:

15

16

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108–09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544–45 (Fed. Cir. 1995) (en banc).

17

18

19

20

21

22

23

24

25

26

27

28

36

1

## [DISPUTED] FINAL JURY INSTRUCTION NO. 31:
## REASONABLE ROYALTY

2

3   There are different types of damages a patent holder may be entitled to recover.  In this case, Fujitsu seeks a reasonable royalty.

4
A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the
5   claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the
6   infringer taking place at the time when the infringing activity first began.  The parties in this case agree that the hypothetical negotiation would have taken place in July 2000.

7

8   In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.   You must
9   also assume that both parties believed the patent was valid and infringed.   Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would
10  have resulted from the hypothetical negotiation and not simply what either party would have preferred.

11

12  A royalty can be calculated in several different ways.  One way to calculate a royalty is to determine what is called a "running royalty."  All of the damages experts in this case offer the
13  opinion that a running royalty is the appropriate measure for damages.  To calculate a running royalty, you must first determine the "base."  The royalty base for cards and kits has been stipulated
14  to by the parties and can be found in Joint Exhibit 3.  If you decide that a defendant has induced infringement of the patent through its sales of external devices, you will need to determine the
15  royalty base for external devices as well.

16
After determining the base, you must then multiply the base by the "rate" or percentage that you
17  find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If
18  you were to find that the hypothetical negotiation would have resulted in a rate of 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.  If you were to find that the
19  hypothetical negotiation would have resulted in a rate of 10%, then the royalty would be $20, or the rate of .10 times the base revenue of $200.

20

21  In no event should you award Fujitsu more than one reasonable royalty for a single product.

22  Source:

23  Adapted from the N.D. Cal. Model Patent Jury Instruction No. 5.7 (2011 Ed.)

24
Authorities:
25
*Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker,*
26  *Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579– 81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc);
27  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

28

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

1

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 32:
REASONABLE ROYALTY - RELEVANT FACTORS**

2

3   In determining the reasonable royalty, you should consider all the facts known and available to the
   parties at the time the infringement began.  In this case, the parties agree that the hypothetical

4   negotiation would have taken place in July 2000.  Below is a list of the kinds of factors that you
   may consider in making your determination.  During the trial you may have heard these referred to

5   as the *Georgia-Pacific* factors.

6       1.   The royalties received by the patentee for the licensing of the patent-in-suit, proving or
            tending to prove an established royalty.

7

8       2.   The rates paid by the licensee for the use of other patents comparable to the patent-in-
            suit.

9

10      3.   The nature and scope of the license, as exclusive or nonexclusive, or as restricted or
            nonrestricted in terms of territory or with respect to whom the manufactured product

11           may be sold.

12      4.   The licensor's established policy and marketing program to maintain his or her patent
            monopoly by not licensing others to use the invention or by granting licenses under

13           special conditions designed to preserve that monopoly.

14      5.   The commercial relationship between the licensor and licensee, such as whether they are
            competitors in the same territory in the same line of business, or whether they are

15           inventor and promoter.

16
        6.   The effect of selling the patented specialty in promoting sales of other products of the
17           licensee, the existing value of the invention to the licensor as a generator of sales of his
            nonpatented items, and the extent of such derivative or convoyed sales.

18
        7.   The duration of the patent and the term of the license.
19

20      8.   The established profitability of the product made under the patents, its commercial
            success, and its current popularity.

21

22      9.   The utility and advantages of the patented property over the old modes or devices, if
            any, that had been used for working out similar results.

23
        10.  The nature of the patented invention, the character of the commercial embodiment of it
24           as owned and produced by the licensor, and the benefits to those who have used the
            invention.

25

26      11.  The extent to which the infringer has made use of the invention and any evidence
            probative of the value of that use.

27

28                                               38

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK

12. The portion of the profit or of the selling price that may be customary in the particular business or in a comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Source:

Adapted from the Federal Circuit Bar Association Model Patent Jury Instructions 6.7 (2012 ed.)

Authorities:

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579– 81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

1

2

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 33:**
**DAMAGES PERIOD**

3

Damages that Fujitsu may be awarded by you commence on September 3, 2004, six years before Fujitsu filed this lawsuit, and end on April 30, 2012, when the '769 patent expired.

4

Source:

5

Language proposed by both parties.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40

1

2

**[DISPUTED] FINAL JURY INSTRUCTION NO. 34:**
**CALCULATING DAMAGES IN CASES OF INDUCEMENT**

3

4

5

6

In order to recover damages for induced infringement for the Defendants' sale of external devices, Fujitsu must prove acts of direct infringement by others that were induced by each Belkin, D-Link Corp., D-Link Systems, and NETGEAR.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Fujitsu must further prove the number of direct acts of infringement of the patent in suit, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

7

Source:

8

Adapted from the N.D. Cal. Model Patent Jury Instruction No. 5.9 (2011 Ed.)

9

10

Authority:

11

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322, 1334 (Fed. Cir. 2009); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41

**[UNDISPUTED] FINAL INSTRUCTION NO. 35:**
**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom

Source:

Ninth Circuit Model Civil Jury Instruction 3.3 (2007 Ed.)

FINAL JURY INSTRUCTIONS – Case No. 10-CV-03972-LHK